# EXHIBIT "B"

**SMIGEL, ANDERSON & SACKS, LLP**
River Chase Office Center, 3rd Floor
4431 North Front Street
Harrisburg, PA 17110
(717) 234-2401

Michael R. Kelley, Esquire
mkelley@sasllp.com
Adam G. Klein, Esquire
aklein@sasllp.com
Attorneys for Plaintiffs

| | |
|---|---|
| MCFARLAND, LP, SPRING VILLAGE APARTMENTS, LLC, and SPRING VILLAGE, LP,<br><br>Plaintiffs,<br><br>v.<br><br>HARFORD MUTUAL INSURANCE COMPANIES and FIRSTLINE NATIONAL INSURANCE COMPANY, PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, CITY OF HARRISBURG, CENTRAL PENN ASPHALT, INC., PENROSE PROPERTIES, INC., GREENEBAUM STRUCTURES, P.C., NESHAMINY CONSTRUCTORS, INC., TRC COMPANIES, INC., F.T. KITLINSKI & ASSOCIATES, HOWARD and MONIQUE HENRY, and HOWARD TIRE & AUTO, INC.,<br><br>Defendants. | IN THE COURT OF COMMON PLEAS<br>DAUPHIN COUNTY, PENNSYLVANIA<br><br><br><br><br><br><br>NO. 2018-CV-2988-CV<br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

*2018 JUL 24  PM 3: 09*
*DAUPHIN COUNTY PENNA*
*PROTHONOTARY*

# N O T I C E

**YOU HAVE BEEN SUED IN COURT.** If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

<div align="center">

DAUPHIN COUNTY LAWYER REFERRAL SERVICE
213 North Front Street
Harrisburg, PA 17101
(717) 232-7536

</div>

## AVISO

USTED HA SIDO DEMANDADO/A EN CORTE. Si usted desea defenderse de las demandas que se presentan más adelante en las siguientes páginas, debe tomar acción dentro de los próximos veinte (20) días después de la notificación de esta Demanda y Aviso radicando personalmente o por medio de un abogado una comparecencia escrita y radicando en la Corte por escrito sus defensas de, y objecciones a, las demandas presentadas aquí en contra suya. Se le advierte de que si usted falla de tomar acción como se describe anteriormente, el caso puede proceder sin usted y un fallo por cualquier suma de dinero reclamada en la demanda o cualquier otra reclamación o remedio solicitado por el demandante puede ser dictado en contra suya por la Corte sin más aviso adicional. Usted puede perder dinero o propiedad u otros derechos importantes para usted.

USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE UN ABOGADO, LLAME O VAYA A LA SIGUIENTE OFICINA. ESTA OFICINA PUEDE PROVEERLE INFORMACION A CERCA DE COMO CONSEGUIR UN ABOGADO.

SI USTED NO PUEDE PAGAR POR LOS SERVICIOS DE UN ABOGADO, ES POSIBLE QUE ESTA OFICINA LE PUEDA PROVEER INFORMACION SOBRE AGENCIAS QUE OFREZCAN SERVICIOS LEGALES SIN CARGO O BAJO COSTO A PERSONAS QUE CUALIFICAN.

<div align="center">

Dauphin County Lawyer Referral Service
213 North Front Street
Harrisburg, PA 17101
(717) 232-7536

</div>

**SMIGEL, ANDERSON & SACKS, LLP**
River Chase Office Center, 3rd Floor
4431 North Front Street
Harrisburg, PA 17110
(717) 234-2401

Adam G. Klein, Esquire
aklein@sasllp.com
Michael R. Kelley, Esquire
mkelley@sasllp.com
Attorneys for Plaintiffs

| | |
|---|---|
| MCFARLAND, LP, SPRING VILLAGE APARTMENTS, LLC, and SPRING VILLAGE, LP, <br>      Plaintiffs, <br><br>      v. <br><br> HARFORD MUTUAL INSURANCE COMPANIES and FIRSTLINE NATIONAL INSURANCE COMPANY, PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, CITY OF HARRISBURG, CENTRAL PENN ASPHALT, INC., PENROSE PROPERTIES, INC., GREENEBAUM STRUCTURES, P.C., NESHAMINY CONSTRUCTORS, INC., TRC COMPANIES, INC., F.T. KITLINSKI & ASSOCIATES, HOWARD and MONIQUE HENRY, and HOWARD TIRE & AUTO, INC., <br>      Defendants. | : IN THE COURT OF COMMON PLEAS <br> : DAUPHIN COUNTY, PENNSYLVANIA <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : NO.  2018-CV-2988-CV <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : JURY TRIAL DEMANDED |

## COMPLAINT

AND NOW COMES Plaintiffs McFarland, LP, Spring Village Apartments, LLC and Spring Village, LP (collectively referred to as "McFarland") by and through their attorneys, Smigel, Anderson & Sacks, LLP, and make the following Complaint against Defendants. In support thereof, McFarland avers as follows:

### PARTIES

1.     Plaintiff McFarland, LP is a business entity with a principal place of business located at 601 Poplar Street, Apartment E-20, Sharon Hill, Pennsylvania, 19079.

2.      Plaintiff Spring Village Apartments, LLC is a business entity with a principal place of business located at 212 Second Street, Suite 305, Lakewood, New Jersey 08701.

3.      Plaintiff Spring Village, LP is a business entity with a principal place of business located at 601 Poplar Street, Sharon Hill, Pennsylvania, 19079.

4.      At all times relevant, the above-referenced Plaintiffs, individually and/or collectively, owned and maintained property and liability insurance coverage at 1139 Mulberry Street, Harrisburg, Pennsylvania, 17104. This property is known as the "McFarland Building." The McFarland Building is located in Dauphin County, Pennsylvania and is the subject matter of this Complaint.

5.      Defendant Harford Mutual Insurance Companies ("Harford") is a property and casualty insurance company with a principal place of business located at 200 North Main Street, Bel Air, Maryland, 21014-3544.

6.      Defendant Firstline National Insurance Company ("Firstline") is a property and casualty insurance company with a principal place of business located at 200 North Main Street, Bel Air, Maryland, 21014.

7.      At all times relevant, Harford and Firstline provided property and liability coverage to Plaintiffs for a number of properties owned by Plaintiffs, including the McFarland Building.

8.      Defendant Howard and Monique Henry are adult individuals who at all relevant times resided at 335 Hemlock Lane, Etters, Pennsylvania.

9.      Defendant Howard Tire & Auto Inc. is a Pennsylvania Corporation that at all relevant times had its principal place of business located at 205 and 235 South Cameron Street, Harrisburg, Pennsylvania.

4

10.     Defendant Pennsylvania Department of Transportation is a Commonwealth of Pennsylvania agency whose principal address is 9th Floor Commonwealth Keystone Building, 400 North Street, Harrisburg, Pennsylvania, 17120-0041.

11.     Defendant City of Harrisburg is a political subdivision with a principal address of 10 North Second Street, Harrisburg, Pennsylvania, 17101.

12.     Defendant Central Penn Asphalt, Inc. is a business entity with a principal place of business located at 3701 G. Derry Street, Harrisburg, Pennsylvania, 17111.

13.     Defendant Penrose Properties, Inc. is a business entity with a principal place of business located at 230 Wyoming Avenue, Suite 5, Kingston, Pennsylvania, 18704.

14.     Defendant Greenebaum Structures, P.C. is a business entity with a principal place of business located at 26-28 Market Square, Suite 2, Manheim, Pennsylvania, 17545.

15.     Defendant Neshaminy Constructors, Inc. is a business entity with a principal place of business located at 1839 Bustleton Pike, Feasterville, Pennsylvania, 19053.

16.     Defendant TRC Companies, Inc. is a business entity with a principal place of business located at 65 Suffolk Street, Lowell, Massachusetts, 01854.

17.     Defendant F.T. Kitlinski & Associates, Inc. is a business entity with a principal place of business located at 3608 North Progress Avenue, Harrisburg, Pennsylvania, 17110.

18.     The above-referenced Defendants identified in paragraphs 8-17 above are joined only to the extent that they are necessary and indispensable parties to the claims brought against Harford and Firstline. The Defendants identified in paragraphs 8-17 above are parties in two other lawsuits pertaining to the properties at issue in this complaint: Docket Nos. 2018 CV 2904 and 2017-CV-01940 filed in the Court of Common Pleas of Dauphin County, Pennsylvania. Accordingly, these parties are joined in this complaint only because they may have an interest in

5

the outcome of the claims brought by Plaintiffs against Harford and Firstline and therefore may be considered necessary and indispensable parties to the current action.

## JURISDICTION AND VENUE

19.     This Honorable Court has jurisdiction over the parties and subject matter of this case because Defendants regularly conduct business in the Commonwealth of Pennsylvania, including Dauphin County, Pennsylvania.

20.     Pursuant to Pennsylvania Rule of Civil Procedure 1006 and 2179, venue is proper in Dauphin County because Defendants regularly conduct business in Dauphin County, the cause of action has arisen in Dauphin County, the subject matter of this dispute is a property located in Dauphin County and the current action is an insurance coverage dispute pertaining to insurance coverage on the McFarland building, which is located in Dauphin County, Pennsylvania.

## FACTUAL BACKGROUND

21.     Plaintiffs purchased the McFarland Building on or about May 15, 2012.

22.     The McFarland Building consists of two (2) separate buildings, one containing 41 apartments and a second building containing 8 apartments. The smaller apartment building is physically and structurally connected to a retaining wall which runs from the smaller apartment building to the Mulberry Street Bridge. Photographs showing the retaining wall and its physical and structural connection to the smaller apartment building are attached as **Exhibit "A"** hereto.

23.     The second, smaller apartment building is located on or near the edge of a sharp drop off or cliff and the retaining wall forms a part of the building's structural foundation by helping to prevent the smaller apartment building from collapsing over the nearby cliff.

24.     On May 5, 2016, the retaining wall, which was physically and structurally connected to the smaller apartment building, suddenly and unexpectedly collapsed.

6

25.     The entire retaining wall, which was approximately 48 feet wide and connected to the smaller apartment building, suddenly, unexpectedly and completely collapsed onto buildings located at the foot of the cliff.

26.     The collapse of the retaining wall caused significant damage to at least two (2) separate buildings located at the bottom of the cliff, upon which the retaining wall fell.

27.     The collapse of the retaining wall, which was physically and structurally connected to the smaller apartment building, has also resulted in that smaller apartment building being made structurally unsound and unfit for occupancy.

28.     A nearby parking lot has also been made unsound and unfit for use as a parking lot.

29.     The City of Harrisburg has determined that the apartment building and parking lot are unsafe and cannot be used for occupancy or parking, respectively.

30.     Plaintiffs have suffered significant business income loss as a result of not being able to utilize the smaller apartment building or parking lot.

31.     At all times relevant, Plaintiffs were insured by Defendants for liability and property damage on the McFarland Building through a business owner's policy, Policy No. **8159577**. A true and correct copy of the business owner's insurance policy is attached hereto as **Exhibit "B"**.

32.     The McFarland Building is specifically identified as an insured property under the policy. See Exhibit "B", Property Schedule, page 17.

33.     Under the policy, Plaintiffs have blanket insurance coverage on all of their buildings, including the McFarland Building in the amount of sixty-five million, one hundred seventy-nine thousand and nine hundred dollars ($65,179,900.00).

7

34.     The policy states: "We will pay for direct physical loss of or damage to covered property at the premises described in the declarations caused by or resulting from any covered cause of loss." See Exhibit "B", page 1 of 53.

35.     The policy further provides: "Covered property includes buildings as described under Paragraph A below, business personal property as described in Paragraph B below, or both depending on a limit of insurance as shown in the Declarations for that type of property." See Exhibit "B", page 1 of 53.

36.     The policy defines buildings as: "Buildings, meaning the buildings and structures at the premises described in the declarations, including:

1) Completed additions;

2) Fixtures, including outdoor fixtures;

3) Permanently installed:

a) machinery;

b) equipment;

4) Your personal property in apartments, rooms or common areas furnished by you as landlord;

5) Personal property owned by you that is used to maintain or service the buildings

or structures of the premises...." See Exhibit "B", page 1 of 53.

37.     The policy specifically provides coverage for collapse:

**d. Collapse**
The coverage provided under this Additional Coverage –
Collapse applies only to an abrupt collapse as described
and limited in Paragraphs **d.(1)** through **d.(7)**.
(1) For the purpose of this Additional Coverage –
Collapse, abrupt collapse means an abrupt
falling down or caving in of a building or
any part of a building with the result that

8

the building or part of the building cannot
be occupied for its intended purpose.

**(2)** We will pay for direct physical loss or damage
to Covered Property, caused by abrupt collapse
of a building or any part of a building that is
insured under this policy or that contains
Covered Property insured under its policy, if
such collapse is caused by one or more of the
following:

    **(a)** Building decay that is hidden from view,
unless the presence of such decay is known
to an insured prior to collapse;

    **(b)** Insect or vermin damage that is hidden from
view, unless the presence of such damage is
known to an insured prior to collapse;

    **(c)** Use of defective material or methods in
construction, remodeling or renovation if the
abrupt collapse occurs during the course of
the construction, remodeling or renovation; or

    **(d)** Use of defective material or methods in
construction, remodeling or renovation if the
abrupt collapse occurs after the construction,
remodeling or renovation is complete, but only
if the collapse is caused in part by:

        **(i)** A cause of loss listed in Paragraph **(2)(a)**
or **(2)(b)**;

        **(ii)** One or more of the "specified causes of
loss";

        **(iii)** Breakage of building glass;

        **(iv)** Weight of people or personal property; or

        **(v)** Weight of rain that collects on a roof.

**(3)** This Additional Coverage – Collapse does **not** apply
to:

    **(a)** A building or any part of a building that is in
danger of falling down or caving in;

    **(b)** A part of a building that is standing, even if it
has separated from another part of the building; or

    **(c)** A building that is standing or any part of a building
that is standing, even if it shows evidence of cracking,
bulging, sagging, bending, leaning, settling,
shrinkage or expansion.

**(4)** With respect to the following property:

    **(a)** Awnings;

    **(b)** Gutters and downspouts;

    **(c)** Yard fixtures;

    **(d)** Outdoor swimming pools;

(e) Piers, wharves and docks;

(f) Beach or diving platforms or appurtenances;

(g) Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)**, we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

(5) If personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

(a) The collapse of personal property was caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)** of this Additional Coverage;

(b) The personal property which collapses is inside a building; and

(c) The property which collapses is not of a kind listed in Paragraph **(4)**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

(6) This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(7) This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this policy.

(8) The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**.

**e. Water Damage, Other Liquids, Powder or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage, but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f. Business Income**

    **(1) Business Income**

        **(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises. With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

            **(i)** The portion of the building which you rent, lease or occupy;

            **(ii)** The area within 100 feet of the building or within 100 feet of the premises as described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

            **(iii)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

        **(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

        **(c)** Business Income means the:

            **(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result

11

of an increase in volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

**(ii)** Continuing normal operating expenses incurred, including Payroll.

**(d)** Ordinary payroll expenses:

**(i)** Means payroll expenses for all your employees except:

**i.** Officers;

**ii.** Executives;

**iii.** Department Managers;

**iv.** Employees under contract; and

**v.** Additional Exemptions shown in the Declarations as:
- Job Classifications; or
- Employees.

**(ii)** Include:

**i.** Payroll;

**ii.** Employee benefits, if directly related to payroll;

**iii.** FICA payments you pay;

**iv.** Union dues you pay; and

**v.** Workers' compensation premiums.

**(2) Extended Business Income**

**(a)** If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(i)** Begins on the date property except finished stock is replaced and "operations" are resumed; and

**(ii)** Ends on the earlier of:

**i.** The date you could restore your "operations" , with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

**ii.** 60 consecutive days after the date determined in Paragraph **(a)(1)** above, unless a greater number of consecutive days is shown in the Declarations.

12

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

**(b)** Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** This Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**g. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to the property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

**(i)** At the described premises; or

13

          **(ii)** At replacement premises or at temporary
               locations, including relocation expenses,
               and costs to equip and operate the
               replacement or temporary locations.

      **(b)** To minimize the suspension of business if you cannot
         continue "operations".

      **(c)** To:

          **(i)** Repair or replace any property; or
          **(ii)** Research, replace or restore the lost
             information on damaged "valuable papers
             and records";

          to the extent it reduces the amount of loss
          that otherwise would have been payable under
          this Additional Coverage or Additional
          Coverage **f.** Business Income.

**(3)** With respect to the coverage provided in this Additional
    Coverage, suspension means:

      **(a)** The partial slowdown or complete cessation of your
         business activities; or

      **(b)** That a part or all of the described premises is rendered
         untenantable, if coverage for Business Income applies.

**(4)**     We will only pay for Extra Expense that occurs within 12
    consecutive months after the date of direct physical loss or
    damage. This Additional Coverage is not subject to the
    Limits of Insurance of Section I – Property.

38.     On or about May 10, 2016, BE Structural, P.C., an engineering firm, produced a

report regarding the collapse of the retaining wall. A true and correct copy of the report is attached

hereto as **Exhibit "C"**.

39.     The report states: "The collapsed retaining wall connects the 8-apartment building

and the Mulberry Street Bridge. The space above the retaining wall serves as a parking space. The

total width of the parking pavement remaining after the collapse is measured to be 48 feet from the

parking lot curb to the edge of the remaining pavement." See Exhibit "C", page 2.

40.     The report further states: "We observed that the 8-apartment building was

connected with the collapsed retaining wall through a slab of concrete as shown in Image 21(B)

where the park bench sits on it. A slab of the concrete structure was damaged during the collapse of the retaining wall." See Exhibit "C", page 2.

41. "The poured-in concrete wall which attaches to the slab as referred in Image 21(B) is damaged and shall be supported temporarily or removed so that if the slab collapses, it does not impart force onto the remaining wall of the building." See Exhibit "C", page 2.

42. The report states: "The walking platform was observed to have cracks in the walking slab and vegetation growing indicating maintenance issues. We were told that this walking platform was torn down previously before the retaining wall collapsed. The exact date when the walking platform was torn down is unknown. We believe that this might have affected the structural dynamics of the retaining wall and potentially could be part of the reason of the collapse." See Exhibit "C", page 2.

43. By letters dated January 18, 2018 and January 24, 2017, Defendants denied coverage for the collapse of the retaining wall. See **Exhibits "D"** and **"E"**, respectively attached hereto.

44. Neither of the letters denying coverage stated, acknowledged or indicated that the retaining wall was connected to and was a structural component of the smaller apartment building, which was located on the insured property.

45. Neither of the letters denying coverage addressed whether the retaining wall was a part of the smaller apartment building, despite the fact that Plaintiffs had produced an engineering report that clearly stated that the retaining wall was connected to the smaller apartment building at the time of the collapse.

15

46. Neither of the letters denying coverage made mention that the engineering report, attached hereto as Exhibit "C", specifically stated that at least one basis for the collapse of the retaining wall was decay that was hidden from view.

47. Throughout the course of the past two years, the various parties involved in this dispute have exchanged information.

48. There are photographs that have been produced showing a contractor for PennDOT using jackhammers to remodel and renovate the retaining wall as part of the work that they were performing on the Mulberry Street Bridge.

49. Less than a year after these extensive remodeling and renovations were performed on the retaining wall, the wall collapsed.

50. A reasonable conclusion from the above events is that PennDOT and its contractors used defective materials or methods in the remodeling or renovation of the wall which caused it to collapse.

51. The letters denying coverage make no mention of the work that was performed by PennDOT and its contractors as being a potential cause of the collapse of the wall.

52. As part of the information that has been exchanged, there is an e-mail regarding the work that PennDOT and/or its contractors were to perform on the retaining wall, and it specifically mentions that no engineering work would be performed to determine whether and under what circumstances work such as jackhammering the retaining wall could be performed. A true and correct copy of the e-mail is attached hereto as **Exhibit "F"**.

53. Plaintiffs assert that it is a reasonable conclusion that jackhammering a retaining wall without obtaining a proper engineering report is a defective method of remodeling or renovation of the wall and may have caused or contributed to the collapse of the wall.

16

54.     Neither of the letters denying coverage from the insurance company Defendants mention anything about the failure of PennDOT and its contractors to obtain an engineering analysis before taking jackhammers to the retaining wall.

55.     The Policy also provides coverage for claims from third parties up to the amount set forth in the Policy. See Declarations, Section II.

56.     Under Section II – Liability in the Policy, Harford and Firstline agree: "We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property damage" and "personal and advertising injury" to which this insurance applies." Policy, Section II, p. 35 of 53.

57.     The Policy states that "this insurance applies" to "property damage" if it is "caused by an occurrence" that takes place in the "coverage territory" during the "coverage period." Policy, Section II, p. 35 of 53.

58.     An "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Policy, Section II, p. 49 of 53.

59.     The Coverage territory means the entire United States. Policy, Section II, p. 47 of 53.

60.     The coverage period contained in the declarations is June 18, 2015 to June 18, 2016.

61.     As a result of the sudden and unexpected collapse of the retaining wall on May 5, 2016, properties owned and possessed by third parties sustained severe physical property damage.

62.     The owners of those business have made formal claims to Plaintiffs seeking payment of damages for cleanup, structural repair and reinforcement of the collapsed wall and the earth remaining after the collapse, complete repair of the damage to their properties, and recovery

17

of lost business income and extra expenses associated with relocating their businesses, equipment and inventory.

63.     Howard and Monique Henry and Howard Tire & Auto Inc. are the alleged owners of one of the businesses affected by the wall collapse. They have filed a complaint against Plaintiffs and the other parties identified above. A true and correct copy of the current complaint is attached hereto as **Exhibit "G"**. Without accepting the allegations of the complaint as true, Plaintiffs incorporate the allegations of Exhibit G in their entirety as if set forth in full to show the allegations asserted against Plaintiffs in this action.

64.     The allegations of the complaint allege claims that are covered by the Policy.

65.     No exclusions of the Policy are applicable that permit Harford and Firstline to deny coverage for the liability claims asserted in Exhibit G.

66.     Defendants Harford and Firstline have denied coverage for the claims asserted by all property owners who allege damages as a result of the wall collapse, including the claims asserted in Exhibit G.    Harford and Firstline have agreed to provide Plaintiffs with a defense to the lawsuit filed by the Henrys. A true and correct copy of the letter denying coverage for indemnity and agreeing to defend the Henrys' complaint under a reservation of rights is attached hereto as **Exhibit "H."**

## COUNT I – BREACH OF CONTRACT

McFarland, LP, Spring Village Apartments, LLC, and Spring Village, LP
v.
Harford Mutual Insurance Companies and Firstline National Insurance Company

67.     Plaintiffs incorporate herein by reference each and every preceding paragraph of this Complaint as though fully set forth herein at length.

18

68.     Plaintiff and Defendant insurance companies Harford and Firstline had a valid insurance policy between them by which Defendant insurance companies contracted to pay for the losses and damages to Plaintiffs that are covered by the policy.

69.     Plaintiffs are insureds under the policy and Defendants owe Plaintiffs a duty to promptly investigate losses covered by the policy and to promptly pay those losses.

70.     Defendants breached their duty under the policy by failing to promptly investigate Plaintiffs' losses and pay those claims under the policy.

71.     By failing to promptly investigate the losses and to pay those claims covered under the policy, Defendants have breached its obligation to act in good faith.

72.     Defendants have failed to pay for the damages sustained and covered under the policy, including, but not limited to, property damage, business income loss and extra expenses.

73.     As a direct and proximate result of Defendants' material breach of the policy, Plaintiffs have been injured and suffered damages in excess of one million dollars ($1,000,000.00), plus incidental and consequential damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter a judgment against Defendants in an amount in excess of the mandatory arbitration limits of Dauphin County, requiring Defendant to pay all monetary damages suffered by Plaintiffs including, without limitation, property damages, liability for settlement or judgment, business income loss, extra expense, consequential damages, pre-judgment interest, post-judgment interest and costs, together with any other relief that the Court may deem necessary or appropriate

## COUNT II – DECLARATORY JUDGMENT

McFarland, LP, Spring Village Apartments, LLC, and Spring Village, LP
v.
Harford Mutual Insurance Companies and Firstline National Insurance Company

19

74. Plaintiffs incorporate herein by reference each and every preceding paragraph of this Complaint as though fully set forth herein at length.

75. Plaintiff and Defendant insurance companies had a valid insurance policy between them by which Defendant insurance companies contracted to pay for the losses and damages to Plaintiffs that are covered by the policy.

76. Plaintiffs are insureds under the policy and Defendants owe Plaintiffs a duty to defend and indemnify Plaintiffs from third party claims alleging damages covered by the Policy.

77. Third party property owners, including the Henrys, have asserted claims that are covered under the Policy.

78. Instead of accepting responsibility for coverage of the third party claims in full, Defendants Harford and Firstline have denied coverage, and have only agreed to defend the lawsuit filed by the Henrys under a reservation of their rights to deny the claims in full at some future point.

79. Plaintiffs request that this court issue an order declaring that the policy covers the claims of the Henrys for both defense and liability up to the amounts contained in the policy.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an order declaring that the claims asserted by the Henrys in Exhibit G are covered under the Policy and that Defendants Harford and Firstline have a duty to defend and indemnify Plaintiffs without reservation, together with any other relief that the Court may deem necessary or appropriate.

## COUNT III – INSURANCE BAD FAITH

McFarland, LP, Spring Village Apartments, LLC, and Spring Village, LP
v.
Harford Mutual Insurance Companies and Firstline National Insurance Company

20

80.     Plaintiffs incorporate herein by reference each and every preceding paragraph of this Complaint as if fully set forth herein at length.

81.     Defendants Harford and Frontline owe to Plaintiffs a duty under both the Common Law and 42 Pa.C.S.A §8371 to act in good faith and in a reasonable manner in connection with any and all obligations it owes to Plaintiffs under their Policy.

82.     The Defendant insurance companies had a duty to reasonably complete the investigation of the claim, and if there were delays in completing the investigation, Defendants had a duty to provide Plaintiffs with a reasonable written explanation for the delay and state when a decision on the claim may be expected.

83.     Defendants breached this duty and instead acted in bad faith in:

    a.     Delaying the payment of insurance benefits to Plaintiffs;

    b.     Failing to properly investigate the claim;

    c.     Failing to promptly read, verify and investigate the various engineering and cost estimates;

    d.     Disregarding the opinion and findings of the engineers and estimators;

    e.     Misrepresenting to Plaintiffs their coverage under the policy;

    f.     Making unreasonable investigation requests upon Plaintiffs;

    g.     Delaying the investigation of Plaintiffs' claims;

    h.     Refusing to promptly pay Plaintiffs' claims despite no reasonable basis existing to dispute the claims; and

    i.     Issuing a reservation of rights letter denying coverage for third party liability claims where coverage for those claims obviously owed under the Policy.

21

84.     Defendants have failed to pay Plaintiffs' property damage, business income loss, and extra expense claims, and to accept full responsibility for the third party claims of other property owners, and continues to fail to pay Plaintiffs' claims without any reasonable basis and with the knowledge and/or reckless disregard for the lack of a reasonable basis.

85.     At all times, Defendants were aware of their obligation under the Policy to investigate claims, pay claims and accept the defense and indemnity of third party claims accordingly under the Policy.

86.     Defendants acted without a reasonable basis and knew or recklessly disregarded the lack of a reasonable basis in refusing to promptly investigate and pay the claims covered by the policy.

87.     As a direct and proximate result of their breach of such duties, Plaintiffs have been and continue to be injured and prejudiced and have suffered damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter a judgment against Defendants in an amount in excess of the mandatory arbitration limits of Dauphin County as to this count as follows:  a) an award of damages against Defendants pursuant to 42 Pa.C.S.A §8371(3) in an amount that will fully compensate Plaintiffs for their attorneys' fees, expenses, court costs incurred to date and in the future incurred by Plaintiffs in pursuing coverage rights under the policy; b) an award of punitive damages in Plaintiffs' favor and against Defendants pursuant to 42 Pa.C.S.A §8371(2); c) an award of interest on the amount of the claim from the date of the claim to the present in an amount equal to the prime rate of interest plus 3% under 42 Pa.C.S.A §8371(3); and d) the award of any other relief that the Court may deem necessary or appropriate.

22

Respectfully submitted,

**SMIGEL, ANDERSON & SACKS, LLP**

Date:   July 24, 2018

By:

Michael R. Kelley, Esquire
I.D. #58854
Adam G. Klein, Esquire
I.D. # 82283
4431 North Front Street
Harrisburg, PA 17110-1709
(717) 234-2401
*Attorneys for Plaintiffs*

23

## **VERIFICATION**

I, Isaac Dohany, an authorized agent, principal and/or representative of McFarland LP and Spring Village Apartments, LLC, hereby verify that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. Further, I understand that this Verification is made subject to the penalties of 18 Pa. C.S.A. §4904 relating to the unsworn falsifications to authorities.

Isaac Dohany

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Plaintiffs

Signature:

Name: Adam G. Klein, Esquire

Attorney No. (if applicable): 82283

| | |
|---|---|
| MCFARLAND, LP, SPRING VILLAGE APARTMENTS, LLC, and SPRING VILLAGE, LP, <br> Plaintiffs, <br><br> v. <br><br> HARFORD MUTUAL INSURANCE COMPANIES and FIRSTLINE NATIONAL INSURANCE COMPANY, PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, CITY OF HARRISBURG, CENTRAL PENN ASPHALT, INC., PENROSE PROPERTIES, INC., GREENEBAUM STRUCTURES, P.C., NESHAMINY CONSTRUCTORS, INC., TRC COMPANIES, INC., F.T. KITLINSKI & ASSOCIATES, HOWARD and MONIQUE HENRY, and HOWARD TIRE & AUTO, INC., <br> Defendants. | : IN THE COURT OF COMMON PLEAS <br> : DAUPHIN COUNTY, PENNSYLVANIA <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : NO. 2018-CV-2988-CV <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

I, Adam G. Klein, Esquire, attorney for the Plaintiffs in the above-captioned matter, certify

that I this day served a copy of the foregoing Complaint upon the person(s) indicated below by

depositing a copy of the same in the United States Mail, first-class mail, postage prepaid, at

Harrisburg, Pennsylvania, and addressed as follows:

Harford Mutual Insurance Companies
200 North Main Street
Bel Air, MD 21014-3544

Firstline National Insurance Company
200 North Main Street
Bel Air, MD 21014

City of Harrisburg
10 North 2nd Street
Harrisburg, PA 17101

Pennsylvania Department of Transportation
Office of Chief Counsel
9th Floor Commonwealth Keystone Building
400 North Street
Harrisburg, PA 17120-0041

Penrose Properties, Inc.
One Brewery Park
1301 North 31st Street
Philadelphia, PA 19121

Central Penn Asphalt, Inc.
3701 G. Derry Street
Harrisburg, PA  17111

Greenebaum Structures, P.C.
26-28 Market Square, Suite 2
Manheim, PA  17545

Neshaminy Constructors, Inc.
1839 Bustleton Pike
Feasterville, PA  19053

Howard and Monique Henry
335 Hemlock Lane
Etters, PA  17319

Penrose Properties, Inc.
230 Wyoming Avenue, Suite 5
Kingston, PA  18704

TRC Companies, Inc.
650 Suffolk Street
Lowell, MA  01854

F.T. Kitlinski & Associates, Inc.
3608 North Progress Avenue
Harrisburg, PA  17110

Howard Tire & Auto, Inc.
205 South Cameron Street
Harrisburg, PA  17101

**SMIGEL, ANDERSON & SACKS, LLP**

Date:  July 24, 2018

By:

Michael R. Kelley, Esquire
I.D. # 58854
Adam G. Klein, Esquire
I.D. #82283
4431 North Front Street
Harrisburg, PA  17110-1709
(717) 234-2401
*Attorneys for Plaintiffs*

## COMPLAINT – EXHIBIT LIST

EXHIBIT A            Photographs showing the retaining wall and its physical and structural connection to the smaller apartment building.

EXHIBIT B            Business owner's insurance policy No. 8159577.

EXHIBIT C            BE Structural, P.C. Report dated May 10, 2016.

EXHIBIT D            January 18, 2018 letter denying coverage for the collapse of the retaining wall

EXHIBIT E            January 24, 2017 letter denying coverage for the collapse of the retaining wall

EXHIBIT F            E-mail regarding "no engineering will be performed on the temporary stabilization"

EXHIBIT G            Howard and Monique Henry and Howard Tire & Auto Inc. Complaint

EXHIBIT H            Letter denying coverage for indemnity and agreeing to defend the Henrys' complaint under a reservation of rights



PLAINTIFF'S EXHIBIT

A

NCI 020994



11 02 2015 11 06



NCII 020993



NICI 020960



NCI 020727



NCI 020729



NCI 020098



NCI 020997



NCI 020996



NCI 020995



NCI 021001



NCI 020992



NCI 020991



NCI 020083



NCI 020851



NCI 020846





NCI 020843



NCI 020842



NCI 020841



NCI 020640



NCI 020008



NCI 020006



NCI 020005



NCI 020000



NCI 019999

NCI 019793

NCI 019794





NCI 019795

NCI 019796

NCI 019797

NCI 019798





NCI 020847



NCI 020848

Property and Casualty Insurance
Since 1842

Firstline National Insurance Company

THE
# HARFORD MUTUAL
### INSURANCE COMPANIES

PHONE 1-410-838-4000
FAX NO. 1-410-838-8878

Policy #:  8159577

Agent:  BUSINESS INS. SERVICES, INC.

Issued to:  SPRING VILLAGE APARTMENTS, LLC

Phone #:  (302) 655-5300



# Businessowners Policy

## 24-Hour Claims Reporting Line
## 1-877-445-5826*
## *For reporting of new claims only



THIS POLICY JACKET WITH BUSINESS COVERAGE FORM(S), DECLARATIONS AND ENDORSEMENTS,
IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THIS POLICY.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_Frank Pierce Kellner_   **Secretary**        _Steven Dan Linkous_   **President**

**The Harford Mutual Insurance Companies**

Bel Air, Maryland 21014-3544

**Company:** Firstline National Insurance Company

**Policy Number:** 8159577   **Renewal of:** 8153160

**BUSINESSOWNERS DECLARATIONS**

**Named Insured and Mailing Address**

SPRING VILLAGE APARTMENTS, LLC
212 SECOND ST, SUITE 305
C/O CHARLES BIXENSPANNER
LAKEWOOD, NJ 08701

**Agency Name and Address**

1559-BAS   BUSINESS INS. SERVICES, INC.
PO BOX 4380
WILMINGTON, DE 19807
(302) 655-5300

**Policy Period:   From** 06/18/2015 **to** 06/18/2016 **at** 12:01 A.M. Standard Time at your mailing address shown above.
In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

BUSINESS DESCRIPTION: Apartment Buildings
FORM OF BUSINESS: Limited Liability Company

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 1, BUILDING 1

PREMISES ADDRESS:                          Construction: Joisted Masonry
   312 E Baltimore Ave                     Protection Class: 4
   CLIFTON HEIGHTS, PA 19018
   COUNTY: DELAWARE

   Occupancy: Apartment Building - over 4 families, no office occupancy

MORTGAGEHOLDER:  None

PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
   BUILDING - Automatic Increase 8%**.......................................$        *
   BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

   *Includes Increased Building Limit Percentage, if applicable
   **This percentage can only vary by premises, not by building

OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
   NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

POLICY DECLARATIONS ARE CONTINUED ON THE NEXT PAGE.

LIABILITY AND MEDICAL EXPENSES:  See Liability and Medical Expenses Schedule

FORMS AND ENDORSEMENTS:  See Form Schedule

PREMIUM:   Annual Premium: $200,241

(1) 2015/03/01-1.00(37)
ISSUE DATE: 05/04/2015 #1

Countersigned

**INSURED COPY**

(Authorized Representative)        (Date)

LIABILITY AND MEDICAL EXPENSES SCHEDULE

SECTION II - LIABILITY AND MEDICAL EXPENSES

Each paid claim for the following coverages reduces the amount of insurance we
provide during the applicable annual period.  Please refer to Section II-Liability
in the Businessowners Coverage Form and any attached endorsements.

LIABILITY COVERAGE*                                              LIMIT OF INSURANCE
    Liability and Medical Expenses (Per Occurrence)........................$1,000,000
    Medical Expenses (Per Person)..........................................$    5,000
    Damage to Premises Rented to You (Any One Premises)....................$   50,000
    Other Than Products/Completed Operations Aggregate.....................$2,000,000
    Products/Completed Operations Aggregate................................$2,000,000

    *Optional Property Damage Liability Deductible May Apply. Refer to
    Forms Schedule for Deductible Information (If Applicable).

SUPPLEMENTAL DECLARATIONS PAGE - PROPERTY SCHEDULE

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 2, BUILDING 1

> PREMISES ADDRESS:                      Construction: Joisted Masonry
>   122 S 49th St                        Protection Class: 2
>   122-128
>   PHILADELPHIA, PA 19139
>   COUNTY: PHILADELPHIA
>
>   Occupancy: Apartment Building - over 4 families, no office occupancy
>
> MORTGAGEHOLDER: None
>
> PROPERTY COVERAGES: ($2,500 property deductible per occurrence)   LIMIT OF INSURANCE*
>   BUILDING - Automatic Increase 8%**.....................................$        *
>   BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations
>
>   *Includes Increased Building Limit Percentage, if applicable
>   **This percentage can only vary by premises, not by building
>
> OPTIONAL COVERAGES: ($500 deductible for OPTIONAL COVERAGES)
>   NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 2, BUILDING 2

> PREMISES ADDRESS:                      Construction: Joisted Masonry
>   122 S 49th St                        Protection Class: 2
>   122-128
>   PHILADELPHIA, PA 19139
>   COUNTY: PHILADELPHIA
>
>   Occupancy: Apartment Building - over 4 families, no office occupancy
>
> MORTGAGEHOLDER: None
>
> PROPERTY COVERAGES: ($2,500 property deductible per occurrence)   LIMIT OF INSURANCE*
>   BUILDING - Automatic Increase 8%**.....................................$        *
>   BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations
>
>   *Includes Increased Building Limit Percentage, if applicable
>   **This percentage can only vary by premises, not by building
>
> OPTIONAL COVERAGES: ($500 deductible for OPTIONAL COVERAGES)
>   NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SUPPLEMENTAL DECLARATIONS PAGE - PROPERTY SCHEDULE

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 3, BUILDING 1

   PREMISES ADDRESS:                Construction: Joisted Masonry
     213 E Baltimore Ave            Protection Class: 4
     CLIFTON HEIGHTS, PA 19018
     COUNTY: DELAWARE

     Occupancy: Apartment Building - over 4 families, no office occupancy

   MORTGAGEHOLDER:  None

   PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)     LIMIT OF INSURANCE*
     BUILDING - Automatic Increase 8%**.................................$     *
     BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

     *Includes Increased Building Limit Percentage, if applicable
     **This percentage can only vary by premises, not by building

   OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
     NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 4, BUILDING 1

   PREMISES ADDRESS:                Construction: Joisted Masonry
     149 Wilson St                  Protection Class: 4
     MIDDLETOWN, PA 17057
     COUNTY: DAUPHIN

     Occupancy: Apartment Building - over 4 families, no office occupancy

   MORTGAGEHOLDER:  None

   PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)     LIMIT OF INSURANCE*
     BUILDING - Automatic Increase 8%**.................................$     *
     BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

     *Includes Increased Building Limit Percentage, if applicable
     **This percentage can only vary by premises, not by building

   OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
     NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SUPPLEMENTAL DECLARATIONS PAGE - PROPERTY SCHEDULE

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 5, BUILDING 1

    PREMISES ADDRESS:                    Construction: Joisted Masonry
       1300 W Albanus                  Protection Class: 2
       PHILADELPHIA, PA 19141
       COUNTY: PHILADELPHIA

    Occupancy: Apartment Building - over 4 families, no office occupancy

   MORTGAGEHOLDER:  None

   PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)     LIMIT OF INSURANCE*
      BUILDING - Automatic Increase 8%**.......................................$     *
      BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

   OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 6, BUILDING 1

    PREMISES ADDRESS:                    Construction: Joisted Masonry
       1309 W ROCKLAND               Protection Class: 2
       PHILADELPHIA, PA 19141
       COUNTY: PHILADELPHIA

    Occupancy: Apartment Building - over 4 families, no office occupancy

   MORTGAGEHOLDER:  None

   PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)     LIMIT OF INSURANCE*
      BUILDING - Automatic Increase 8%**.......................................$     *
      BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

   OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SUPPLEMENTAL DECLARATIONS PAGE – PROPERTY SCHEDULE

SECTION I – PROPERTY

PREMISES INFORMATION: PREMISES 7, BUILDING 1

   PREMISES ADDRESS:                           Construction: Joisted Masonry
      601 POPLAR ST                        Protection Class: 5
      SHARON HILL, PA 19079
      COUNTY: DELAWARE

    Occupancy: Apartment Building – over 4 families, no office occupancy

   MORTGAGEHOLDER: None

   PROPERTY COVERAGES: ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
      BUILDING – Automatic Increase 8%**.....................................$    *
      BUSINESS INCOME – Included – Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

   OPTIONAL COVERAGES: ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE – (see blanket limit schedule)

SECTION I – PROPERTY

PREMISES INFORMATION: PREMISES 7, BUILDING 2

   PREMISES ADDRESS:                           Construction: Joisted Masonry
      601 POPLAR ST                        Protection Class: 5
      SHARON HILL, PA 19079
      COUNTY: DELAWARE

    Occupancy: Apartment Building – over 4 families, no office occupancy

   MORTGAGEHOLDER: None

   PROPERTY COVERAGES: ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
      BUILDING – Automatic Increase 8%**.....................................$    *
      BUSINESS INCOME – Included – Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

   OPTIONAL COVERAGES: ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE – (see blanket limit schedule)

SUPPLEMENTAL DECLARATIONS PAGE - PROPERTY SCHEDULE

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 7, BUILDING 3

    PREMISES ADDRESS:                  Construction: Joisted Masonry
     601 POPLAR ST                    Protection Class: 5
     SHARON HILL, PA 19079
     COUNTY: DELAWARE

     Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER:  None

    PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
     BUILDING ~ Automatic Increase 8%**.................................$    *
     BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

     *Includes Increased Building Limit Percentage, if applicable
     **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
     NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 7, BUILDING 4

    PREMISES ADDRESS:                  Construction: Joisted Masonry
     601 POPLAR ST                    Protection Class: 5
     SHARON HILL, PA 19079
     COUNTY: DELAWARE

     Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER:  None

    PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
     BUILDING - Automatic Increase 8%**.................................$    *
     BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

     *Includes Increased Building Limit Percentage, if applicable
     **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
     NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SUPPLEMENTAL DECLARATIONS PAGE - PROPERTY SCHEDULE

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 7, BUILDING 5

   PREMISES ADDRESS:                          Construction: Joisted Masonry
      601 POPLAR ST                         Protection Class: 5
      SHARON HILL, PA 19079
      COUNTY: DELAWARE

      Occupancy: Apartment Building - over 4 families, no office occupancy

   MORTGAGEHOLDER: None

   PROPERTY COVERAGES: ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
      BUILDING - Automatic Increase 8%**....................................$     *
      BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

   OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 7, BUILDING 6

   PREMISES ADDRESS:                          Construction: Joisted Masonry
      601 POPLAR ST                         Protection Class: 5
      SHARON HILL, PA 19079
      COUNTY: DELAWARE

      Occupancy: Apartment Building - over 4 families, no office occupancy

   MORTGAGEHOLDER: None

   PROPERTY COVERAGES: ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
      BUILDING - Automatic Increase 8%**....................................$     *
      BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

   OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SUPPLEMENTAL DECLARATIONS PAGE - PROPERTY SCHEDULE

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 7, BUILDING 7

    PREMISES ADDRESS:                    Construction: Joisted Masonry
      601 POPLAR ST                  Protection Class: 5
      SHARON HILL, PA 19079
      COUNTY: DELAWARE

    Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER: None

    PROPERTY COVERAGES: ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
        BUILDING - Automatic Increase 8%**.................................$    *
        BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES: ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 8, BUILDING 1

    PREMISES ADDRESS:                    Construction: Joisted Masonry
      206 OSBORNE ST                 Protection Class: 2
      PHILADELPHIA, PA 19128
      COUNTY: PHILADELPHIA

    Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER: None

    PROPERTY COVERAGES: ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
        BUILDING - Automatic Increase 8%**.................................$    *
        BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES: ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SUPPLEMENTAL DECLARATIONS PAGE – PROPERTY SCHEDULE

SECTION I – PROPERTY

PREMISES INFORMATION: PREMISES 9, BUILDING 1

    PREMISES ADDRESS:                           Construction: Joisted Masonry
      132 FOLCROFT AVE                      Protection Class: 4
      FOLCROFT, PA 19032
      COUNTY: DELAWARE

      Occupancy: Apartment Building – over 4 families, no office occupancy

    MORTGAGEHOLDER:  None

    PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
      BUILDING – Automatic Increase 8%**.....................................$    *
      BUSINESS INCOME – Included – Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE – (see blanket limit schedule)

SECTION I – PROPERTY

PREMISES INFORMATION: PREMISES 9, BUILDING 2

    PREMISES ADDRESS:                           Construction: Joisted Masonry
      132 FOLCROFT AVE                      Protection Class: 4
      FOLCROFT, PA 19032
      COUNTY: DELAWARE

      Occupancy: Apartment Building – over 4 families, no office occupancy

    MORTGAGEHOLDER:  None

    PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
      BUILDING – Automatic Increase 8%**.....................................$    *
      BUSINESS INCOME – Included – Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE – (see blanket limit schedule)

SUPPLEMENTAL DECLARATIONS PAGE - PROPERTY SCHEDULE

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 9, BUILDING 3

    PREMISES ADDRESS:                    Construction: Joisted Masonry
      132 FOLCROFT AVE                Protection Class: 4
      FOLCROFT, PA 19032
      COUNTY: DELAWARE

      Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER:  None

    PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)     LIMIT OF INSURANCE*
      BUILDING - Automatic Increase 8%**..................................$     *
      BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 9, BUILDING 4

    PREMISES ADDRESS:                    Construction: Joisted Masonry
      132 FOLCROFT AVE                Protection Class: 4
      FOLCROFT, PA 19032
      COUNTY: DELAWARE

      Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER:  None

    PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)     LIMIT OF INSURANCE*
      BUILDING - Automatic Increase 8%**..................................$     *
      BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

(11) POLICY: 8159577 2015/03/01-1.00(37)
ISSUE DATE: 05/04/2015 #1

SUPPLEMENTAL DECLARATIONS PAGE - PROPERTY SCHEDULE
------------------------------------------------------------------------

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 9, BUILDING 5

    PREMISES ADDRESS:                       Construction: Joisted Masonry
       132 FOLCROFT AVE                   Protection Class: 4
       FOLCROFT, PA 19032
       COUNTY: DELAWARE

       Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER: None

    PROPERTY COVERAGES: ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
       BUILDING - Automatic Increase 8%**.....................................$    *
       BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

       *Includes Increased Building Limit Percentage, if applicable
       **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
       NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)
------------------------------------------------------------------------
SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 10, BUILDING 1

    PREMISES ADDRESS:                       Construction: Joisted Masonry
       1408 VERNON ST                     Protection Class: 3
       HARRISBURG, PA 17104
       COUNTY: DAUPHIN

       Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER: None

    PROPERTY COVERAGES: ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
       BUILDING - Automatic Increase 8%**.....................................$    *
       BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

       *Includes Increased Building Limit Percentage, if applicable
       **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
       NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

(12) POLICY: 8159577 2015/03/01-1.00(37)
ISSUE DATE: 05/04/2015 #1

SUPPLEMENTAL DECLARATIONS PAGE - PROPERTY SCHEDULE

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 10, BUILDING 2

    PREMISES ADDRESS:                    Construction: Joisted Masonry
    1436 VERNON ST                     Protection Class: 3
    HARRISBURG, PA 17104
    COUNTY: DAUPHIN

    Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER:  None

    PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)     LIMIT OF INSURANCE*
        BUILDING - Automatic Increase 8%**................................................$     *
        BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

        *Includes Increased Building Limit Percentage, if applicable
        **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
        NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 11, BUILDING 1

    PREMISES ADDRESS:                    Construction: Joisted Masonry
    225 S 13TH ST                      Protection Class: 3
    225-239
    HARRISBURG, PA 17104
    COUNTY: DAUPHIN

    Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER:  None

    PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)     LIMIT OF INSURANCE*
        BUILDING - Automatic Increase 8%**................................................$     *
        BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

        *Includes Increased Building Limit Percentage, if applicable
        **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
        NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SUPPLEMENTAL DECLARATIONS PAGE - PROPERTY SCHEDULE
--------------------------------------------------------------------------

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 12, BUILDING 1

    PREMISES ADDRESS:                     Construction: Joisted Masonry
      1312 DERRY ST                      Protection Class: 3
      HARRISBURG, PA 17104
      COUNTY: DAUPHIN

    Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER: None

    PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
      BUILDING - Automatic Increase 8%**....................................$    *
      BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)
--------------------------------------------------------------------------
SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 13, BUILDING 1

    PREMISES ADDRESS:                     Construction: Joisted Masonry
      1586 N 52ND ST                    Protection Class: 2
      PHILADELPHIA, PA 19131
      COUNTY: PHILADELPHIA

    Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER: None

    PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
      BUILDING - Automatic Increase 8%**....................................$    *
      BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

(14) POLICY: 8159577 2015/03/01-1.00(37)
ISSUE DATE: 05/04/2015 #1

SUPPLEMENTAL DECLARATIONS PAGE - PROPERTY SCHEDULE

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 13, BUILDING 2

PREMISES ADDRESS:                          Construction: Joisted Masonry
   1604 N 52ND ST                          Protection Class: 2
   PHILADELPHIA, PA 19131
   COUNTY: PHILADELPHIA

   Occupancy: Apartment Building - over 4 families, no office occupancy

MORTGAGEHOLDER:  None

PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
   BUILDING - Automatic Increase 8%**.........................................$      *
   BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

   *Includes Increased Building Limit Percentage, if applicable
   **This percentage can only vary by premises, not by building

OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
   NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 14, BUILDING 1

PREMISES ADDRESS:                          Construction: Joisted Masonry
   3206 TOWNSHIP LINE RD                    Protection Class: 4
   DREXEL HILL, PA 19026
   COUNTY: DELAWARE

   Occupancy: Apartment Building - over 4 families, no office occupancy

MORTGAGEHOLDER:  None

PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
   BUILDING - Automatic Increase 8%**.........................................$      *
   BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

   *Includes Increased Building Limit Percentage, if applicable
   **This percentage can only vary by premises, not by building

OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
   NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

(15) POLICY: 8159577 2015/03/01-1.00(37)
ISSUE DATE: 05/04/2015 #1

SUPPLEMENTAL DECLARATIONS PAGE - PROPERTY SCHEDULE
----------------------------------------------------------------

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 15, BUILDING 1

    PREMISES ADDRESS:                     Construction: Joisted Masonry
      2202 N 20TH ST                    Protection Class: 2
      PHILADELPHIA, PA 19132
      COUNTY: PHILADELPHIA

      Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER:  None

    PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
      BUILDING - Automatic Increase 8%**......................................$     *
      BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)
----------------------------------------------------------------

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 16, BUILDING 1

    PREMISES ADDRESS:                     Construction: Joisted Masonry
      211 E BALTIMORE AVE               Protection Class: 4
      CLIFTON HEIGHTS, PA 19018
      COUNTY: DELAWARE

      Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER:  None

    PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
      BUILDING - Automatic Increase 8%**......................................$     *
      BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SUPPLEMENTAL DECLARATIONS PAGE - PROPERTY SCHEDULE
------------------------------------------------------------

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 16, BUILDING 2

    PREMISES ADDRESS:                     Construction: Joisted Masonry
      212 E BALTIMORE AVE              Protection Class: 4
      CLIFTON HEIGHTS, PA 19018
      COUNTY: DELAWARE

      Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER:  None

    PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)     LIMIT OF INSURANCE*
      BUILDING - Automatic Increase 8%**............................................$     *
      BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)
------------------------------------------------------------
SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 17, BUILDING 1

    PREMISES ADDRESS:                     Construction: Joisted Masonry
      1139 MULBERRY ST                Protection Class: 4
      HARRISBURG, PA 17104
      COUNTY: DAUPHIN

      Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER:  None

    PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)     LIMIT OF INSURANCE*
      BUILDING - Automatic Increase 8%**............................................$     *
      BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

(17) POLICY: 8159577 2015/03/01-1.00(37)
ISSUE DATE: 05/04/2015 #1

SUPPLEMENTAL DECLARATIONS PAGE - PROPERTY SCHEDULE

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 18, BUILDING 1

    PREMISES ADDRESS:                        Construction: Masonry Non-Combustible
      8100 ALGON AVE                      Protection Class: 2
      PHILADELPHIA, PA 19152
      COUNTY: PHILADELPHIA

      Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER: None

    PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
      BUILDING - Automatic Increase 8%**..................................$       *
      BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 18, BUILDING 2

    PREMISES ADDRESS:                        Construction: Masonry Non-Combustible
      8020 ALGON AVE                      Protection Class: 2
      (A&B)
      PHILADELPHIA, PA 19152
      COUNTY: PHILADELPHIA

      Occupancy: Apartment Building - over 4 families, no office occupancy

    MORTGAGEHOLDER: None

    PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
      BUILDING - Automatic Increase 8%**..................................$       *
      BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

      *Includes Increased Building Limit Percentage, if applicable
      **This percentage can only vary by premises, not by building

    OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
      NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)

(18) POLICY: 8159577 2015/03/01-1.00(37)
ISSUE DATE: 05/04/2015 #1

SUPPLEMENTAL DECLARATIONS PAGE - PROPERTY SCHEDULE

SECTION I - PROPERTY

PREMISES INFORMATION: PREMISES 18, BUILDING 3

PREMISES ADDRESS:                              Construction: Masonry Non-Combustible
    8021 ALGON AVE                             Protection Class: 2
    (A&B)
    PHILADELPHIA, PA 19152
    COUNTY: PHILADELPHIA

    Occupancy: Apartment Building - over 4 families, no office occupancy

MORTGAGEHOLDER:  None

PROPERTY COVERAGES:  ($2,500 property deductible per occurrence)    LIMIT OF INSURANCE*
    BUILDING - Automatic Increase 8%**................................$      *
    BUSINESS INCOME - Included - Refer to Endorsements for Coverage and Limitations

    *Includes Increased Building Limit Percentage, if applicable
    **This percentage can only vary by premises, not by building

OPTIONAL COVERAGES:  ($500 deductible for OPTIONAL COVERAGES)
    NONE

* INCLUDED IN BLANKET LIMIT OF INSURANCE - (see blanket limit schedule)
-----------------------------------------------------------------------------
BLANKET LIMIT(S) SCHEDULE

    BUILDING.................................................
    BUSINESS PERSONAL PROPERTY..............................................N/A

IMPORTANT NOTICES TO POLICYHOLDERS
-----------------------------------------------------------------------------
    BPMS12-1      BUSINESSOWNERS EQUIPMENT BREAKDOWN
    BPMS14-2      BOP ACCESS OR DISCLOSURE ADVISORY NOTICE
    ILMS001 (0704) FLOOD INSURANCE NOTICE
    ILMS003 (0115) POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE
    ILMS11  (0604) ADVISORY NOTICE TO POLICYHOLDERS - OFAC
    ILMS14-2      NOTICE TO POLICYHOLDERS REGARDING INFLATION PROTECTION & BLDG VALUES
    ILMS93-1(0908) LEAD LIABILITY EXCLUSION
    ILN088  (0903) PENNSYLVANIA FRAUD STATEMENT

-----------------------------------------------------------------------------
                            FORM SCHEDULE
-----------------------------------------------------------------------------
FORMS AND ENDORSEMENTS APPLYING TO AND MADE A PART OF THIS POLICY AT TIME OF ISSUE
-----------------------------------------------------------------------------
    BP0003  (0713) BUSINESSOWNERS COVERAGE FORM
    BP0142  (0315) PENNSYLVANIA CHANGES
    BP0191  (0702) PENNSYLVANIA NOTICE
    BP0417  (0110) EMPLOYMENT-RELATED PRACTICES EXCLUSION
    BP0501  (0702) CALCULATION OF PREMIUM
    BP0517  (0106) EXCLUSION - SILICA OR SILICA-RELATED DUST
    BP0523  (0115) CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM
    BP0538  (0115) EXCLUSION-OTHER ACTS OF TERRORISM; CAP ON CERTIFIED ACTS OF TERRORISM
    BP0542  (0115) EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM
    BP0577  (0106) FUNGI OR BACTERIA EXCLUSION (LIABILITY)
    BP0598  (0713) AMENDMENT OF INSURED CONTRACT DEFINITION
    BP1504  (0514) EXCLUSION-ACCESS/DISCLOSURE W/LTD BODILY INJURY EXCEPTION
    BPHG10  (0910) EXCLUSION - LEAD CONTAMINATION
    BPHG51  (0105) ASBESTOS EXCLUSION ENDORSEMENT
    BPHG58  (0908) TOBACCO HEALTH HAZARD EXCLUSION
(19) POLICY: 8159577 2015/03/01-1.00(37)
ISSUE DATE: 05/04/2015 #1

```
BPHG63  (0509) EQUIPMENT BREAKDOWN GREEN ENVIRONMENTAL AND EFFICIENCY IMPROVEMENTS
BPHG64  (0713) GREEN ENVIRONMENTAL AND EFFICIENCY IMPROVEMENTS
BPHG79  (0713) EXCLUSION-LOSS DUE TO BY-PRODUCTS OF PRODUCTION/PROCESSING OPERATIONS
BPIN01  (0713) BUSINESSOWNERS COVERAGE FORM INDEX
BP0446  (0713) ORDINANCE OR LAW COVERAGE...................................355.00
                    Coverage 1: Yes
                 Coverage 2 Limit: $73,129
                 Coverage 3 Limit: $73,129
        BI & EE Optional Coverage: Yes - 24 Hour Waiting Period
                    Premises 7, Building 1

BP0446  (0713) ORDINANCE OR LAW COVERAGE...................................355.00
                    Coverage 1: Yes
                 Coverage 2 Limit: $73,129
                 Coverage 3 Limit: $73,129
        BI & EE Optional Coverage: Yes - 24 Hour Waiting Period
                    Premises 7, Building 2

BP0446  (0713) ORDINANCE OR LAW COVERAGE...................................355.00
                    Coverage 1: Yes
                 Coverage 2 Limit: $73,129
                 Coverage 3 Limit: $73,129
        BI & EE Optional Coverage: Yes - 24 Hour Waiting Period
                    Premises 7, Building 3

BP0446  (0713) ORDINANCE OR LAW COVERAGE...................................355.00
                    Coverage 1: Yes
                 Coverage 2 Limit: $73,129
                 Coverage 3 Limit: $73,129
        BI & EE Optional Coverage: Yes - 24 Hour Waiting Period
                    Premises 7, Building 4

BP0446  (0713) ORDINANCE OR LAW COVERAGE...................................355.00
                    Coverage 1: Yes
                 Coverage 2 Limit: $73,129
                 Coverage 3 Limit: $73,129
        BI & EE Optional Coverage: Yes - 24 Hour Waiting Period
                    Premises 7, Building 5

BP0446  (0713) ORDINANCE OR LAW COVERAGE...................................355.00
                    Coverage 1: Yes
                 Coverage 2 Limit: $73,129
                 Coverage 3 Limit: $73,129
        BI & EE Optional Coverage: Yes - 24 Hour Waiting Period
                    Premises 7, Building 6

BP0446  (0713) ORDINANCE OR LAW COVERAGE...................................355.00
                    Coverage 1: Yes
                 Coverage 2 Limit: $73,129
                 Coverage 3 Limit: $73,129
        BI & EE Optional Coverage: Yes - 24 Hour Waiting Period
                    Premises 7, Building 7

BP1417  (0110) DESIGNATED LOCATION(S) GENERAL AGGREGATE LIMIT.................450.00
               Designated Location(s): All policy locations listed/charged for

BPHG60  (0713) BUSINESSOWNERS IMPROVED VALUE ENDORSEMENT PLUS.................350.00
BPHG40  (0713) EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT..................5,460.00
```

---

## OTHER CHARGES APPLIED TO THIS POLICY

Terrorism Risk Insurance Program Reauthorization Act of 2015 - Certified Acts -

```
(20) POLICY: 8159577 2015/03/01-1.00(37)
ISSUE DATE: 05/04/2015 #1
```

Premium Charged................................................................8,533.00

(21) POLICY: 8159577 2015/03/01-1.00(37)
ISSUE DATE: 05/04/2015 #1



**HARFORD MUTUAL**
COMMITTED TO MUTUAL SUCCESS

## Policyholders Notice
## Businessowners Equipment Breakdown

Equipment failure due to mechanical or electrical breakdown is more common than fire.

Most of you, our insureds, have equipment and need equipment coverage. Equipment breakdown covers over 1,000 types of equipment including, air conditioning units, telephone systems, refrigeration units, motors, pumps, compressors, data processing equipment, business and communication equipment, electrical equipment, boilers, and much more. It covers this equipment for losses due to mechanical breakdown, steam explosion and electrical arcing.

The Harford Mutual Insurance Company's policy will now automatically include this coverage for a small premium charge. Providing coverage in conjunction with your Businessowners policy enables us to provide this coverage at dramatic savings compared to purchasing a separate policy. The savings generated by not having to issue an extra policy are passed on to you.

In cases where an inspection of your systems is required, this service is provided at no additional cost. If you have questions about this service or require a jurisdictional inspection, please call (approximately 60 days prior to certificate expiration):

**MBR, a business unit of FM Global
Jurisdictional Inspection Service Line
800-814-4458 X 7896
866-594-1257**

As more and more people use computers and electrical devices, our Equipment Breakdown Coverage provides coverage for you where it did not exist before. In addition this protection gives you broader coverage and fewer coverage gaps at a tremendous savings and within one policy. We are excited about being able to offer you this broadened coverage at a very competitive price.

If you have any questions, please do not hesitate to contact your agent.

**No coverage is provided by this notice, nor can it be construed to replace any provision of your policy. You should read your policy and any related endorsements and review your declarations page for complete information on the coverages you are provided. If there is any conflict between the policy and this notice, the provisions of the policy shall prevail.**

200 NORTH MAIN STREET, BEL AIR, MARYLAND 21014-3544 ▪ T (410) 838 4000  F (410) 838 8675 ▪ HARFORDMUTUAL.COM

# BUSINESSOWNERS ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION EXCLUSIONS

## ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new endorsements, which applies to your renewal policy being issued by us:

**BP 15 04 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – With Limited Bodily Injury Exception**

When this endorsement is attached to your policy:

- With respect to liability for Bodily Injury and Property Damage, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.
- With respect to liability for Personal And Advertising Injury, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**BP 15 05 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – Limited Bodily Injury Exception Not Included**

When this endorsement is attached to your policy:

- With respect to liability for Bodily Injury and Property Damage, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage. However, when this endorsement is attached, it will result in a reduction of coverage due to the deletion of an exception with respect to damages because of bodily injury arising out of loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.
- With respect to liability for Personal And Advertising Injury, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**BP 15 06 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information (Personal And Advertising Injury Only)**

When this endorsement is attached to your policy, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

## ADVISORY NOTICE TO POLICYHOLDERS

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

**NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED.**

**THIS NOTICE PROVIDES INFORMATION CONCERNING POSSIBLE IMPACT ON YOUR INSURANCE COVERAGE DUE TO DIRECTIVES ISSUED BY OFAC.**

### PLEASE READ THIS NOTICE CAREFULLY

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- ➢ Foreign agents;
- ➢ Front organizations;
- ➢ Terrorists;
- ➢ Terrorist organizations; and
- ➢ Narcotics traffickers;

As "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site - http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# NOTICE TO POLICYHOLDERS
# REGARDING INFLATION PROTECTION
# AND BUILDING VALUES

**CAUTION:** No coverage is provided by this notice; nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is a conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL. PLEASE READ YOUR POLICY CAREFULLY.

We are notifying you that we will amend property limit(s) at the beginning of each renewal policy to reflect changes in the National Building Cost Trends.

This means that if your policy has property coverage, we will increase (or decrease) the appropriate building limits by the inflation percentage related to the zip code of your premises.

Your renewal premium will reflect the change in exposure. Please review your building limit to make sure that your limit is adequate to replace your building at the current cost of re-construction. You must also review your building limit carefully if your policy contains a coinsurance requirement or insurance-to-value provision that penalizes you if you are not insured to value.

By accepting this policy you are consenting to the limits of insurance as stated.

ILMS14-2                                                          Page 1 of 1

# ADVISORY NOTICE TO POLICYHOLDERS

## LEAD LIABILITY EXCLUSION

**NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS OF YOUR POLICY.  IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE, THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

**PLEASE READ YOUR POLICY, AND THE ENDORSEMENTS ATTACHED TO YOUR POLICY, CAREFULLY.**

Your policy excludes coverage for claims resulting or arising from lead contamination.

You should be aware that the ingestion of lead paint by young children can potentially result in serious brain damage.  We suggest you determine if lead hazards exist on your premises and, if so, promptly see that they are removed.

ILMS93-1 0908                                                      Page 1 of 1

IL N 088 09 03

# PENNSYLVANIA FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

© ISO Properties, Inc., 2003

# BUSINESSOWNERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

In Section II – Liability, the word "insured" means any person or organization qualifying as such under Paragraph C. Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph H. Property Definitions in Section I – Property and Paragraph F. Liability And Medical Expenses Definitions in Section II – Liability.

## SECTION I – PROPERTY

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause Of Loss.

**1. Covered Property**

Covered Property includes Buildings as described under Paragraph a. below, Business Personal Property as described under Paragraph b. below, or both, depending on whether a Limit Of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph 2. Property Not Covered.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Your personal property in apartments, rooms or common areas furnished by you as landlord;

(5) Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(6) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the buildings or structures;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 100 feet of the buildings or structures or within 100 feet of the premises described in the Declarations, whichever distance is greater, including:

(1) Property you own that is used in your business;

(2) Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph E.5.d.(3)(b);

(3) Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(4) Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph 1.b.(2); and

© Insurance Services Office, Inc., 2012

(5) Exterior building glass, if you are a tenant and no Limit Of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

## 2. Property Not Covered

Covered Property does not include:

a. Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

b. "Money" or "securities" except as provided in the:

(1) Money And Securities Optional Coverage; or

(2) Employee Dishonesty Optional Coverage;

c. Contraband, or property in the course of illegal transportation or trade;

d. Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

e. Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than trees, shrubs or plants which are part of a vegetated roof), all except as provided in the:

(1) Outdoor Property Coverage Extension; or

(2) Outdoor Signs Optional Coverage;

f. Watercraft (including motors, equipment and accessories) while afloat;

g. Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

h. "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

i. "Electronic data", except as provided under Additional Coverages – Electronic Data. This Paragraph i. does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system; or

j. Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings.

## 3. Covered Causes Of Loss

Direct physical loss unless the loss is excluded or limited under Section I – Property.

## 4. Limitations

a. We will not pay for loss of or damage to:

(1) Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

(2) Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

(3) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

(4) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

(5) The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

© Insurance Services Office, Inc., 2012

BP 00 03 07 13

(b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

(6) Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

(a) Dampness or dryness of atmosphere or of soil supporting the vegetation;

(b) Changes in or extremes of temperature;

(c) Disease;

(d) Frost or hail; or

(e) Rain, snow, ice or sleet.

b. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

(1) Animals, and then only if they are killed or their destruction is made necessary.

(2) Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

(a) Glass that is part of the exterior or interior of a building or structure;

(b) Containers of property held for sale; or

(c) Photographic or scientific instrument lenses.

c. For loss or damage by theft, the following types of property are covered only up to the limits shown (unless a higher Limit Of Insurance is shown in the Declarations):

(1) $2,500 for furs, fur garments and garments trimmed with fur.

(2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

(3) $2,500 for patterns, dies, molds and forms.

5. Additional Coverages

a. Debris Removal

(1) Subject to Paragraphs (2), (3) and (4), we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

(b) Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

(c) Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

(d) Remove property of others of a type that would not be Covered Property under this policy;

(e) Remove deposits of mud or earth from the grounds of the described premises;

(f) Extract "pollutants" from land or water; or

(g) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph (4), the following provisions apply:

(a) The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to Paragraph (3)(a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

(4) We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs (4)(a) and/or (4)(b) apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

(5) Examples

Example 1

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $    500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable | $ 10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph (3).

Example 2

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $    500 |
| Amount of Loss | $ 80,000 |
| Amount of Loss Payable | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $ 10,500 |
| Additional Amount | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph (3) is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph (4), because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph (4). Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

© Insurance Services Office, Inc., 2012      BP 00 03 07 13

b. **Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the loss or damage occurs within 30 days after the property is first moved.

c. **Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500 for service at each premises described in the Declarations, unless a different limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

d. **Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in Paragraphs d.(1) through d.(7).

(1) For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

(2) We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

(a) Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

(b) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

(c) Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

(d) Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

(i) A cause of loss listed in Paragraph (2)(a) or (2)(b);

(ii) One or more of the "specified causes of loss";

(iii) Breakage of building glass;

(iv) Weight of people or personal property; or

(v) Weight of rain that collects on a roof.

(3) This Additional Coverage – Collapse does not apply to:

(a) A building or any part of a building that is in danger of falling down or caving in;

(b) A part of a building that is standing, even if it has separated from another part of the building; or

(c) A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(4) With respect to the following property:

(a) Awnings;

(b) Gutters and downspouts;

(c) Yard fixtures;

(d) Outdoor swimming pools;

(e) Piers, wharves and docks;

(f) Beach or diving platforms or appurtenances;

(g) Retaining walls; and

(h) Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraphs (2)(a) through (2)(d), we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

(5) If personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

   (a) The collapse of personal property was caused by a cause of loss listed in Paragraphs (2)(a) through (2)(d) of this Additional Coverage;

   (b) The personal property which collapses is inside a building; and

   (c) The property which collapses is not of a kind listed in Paragraph (4), regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph (5) does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

(6) This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(7) This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this policy.

(8) The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in Paragraphs d.(1) through d.(7).

e. **Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage, but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

(1) Results in discharge of any substance from an automatic fire protection system; or

(2) Is directly caused by freezing.

f. **Business Income**

(1) **Business Income**

   (a) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

   (i) The portion of the building which you rent, lease or occupy;

   (ii) The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

   (iii) Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

© Insurance Services Office, Inc., 2012

(b) We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

(c) Business Income means the:

   (i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

   (ii) Continuing normal operating expenses incurred, including payroll.

(d) Ordinary payroll expenses:

   (i) Means payroll expenses for all your employees except:

      i. Officers;

      ii. Executives;

      iii. Department Managers;

      iv. Employees under contract; and

      v. Additional Exemptions shown in the Declarations as:

        • Job Classifications; or

        • Employees.

   (ii) Include:

      i. Payroll;

      ii. Employee benefits, if directly related to payroll;

      iii. FICA payments you pay;

      iv. Union dues you pay; and

      v. Workers' compensation premiums.

(2) Extended Business Income

(a) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

   (i) Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

   (ii) Ends on the earlier of:

      i. The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

      ii. 60 consecutive days after the date determined in Paragraph (a)(i) above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

(b) Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

(4) This Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

 © Insurance Services Office, Inc., 2012

**g. Extra Expense**

(1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

(a) The portion of the building which you rent, lease or occupy;

(b) The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

(c) Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

(2) Extra Expense means expense incurred:

(a) To avoid or minimize the suspension of business and to continue "operations":

(i) At the described premises; or

(ii) At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

(b) To minimize the suspension of business if you cannot continue "operations".

(c) To:

(i) Repair or replace any property; or

(ii) Research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

(4) We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**h. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

© Insurance Services Office, Inc., 2012

BP 00 03 07 13

**i.  Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1)  Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2)  The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

(1)  Four consecutive weeks after the date of that action; or

(2)  When your Civil Authority Coverage for Business Income ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**j.  Money Orders And "Counterfeit Money"**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

(1)  Money orders issued by any post office, express company or bank that are not paid upon presentation; or

(2)  "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k.  Forgery Or Alteration**

(1)  We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, bill of exchange or similar written promise of payment in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

(2)  If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

(3)  For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act and will be treated the same as the original it replaced.

(4)  The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit Of Insurance is shown in the Declarations.

**l.  Increased Cost Of Construction**

(1)  This Additional Coverage applies only to buildings insured on a replacement cost basis.

(2)  In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs (3) through (9) of this Additional Coverage.

 © Insurance Services Office, Inc., 2012

(3) The ordinance or law referred to in Paragraph (2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

   (a) You were required to comply with before the loss, even when the building was undamaged; and

   (b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

   (a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

   (b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

(6) The most we will pay under this Additional Coverage, for each described building insured under Section I – Property, is $10,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building, is $10,000.

   The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

   (a) We will not pay for the Increased Cost of Construction:

      (i) Until the property is actually repaired or replaced, at the same or another premises; and

      (ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

   (b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

   (c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment Property Loss Condition in Section I – Property do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph (6) of this Additional Coverage, is not subject to such limitation.

m. **Business Income From Dependent Properties**

(1) We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property or secondary dependent property caused by or resulting from any Covered Cause of Loss.

© Insurance Services Office, Inc., 2012

However, this Additional Coverage does not apply when the only loss at the premises of a dependent property or secondary dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property or secondary dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit Of Insurance is indicated in the Declarations.

(2) We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

    (a) Source of materials; or

    (b) Outlet for your products.

(3) If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

(4) Dependent property means property owned by others whom you depend on to:

    (a) Deliver materials or services to you, or to others for your account. But services does not mean water supply services, wastewater removal services, communication supply services or power supply services;

    (b) Accept your products or services;

    (c) Manufacture your products for delivery to your customers under contract for sale; or

    (d) Attract customers to your business.

    The dependent property must be located in the coverage territory of this policy.

(5) Secondary dependent property means an entity which is not owned or operated by a dependent property and which:

    (a) Delivers materials or services to a dependent property, which in turn are used by the dependent property in providing materials or services to you; or

    (b) Accepts materials or services from a dependent property, which in turn accepts your materials or services.

A road, bridge, tunnel, waterway, airfield, pipeline or any other similar area or structure is not a secondary dependent property.

Any property which delivers any of the following services is not a secondary dependent property with respect to such services:

    (i) Water supply services;

    (ii) Wastewater removal services;

    (iii) Communication supply services; or

    (iv) Power supply services.

The secondary dependent property must be located in the coverage territory of this policy.

(6) The coverage period for Business Income under this Additional Coverage:

    (a) Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property or secondary dependent property; and

    (b) Ends on the date when the property at the premises of the dependent property or secondary dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

(7) The Business Income coverage period, as stated in Paragraph (6), does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

    (a) Regulates the construction, use or repair, or requires the tearing down of any property; or

    (b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

 © Insurance Services Office, Inc., 2012

(8) The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

**n. Glass Expenses**

(1) We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

(2) We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Extinguisher Systems Recharge Expense**

(1) We will pay:

(a) The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

(b) For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

(2) No coverage will apply if the fire extinguishing system is discharged during installation or testing.

(3) The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

**p. Electronic Data**

(1) Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

(2) The Covered Causes of Loss applicable to Business Personal Property include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

(3) The most we will pay under this Additional Coverage – Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $10,000, unless a higher Limit Of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

(4) This Additional Coverage does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**q. Interruption Of Computer Operations**

(1) Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

© Insurance Services Office, Inc., 2012

(2) With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

(a) Coverage under this Additional Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

(b) If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

(c) The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

(3) The most we will pay under this Additional Coverage – Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit Of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

(4) This Additional Coverage – Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in (3) above has not been exhausted.

(5) Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs (1) through (4) of this Additional Coverage.

© Insurance Services Office, Inc., 2012

(6) Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs (1) through (4) of this Additional Coverage.

(7) This Additional Coverage does not apply when loss or damage to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

r. Limited Coverage For "Fungi", Wet Rot Or Dry Rot

(1) The coverage described in Paragraphs r.(2) and r.(6) only applies when the "fungi", wet rot or dry rot is the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

(2) We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

(a) Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

(b) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

(c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot is present.

(3) The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

(4) The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

(5) The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

     © Insurance Services Office, Inc., 2012     BP 00 03 07 13

(6) The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage:

(a) If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense Additional Coverages is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

(b) If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

6. **Coverage Extensions**

In addition to the Limits of Insurance of Section I — Property, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises:

a. **Newly Acquired Or Constructed Property**

(1) **Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at premises other than the one described, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

(2) **Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

(a) Business Personal Property, including such property that you newly acquire, at any location you acquire; or

(b) Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

(3) **Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.

b. **Personal Property Off-premises**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $10,000.

**c. Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other than trees, shrubs or plants which are part of a vegetated roof), including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, unless a higher Limit Of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**d. Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees, including temporary or leased employees. This extension does not apply to:

**(1)** Tools or equipment used in your business; or

**(2)** Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

**e. Valuable Papers And Records**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale; and

**(b)** Property in storage away from the premises shown in the Declarations.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $10,000, unless a higher Limit Of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $5,000.

**(4)** Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**(5)** Paragraph **B.** Exclusions in Section I – Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.**, Governmental Action;

**(b)** Paragraph **B.1.d.**, Nuclear Hazard;

**(c)** Paragraph **B.1.f.**, War And Military Action;

    © Insurance Services Office, Inc., 2012

(d) Paragraph B.2.f., Dishonesty;

(e) Paragraph B.2.g., False Pretense;

(f) Paragraph B.2.m.(2), Errors Or Omissions; and

(g) Paragraph B.3.

**f. Accounts Receivable**

(1) You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

(a) All amounts due from your customers that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

(d) Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

(2) The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

(3) Paragraph B. Exclusions in Section I – Property does not apply to this Coverage Extension except for:

(a) Paragraph B.1.c., Governmental Action;

(b) Paragraph B.1.d., Nuclear Hazard;

(c) Paragraph B.1.f., War And Military Action;

(d) Paragraph B.2.f., Dishonesty;

(e) Paragraph B.2.g., False Pretense;

(f) Paragraph B.3.; and

(g) Paragraph B.6., Accounts Receivable Exclusion.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the buildings or structures described in the Declarations or within 100 feet of the described premises, whichever distance is greater.

(2) The limitation under Paragraph A.4.a.(5) also applies to property in a portable storage unit.

(3) Coverage under this Extension:

(a) Will end 90 days after the Business Personal Property has been placed in the storage unit;

(b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the Business Personal Property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to Business Personal Property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form, and does not apply to loss or damage to the storage unit itself.

**B. Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**a. Ordinance Or Law**

(1) The enforcement of or compliance with any ordinance or law:

(a) Regulating the construction, use or repair of any property; or

(b) Requiring the tearing down of any property, including the cost of removing its debris.

(2) This exclusion, Ordinance Or Law, applies whether the loss results from:

(a) An ordinance or law that is enforced even if the property has not been damaged; or

(b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

b. Earth Movement

(1) Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

(2) Landslide, including any earth sinking, rising or shifting related to such event;

(3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

(4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in Paragraphs (1) through (4) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

(5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

(a) Airborne volcanic blast or airborne shock waves;

(b) Ash, dust or particulate matter; or

(c) Lava flow.

With respect to coverage for volcanic action as set forth in 5(a), (5)(b) and 5(c), all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused.

c. Governmental Action

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

d. Nuclear Hazard

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

e. Utility Services

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

(1) Originates away from the described premises; or

(2) Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

 © Insurance Services Office, Inc., 2012

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer(s)" and "electronic data".

**f. War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(2) Mudslide or mudflow;

(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings; or

(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs (1) through (5), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. Certain Computer-related Losses**

(1) The failure, malfunction or inadequacy of:

(a) Any of the following, whether belonging to any insured or to others:

(i) "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this policy;

(ii) "Computer" application software or other "electronic data" as may be described elsewhere in this policy;

(iii) "Computer" operating systems and related software;

(iv) "Computer" networks;

(v) Microprocessors ("computer" chips) not part of any "computer" system; or

(vi) Any other computerized or electronic equipment or components; or

(b) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph (a) above;

due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

(2) Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph (1) above.

However, if excluded loss or damage, as described in Paragraph (1) above, results in a "specified cause of loss" under Section I – Property, we will pay only for the loss or damage caused by such "specified cause of loss".

We will not pay for repair, replacement or modification of any items in Paragraph (1)(a) or (1)(b) to correct any deficiencies or change any features.

i. "Fungi", Wet Rot Or Dry Rot

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

(1) When "fungi", wet rot or dry rot results from fire or lightning; or

(2) To the extent that coverage is provided in the Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage, with respect to loss or damage by a cause of loss other than fire or lightning.

j. Virus Or Bacteria

(1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(2) However, the exclusion in Paragraph (1) does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion i.

(3) With respect to any loss or damage subject to the exclusion in Paragraph (1), such exclusion supersedes any exclusion relating to "pollutants".

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Electrical Apparatus

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

(1) Electrical or electronic wire, device, appliance, system or network; or

(2) Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

(1) Electrical current, including arcing;

(2) Electrical charge produced or conducted by a magnetic or electromagnetic field;

(3) Pulse of electromagnetic energy; or

(4) Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by fire.

We will pay for loss or damage to "computer(s)" due to artificially generated electrical, magnetic or electromagnetic energy if such loss or damage is caused by or results from:

(1) An occurrence that took place within 100 feet of the described premises; or

(2) Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

b. Consequential Losses

Delay, loss of use or loss of market.

c. Smoke, Vapor, Gas

Smoke, vapor or gas from agricultural smudging or industrial operations.

© Insurance Services Office, Inc., 2012   BP 00 03 07 13

**d. Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**e. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

**f. Dishonesty**

Dishonest or criminal acts (including theft) by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees (including temporary or leased employees), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

(1) Applies whether or not an act occurs during your normal hours of operation;

(2) Does not apply to acts of destruction by your employees (including temporary or leased employees) or authorized representatives; but theft by your employees (including temporary or leased employees) or authorized representatives is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

**g. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**h. Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**i. Collapse**

(1) Collapse, including any of the following conditions of property or any part of the property:

(a) An abrupt falling down or caving in;

(b) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

(c) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph i.(1)(a) or i.(1)(b).

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

(2) This Exclusion i. does not apply:

(a) To the extent that coverage is provided under the Additional Coverage – Collapse; or

(b) To collapse caused by one or more of the following:

(i) The "specified causes of loss";

(ii) Breakage of building glass;

(iii) Weight of rain that collects on a roof; or

(iv) Weight of people or personal property.

**j. Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

© Insurance Services Office, Inc., 2012

k. **Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

l. **Other Types Of Loss**

(1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer(s)";

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs (1) through (7) above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

m. **Errors Or Omissions**

Errors or omissions in:

(1) Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

(2) Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

n. **Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

o. **Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for under the Additional Coverages of Section I – Property.

However, we will pay for direct loss or damage caused by lightning.

p. **Continuous Or Repeated Seepage Or Leakage Of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

3. We will not pay for loss or damage caused by or resulting from any of the following Paragraphs a. through c. But if an excluded cause of loss that is listed in Paragraphs a. through c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. **Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph B.1. above to produce the loss or damage.

b. **Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. **Negligent Work**

Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

 © Insurance Services Office, Inc., 2012

**4. Additional Exclusion**

The following applies only to the property specified in this Additional Exclusion:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**5. Business Income And Extra Expense Exclusions**

a. We will not pay for:

(1) Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage.

(2) Any other consequential loss.

b. With respect to this exclusion, suspension means:

(1) The partial slowdown or complete cessation of your business activities; and

(2) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**6. Accounts Receivable Exclusion**

The following additional exclusion applies to the Accounts Receivable Coverage Extension:

We will not pay for:

a. Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

b. Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

c. Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. Limits Of Insurance**

1. The most we will pay for loss or damage in any one occurrence is the applicable Limits Of Insurance of Section I – Property shown in the Declarations.

2. The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

3. The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to the Limits of Insurance of Section I – Property:

a. Fire Department Service Charge;

b. Pollutant Clean-up And Removal;

c. Increased Cost Of Construction;

d. Business Income From Dependent Properties;

e. Electronic Data; and

f. Interruption Of Computer Operations.

**4. Building Limit – Automatic Increase**

a. In accordance with Paragraph **C.4.b.**, the Limit of Insurance for Buildings will automatically increase by 8%, unless a different percentage of annual increase is shown in the Declarations.

 © Insurance Services Office, Inc., 2012

b. The amount of increase is calculated as follows:

(1) Multiply the Building limit that applied on the most recent of the policy inception date, the policy anniversary date or any other policy change amending the Building limit by:

(a) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 7% is .07); or

(b) .08, if no percentage of annual increase is shown in the Declarations; and

(2) Multiply the number calculated in accordance with b.(1) by the number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

**Example**

If:

The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is

$100,000 x .08 x 146 ÷ 365 = $3,200.

5. **Business Personal Property Limit – Seasonal Increase**

a. Subject to Paragraph 5.b., the Limit of Insurance for Business Personal Property is automatically increased by:

(1) The Business Personal Property – Seasonal Increase percentage shown in the Declarations; or

(2) 25% if no Business Personal Property – Seasonal Increase percentage is shown in the Declarations;

to provide for seasonal variances.

b. The increase described in Paragraph 5.a. will apply only if the Limit Of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

(1) The 12 months immediately preceding the date the loss or damage occurs; or

(2) The period of time you have been in business as of the date the loss or damage occurs.

D. **Deductibles**

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of Section I – Property.

2. Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages in any one occurrence is the Optional Coverage Deductible shown in the Declarations:

a. Money and Securities;

b. Employee Dishonesty;

c. Outdoor Signs; and

d. Forgery or Alteration.

But this Optional Coverage Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

3. No deductible applies to the following Additional Coverages:

a. Fire Department Service Charge;

b. Business Income;

c. Extra Expense;

d. Civil Authority; and

e. Fire Extinguisher Systems Recharge Expense.

E. **Property Loss Conditions**

1. **Abandonment**

There can be no abandonment of any property to us.

2. **Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

 © Insurance Services Office, Inc., 2012 BP 00 03 07 13

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance of Section I – Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

(9) Resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within two years after the date on which the direct physical loss or damage occurred.

**5. Loss Payment**

In the event of loss or damage covered by this policy:

a. At our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph d.(1)(e) below.

b. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

c. We will not pay you more than your financial interest in the Covered Property.

d. Except as provided in Paragraphs (2) through (7) below, we will determine the value of Covered Property as follows:

(1) At replacement cost without deduction for depreciation, subject to the following:

(a) If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

(i) The Limit of Insurance under Section I – Property that applies to the lost or damaged property;

 © Insurance Services Office, Inc., 2012

(ii) The cost to replace, on the same premises, the lost or damaged property with other property:

    I. Of comparable material and quality; and

    ii. Used for the same purpose; or

(iii) The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

(b) If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

(i) The actual cash value of the lost or damaged property; or

(ii) A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the full replacement cost of the property.

**Example**

The full replacement cost of property which suffers a total loss is $100,000. The property is insured for $70,000. 80% of the full replacement cost of the property immediately before the loss is $80,000 ($100,000 x .80 = $80,000). A partial loss of $25,000 is sustained. The amount of recovery is determined as follows:

Amount of recovery

$70,000 ÷ $80,000 = .875

.875 x $25,000 = $21,875

(c) You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

(d) We will not pay on a replacement cost basis for any loss or damage:

(i) Until the lost or damaged property is actually repaired or replaced; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs d.(1)(a) and d.(1)(b) above whether or not the actual repair or replacement is complete.

(e) The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

(2) If the Actual Cash Value – Buildings option applies, as shown in the Declarations, Paragraph (1) above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

(3) The following property at actual cash value:

(a) Used or secondhand merchandise held in storage or for sale;

(b) Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

 © Insurance Services Office, Inc., 2012 BP 00 03 07 13

(c) Household contents, except personal property in apartments or rooms furnished by you as landlord;

(d) Manuscripts; and

(e) Works of art, antiques or rare articles, including etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

(4) Glass at the cost of replacement with safety glazing material if required by law.

(5) Tenants' Improvements and betterments at:

(a) Replacement cost if you make repairs promptly.

(b) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(i) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(ii) Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(c) Nothing if others pay for repairs or replacement.

(6) Applicable only to the Optional Coverages:

(a) "Money" at its face value; and

(b) "Securities" at their value at the close of business on the day the loss is discovered.

(7) Applicable only to accounts receivable:

(a) If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

(i) We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

(ii) We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

(b) The following will be deducted from the total amount of accounts receivable, however that amount is established:

(i) The amount of the accounts for which there is no loss or damage;

(ii) The amount of the accounts that you are able to reestablish or collect;

(iii) An amount to allow for probable bad debts that you are normally unable to collect; and

(iv) All unearned interest and service charges.

e. Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy, and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

h. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

### 6. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance of Section I – Property.

### 7. Resumption Of Operations

We will reduce the amount of your:

a. Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

b. Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

### 8. Vacancy

a. Description Of Terms

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs (a) and (b) below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

b. Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in Paragraphs (1)(a) through (1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

## F. Property General Conditions

### 1. Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

### 2. Mortgageholders

a. The term "mortgageholder" includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this policy at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

### 3. No Benefit To Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

### 4. Policy Period, Coverage Territory

Under Section I – Property:

a. We cover loss or damage commencing:

(1) During the policy period shown in the Declarations; and

(2) Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

b. The coverage territory is:

(1) The United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below:

**1. Outdoor Signs**

a. We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

(1) Owned by you; or

(2) Owned by others but in your care, custody or control.

b. Paragraph A.3., Covered Causes Of Loss and Paragraph B., Exclusions In Section I – Property do not apply to this Optional Coverage, except for:

(1) Paragraph B.1.c., Governmental Action;

(2) Paragraph B.1.d., Nuclear Hazard; and

(3) Paragraph B.1.f., War And Military Action.

c. We will not pay for loss or damage caused by or resulting from:

(1) Wear and tear;

(2) Hidden or latent defect;

(3) Rust;

(4) Corrosion; or

(5) Mechanical breakdown.

d. The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Outdoor Signs shown in the Declarations.

e. The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

**2. Money And Securities**

a. We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee (including a temporary or leased employee) having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

(1) Theft, meaning any act of stealing;

(2) Disappearance; or

(3) Destruction.

b. In addition to the Limitations and Exclusions applicable to Section I – Property, we will not pay for loss:

(1) Resulting from accounting or arithmetical errors or omissions;

(2) Due to the giving or surrendering of property in any exchange or purchase; or

(3) Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

c. The most we will pay for loss in any one occurrence is:

(1) The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

(a) In or on the described premises; or

(b) Within a bank or savings institution;

(2) The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

d. All loss:

(1) Caused by one or more persons; or

(2) Involving a single act or series of related acts;

is considered one occurrence.

e. You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**3. Employee Dishonesty**

a. We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

(1) Cause you to sustain loss or damage; and also

(2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

(a) Any employee; or

(b) Any other person or organization.

© Insurance Services Office, Inc., 2012

**b.** We will not pay for loss or damage:

    **(1)** Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

    **(2)** Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph a.), "managers" or directors:

        **(a)** Whether acting alone or in collusion with other persons; or

        **(b)** While performing services for you or otherwise.

    **(3)** The only proof of which as to its existence or amount is:

        **(a)** An inventory computation; or

        **(b)** A profit and loss computation.

    **(4)** Caused by an employee if the employee had also committed theft or any other dishonest act prior to the effective date of this policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the employee, learned of that theft or dishonest act prior to the policy period shown in the Declarations.

**c.** The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Employee Dishonesty shown in the Declarations.

**d.** All loss or damage:

    **(1)** Caused by one or more persons; or

    **(2)** Involving a single act or series of acts;

  is considered one occurrence.

**e.** If any loss is covered:

    **(1)** Partly by this insurance; and

    **(2)** Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

  the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Optional Coverage is cancelled as to any employee immediately upon discovery by:

    **(1)** You; or

    **(2)** Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

  of any dishonest act committed by that employee before or after being hired by you.

**g.** We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

    **(1)** This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

    **(2)** The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph h. above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

    **(1)** This Optional Coverage as of its effective date; or

    **(2)** The prior insurance had it remained in effect.

**j.** With respect to the Employee Dishonesty Optional Coverage in Paragraph **G.3.**, employee means:

    **(1)** Any natural person:

        **(a)** While in your service or for 30 days after termination of service;

        **(b)** Who you compensate directly by salary, wages or commissions; and

        **(c)** Who you have the right to direct and control while performing services for you;

 © Insurance Services Office, Inc., 2012

(2) Any natural person who is furnished temporarily to you:

   (a) To substitute for a permanent employee, as defined in Paragraph (1) above, who is on leave; or

   (b) To meet seasonal or short-term workload conditions;

(3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph (2) above;

(4) Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

(5) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But employee does not mean:

(1) Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

(2) Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

**4. Equipment Breakdown Protection Coverage**

   a. We will pay for direct loss of or damage to Covered Property caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment.

   Mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment does not mean any:

(1) Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

(2) Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

(3) Damage to any vacuum tube, gas tube, or brush; or

(4) The functioning of any safety or protective device.

   b. Paragraphs **A.4.a.(1)** and **A.4.a.(2)**, Limitations, do not apply to this Optional Coverage.

   c. With respect to the coverage provided by this Optional Coverage, the following exclusions in Paragraph **B. Exclusions** do not apply:

(1) Paragraph **B.2.a.**, Electrical Apparatus;

(2) Paragraph **B.2.d.**, Steam Apparatus; and

(3) Paragraph **B.2.l.(6)**, Mechanical Breakdown.

   d. With respect to the coverage provided by this Optional Coverage, Paragraph **G.1.c.(5)** of the **Outdoor Signs Optional Coverage** does not apply.

   e. If a dollar deductible is shown in the Declarations for this Optional Coverage, we will first subtract the applicable deductible amount from any loss we would otherwise pay. We will then pay the amount of loss in excess of the applicable deductible up to the applicable limit for this coverage.

   If no optional deductible is chosen for this Optional Coverage, the Property Deductible shown in the Declarations applies.

   f. With respect to Additional Coverages 5.f. Business Income and 5.g. Extra Expense, if the 72-hour time period in the definition of "period of restoration" (hereinafter referred to as time deductible) is amended for this Optional Coverage as shown in the Declarations, we will not pay for any Business Income loss that occurs during the consecutive number of hours shown as the time deductible in the Declarations immediately following a mechanical breakdown or electrical failure. If a time deductible is shown in days, each day shall mean 24 consecutive hours.

   With respect to the coverage provided by this Optional Coverage, any time deductible shown in the Declarations for Equipment Breakdown Protection Coverage supersedes any time deductible otherwise applicable to the Business Income coverage provided by this policy.

   g. With respect to the coverage provided by this Optional Coverage, Paragraph **H. Property Definitions** is amended as follows:

   1. "Computer" means:

     a. Programmable electronic equipment that is used to store, retrieve and process data; and

b. Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" includes those used to operate production-type machinery or equipment.

h. Whenever any covered pressure, mechanical or electrical machinery and equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may suspend coverage provided by this Optional Coverage for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment.

However, coverage provided by this Optional Coverage may be reinstated for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment if the reasons for the suspension are found by any of our representatives to no longer exist.

We may suspend or reinstate this Optional coverage by mailing or delivering a written notification regarding the suspension or reinstatement to:

(1) Your last known address; or

(2) The address where the pressure, mechanical or electrical machinery and equipment is located.

This notification will indicate the effective date of the suspension or reinstatement.

If the coverage provided by this Optional Coverage is not reinstated, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**H. Property Definitions**

1. "Computer" means:

a. Programmable electronic equipment that is used to store, retrieve and process data; and

b. Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" does not include those used to operate production-type machinery or equipment.

2. "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

3. "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

4. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

5. "Manager" means a person serving in a directorial capacity for a limited liability company.

6. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

7. "Money" means:

a. Currency, coins and bank notes in current use and having a face value; and

b. Traveler's checks, register checks and money orders held for sale to the public.

8. "Operations" means your business activities occurring at the described premises.

9. "Period of restoration":

a. Means the period of time that:

(1) Begins:

(a) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

(b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

(2) Ends on the earlier of:

  (a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

  (b) The date when business is resumed at a new permanent location.

b. Does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

  (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

  (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

10. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

11. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

12. "Specified causes of loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

  (1) The cost of filling sinkholes; or

  (2) Sinking or collapse of land into man-made underground cavities.

b. Falling objects does not include loss of or damage to:

  (1) Personal property in the open; or

  (2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c. Water damage means:

  (1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

  (2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in c.(1) or c.(2) of this definition of "specified causes of loss", such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the ground surface.

13. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2012 BP 00 03 07 13

14. "Valuable papers and records" means inscribed, printed or written:

   a. Documents;

   b. Manuscripts; and

   c. Records;

   including abstracts, books, deeds, drawings, films, maps or mortgages.

   But "valuable papers and records" does not mean "money" or "securities".

## SECTION II – LIABILITY

### A. Coverages

1. **Business Liability**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Paragraph **D. Liability And Medical Expenses Limits Of Insurance in Section II – Liability**; and

      (2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f. Coverage Extension – Supplementary Payments**.

   b. This insurance applies:

      (1) To "bodily injury" and "property damage" only if:

         (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

         (b) The "bodily injury" or "property damage" occurs during the policy period; and

         (c) Prior to the policy period, no insured listed under Paragraph **C.1. Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

      (2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1. Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1. Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 © Insurance Services Office, Inc., 2012

f. **Coverage Extension – Supplementary Payments**

(1) We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

(a) All expenses we incur.

(b) Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

(c) The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

(d) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

(e) All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

(f) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

(g) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

(2) If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

(a) The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

(b) This insurance applies to such liability assumed by the insured;

(c) The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

(d) The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

(e) The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

(f) The indemnitee:

(i) Agrees in writing to:

I. Cooperate with us in the investigation, settlement or defense of the "suit";

ii. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

iii. Notify any other insurer whose coverage is available to the indemnitee; and

iv. Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(ii) Provides us with written authorization to:

i. Obtain records and other information related to the "suit"; and

ii. Conduct and control the defense of the indemnitee in such "suit".

(3) So long as the conditions in Paragraph (2) are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section II – Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

(a) We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

(b) The conditions set forth above, or the terms of the agreement described in Paragraph (2)(f) above, are no longer met.

2. **Medical Expenses**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the Limits of Insurance of Section II – Liability. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

B. **Exclusions**

1. **Applicable To Business Liability Coverage**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by an insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

If the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

© Insurance Services Office, Inc., 2012

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

   (i) Any insured; or

   (ii) Any person or organization for whom you may be legally responsible;

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

   (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

   (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

   (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

 © Insurance Services Office, Inc., 2012

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 51 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

(b) The operation of any of the following machinery or equipment:

(i) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(ii) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection or engineering services;

(4) Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;

(5) Any health or therapeutic service treatment, advice or instruction;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

 © Insurance Services Office, Inc., 2012

(7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Body piercing services; and

(9) Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

k. **Damage To Property**

"Property damage" to:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph D. Liability And Medical Expenses Limits Of Insurance in Section II – Liability.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

l. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

m. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

n. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

o. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal And Advertising Injury**

"Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(5) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(6) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(7) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(8) Committed by an insured whose business is:

(a) Advertising, broadcasting, publishing or telecasting;

(b) Designing or determining content of web sites for others; or

(c) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under Paragraph F. Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting;

(9) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

(10) With respect to any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants";

(11) Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

(12) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan;

(13) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**q. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

© Insurance Services Office, Inc., 2012

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**r. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**s. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions c., d., e., f., g., h., i., k., l., m., n. and o. in Section II – Liability do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph D. Liability And Medical Expenses Limits of Insurance in Section II – Liability.

**2. Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

a. To any insured, except "volunteer workers".

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

f. Included within the "products-completed operations hazard".

g. Excluded under Business Liability Coverage.

**3. Applicable To Both Business Liability Coverage And Medical Expenses Coverage – Nuclear Energy Liability Exclusion**

This insurance does not apply:

a. Under Business Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

b. Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

c. Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material", if:

    (1) The "nuclear material":

        (a) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

        (b) Has been discharged or dispersed therefrom;

    (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (3) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

d. As used in this exclusion:

    (1) "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(2) "Hazardous properties" include radioactive, toxic or explosive properties;

(3) "Nuclear facility" means:

    (a) Any "nuclear reactor";

    (b) Any equipment or device designed or used for:

        (i) Separating the isotopes of uranium or plutonium;

        (ii) Processing or utilizing "spent fuel"; or

        (iii) Handling, processing or packaging "waste";

    (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

(4) "Nuclear material" means "source material", "special nuclear material" or "by-product material";

(5) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(6) "Property damage" includes all forms of radioactive contamination of property;

(7) "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(8) "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(9) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

 © Insurance Services Office, Inc., 2012 BP 00 03 07 13

**(10)** "Waste" means any waste material:

    **(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

    **(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

## C. Who Is An Insured

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

    **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)** "Bodily injury" or "personal and advertising injury":

        **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

        **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above;

        **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)**; or

        **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

        **(a)** Owned, occupied or used by;

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

D. Liability And Medical Expenses Limits Of Insurance

1. The Limits of Insurance of Section II – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The most we will pay for the sum of all damages because of all:

a. "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

b. "Personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

3. The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

4. Aggregate Limits

The most we will pay for:

a. All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

b. All:

(1) "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

(2) Plus medical expenses;

(3) Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses limit.

Subject to Paragraph a. or b. above, whichever applies, the Damage To Premises Rented To You limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of Section II – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

E. Liability And Medical Expenses General Conditions

1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

© Insurance Services Office, Inc., 2012

BP 00 03 07 13

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Separation Of Insureds**

Except with respect to the Limits of Insurance of Section II – Liability, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability And Medical Expenses Definitions**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

© Insurance Services Office, Inc., 2012

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above;

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

(1) The repair, replacement, adjustment or removal of "your product" or "your work"; or

(2) Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph (2) above and supervisory, inspection or engineering services.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

   © Insurance Services Office, Inc., 2012

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, on which are permanently mounted:

     (1) Power cranes, shovels, loaders, diggers or drills; or

     (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

     (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

     (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

     (a) Snow removal;

     (b) Road maintenance, but not construction or resurfacing; or

     (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

 © Insurance Services Office, Inc., 2012

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

  © Insurance Services Office, Inc., 2012

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

## SECTION III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY AND SECTION II – LIABILITY)

### A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

a. Five days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

(1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

(a) Seasonal unoccupancy; or

(b) Buildings in the course of construction, renovation or addition.

Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

(2) After damage by a Covered Cause of Loss, permanent repairs to the building:

(a) Have not started; and

(b) Have not been contracted for;

within 30 days of initial payment of loss.

(3) The building has:

(a) An outstanding order to vacate;

(b) An outstanding demolition order; or

(c) Been declared unsafe by governmental authority.

(4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

(5) Failure to:

(a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

(b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

 © Insurance Services Office, Inc., 2012

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe and healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance**

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section I – Property.

2. Business Liability Coverage is excess over:

    a. Any other insurance that insures for direct physical loss or damage; or

    b. Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured.

3. When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**I. Premiums**

1. The first Named Insured shown in the Declarations:

    a. Is responsible for the payment of all premiums; and

    b. Will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© Insurance Services Office, Inc., 2012

3. With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

   a. Paid to us prior to the anniversary date; and

   b. Determined in accordance with Paragraph 2. above.

   Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

4. Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Premium Audit**

1. This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

2. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

3. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

**K. Transfer Of Rights Of Recovery Against Others To Us**

1. Applicable to Businessowners Property Coverage:

   If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

   a. Prior to a loss to your Covered Property.

   b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

      (1) Someone insured by this insurance;

      (2) A business firm:

         (a) Owned or controlled by you; or

         (b) That owns or controls you; or

      (3) Your tenant.

   You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

   This will not restrict your insurance.

2. Applicable to Businessowners Liability Coverage:

   If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**L. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM
INFORMATION SECURITY PROTECTION ENDORSEMENT

**A. Section I – Property** is amended as follows:

1. The following is added to Paragraph **E.5. Loss Payment** Property Loss Conditions and supersedes any provision to the contrary:

   **Notice Of Acceptance Or Denial Of Claim**

   (1) Except as provided in (3) below, we will give you notice, within 15 working days after we receive a properly executed proof of loss, that we:

       (a) Accept your claim;

       (b) Deny your claim; or

       (c) Need more time to determine whether your claim should be accepted or denied.

       If we deny your claim, such notice will be in writing, and will state any policy provision, condition or exclusion used as a basis for the denial.

       If we need more time to determine whether your claim should be accepted or denied, the written notice will state the reason why more time is required.

   (2) If we have not completed our investigation, we will notify you again in writing, within 30 days after the date of the initial notice as provided in (1)(c) above, and thereafter every 45 days. The written notice will state why more time is needed to investigate your claim and when you may expect us to reach a decision on your claim.

   (3) The notice procedures in (1) and (2) above do not apply if we have a reasonable basis, supported by specific information, to suspect that an insured has fraudulently caused or contributed to the loss by arson or other illegal activity. Under such circumstances, we will notify you of the disposition of your claim within a period of time reasonable to allow full investigation of the claim, after we receive a properly executed proof of loss.

2. The following is added to any provision which uses the term actual cash value:

   Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind or quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained a partial or total loss or damage.

   The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

**B. Section III – Common Policy Conditions** is amended as follows:

1. Paragraph **A. Cancellation** is replaced by the following:

   **A. Cancellation**

   1. The first Named Insured shown in the Declarations may cancel this Policy by writing or giving notice of cancellation.

© Insurance Services Office, Inc., 2014

### 2. Cancellation Of Policies In Effect For Less Than 60 Days

We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

### 3. Cancellation Of Policies In Effect For 60 Days Or More

If this Policy has been in effect for 60 days or more or if this Policy is a renewal of a policy we issued, we may cancel this Policy only for one or more of the following reasons:

a. You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

b. You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

c. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

e. Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This Policy may also be cancelled from inception upon discovery that the Policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

2. Paragraph **L. Transfer Of Your Rights And Duties Under This Policy** is replaced by the following:

### L. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

© Insurance Services Office, Inc., 2014

BP 01 42 03 15

If you die, this Policy will remain in effect as provided in 1. or 2. below, whichever is later:

1. For 180 days after your death regardless of the policy period shown in the Declarations, unless the insured property is sold prior to that date; or

2. Until the end of the policy period shown in the Declarations, unless the insured property is sold prior to that date.

Coverage during the period of time after your death is subject to all provisions of this Policy including payment of any premium due for the policy period shown in the Declarations and any extension of that period.

3. The following paragraphs are added and supersede any provisions to the contrary:

**M. Nonrenewal**

If we decide not to renew this Policy, we will mail or deliver written *notice of nonrenewal*, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the Policy.

**N. Increase Of Premium**

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**C.** The following changes apply only to Information Security Protection Endorsement **BP 15 07** if it is attached to this Policy:

1. Paragraph **(2)** of Insuring Agreement **d. Security Breach Liability** is *replaced by the following:*

(2) We will pay for "defense expenses" as a result of a "claim" in the form of a "regulatory proceeding" first made against the insured during the "policy period" or during the applicable Extended Reporting Period, in response to a "wrongful act" or a series of "interrelated wrongful acts" covered under Paragraph **d.(1)**.

2. Paragraphs **2.e.** and **f.** of Paragraph N. **Extended Reporting Periods** are *replaced by the following:*

e. You must give us a written request for the Supplemental Extended Reporting Period within 60 days after the end of the "policy period" or the effective date of cancellation, whichever comes first.

f. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium in full along with any premium or deductible you owe us for coverage provided under this Endorsement within 60 days after the end of the "policy period" or the effective date of cancellation, whichever comes first. Once in effect, the Supplemental Extended Reporting Period may not be cancelled.

3. Paragraph **d.** of the definition of "loss" in Paragraph **V.** is replaced by the following:

d. With respect to Insuring Agreements **d. Security Breach Liability** and **g. Web Site Publishing Liability**:

Compensatory damages, settlement amounts and costs awarded pursuant to judgments or settlements.

"Loss" does not include:

(1) Civil or criminal fines or penalties imposed by law;

(2) Punitive or exemplary damages;

(3) The multiplied portion of multiplied damages;

(4) Taxes;

(5) Royalties;

(6) The amount of any disgorged profits; or

(7) Matters that are uninsurable pursuant to law.

BUSINESSOWNERS
BP 01 91 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA NOTICE

An insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

     © ISO Properties, Inc., 2001         □

BUSINESSOWNERS
BP 04 17 01 10

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph B.1. **Exclusions – Applicable To Business Liability Coverage** in Section II – Liability:

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraph (a), (b) or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraph (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

©Insurance Services Office, Inc., 2009

BUSINESSOWNERS
BP 05 01 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© ISO Properties, Inc., 2001

BUSINESSOWNERS
BP 08 17 01 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – SILICA OR SILICA-RELATED DUST

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The following exclusion is added to Paragraph **B. Exclusions in Section II – Liability:**

**B. Exclusions**

This insurance does not apply to:

**SILICA OR SILICA-RELATED DUST**

1. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

2. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

3. "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

4. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following definitions are added to Paragraph **F. Liability And Medical Expenses Definitions in Section II – Liability:**

1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

BUSINESSOWNERS
BP 05 23 01 15

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

## A. CAP ON CERTIFIED TERRORISM LOSSES

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

## B. 
The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

© Insurance Services Office, Inc., 2015

BUSINESSOWNERS
BP 05 38 01 15

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Liability Coverage Form BP 00 06 and Section II – Liability of the Businessowners Coverage Form BP 00 03:

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Form to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage" or "personal and advertising injury" as may be defined in any applicable Coverage Form.

© Insurance Services Office, Inc., 2015

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

   b. The act resulted in damage:

      (1) Within the United States (including its territories and possessions and Puerto Rico); or

      (2) Outside of the United States in the case of:

         (a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

         (b) The premises of any United States mission; and

   c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

   Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

D. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015
BP 05 38 01 15

BUSINESSOWNERS
BP 05 42 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Liability Coverage Form BP 00 06 and Section II – Liability of the Businessowners Coverage Form BP 00 03:

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

B. The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

C. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

 © Insurance Services Office, Inc., 2015

BUSINESSOWNERS
BP 05 77 01 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION (LIABILITY)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to **Section II – Liability:**

**A.** The following exclusion is added to Paragraph **B.1., Exclusions – Applicable To Business Liability Coverage:**

    **t. Fungi Or Bacteria**

        **(1)** "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

        **(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

    This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following definition is added Paragraph **F. Liability And Medical Expenses Definitions:**

    **1.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

 © ISO Properties, Inc., 2004

BUSINESSOWNERS
BP 05 98 07 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Paragraph 9. under F. **Liability And Medical Expenses Definitions** is replaced by the following:

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

   © Insurance Services Office, Inc., 2012

BUSINESSOWNERS
BP 15 04 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

A. Exclusion **B.1.q.** of Section II – Liability is replaced by the following:

This insurance does not apply to:

q. *Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability*

(1) Damages, other than damages because of "personal and advertising injury", arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(2) Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.

However, unless Paragraph (1) above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, *electronic data* means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, *referred to in the foregoing description of electronic data*, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

 © Insurance Services Office, Inc., 2013

**B.** The following is added to Paragraph **B.1.p. Personal And Advertising Injury** Exclusion of Section **II – Liability:**

This insurance does not apply to:

**p. Personal And Advertising Injury**

"Personal and advertising injury":

Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

BUSINESSOWNERS
BP HG 10 09 10

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – LEAD CONTAMINATION

This endorsement modifies coverage found under the following:

BUSINESSOWNERS COVERAGE FORM
Section II-A.1. Business Liability
Section II-A.2. Medical Expenses

This endorsement modifies the above Coverages to exclude "occurrences" at the Insured premises which result in:

a. "Bodily injury" arising out of the ingestion, inhalation or absorption of lead in any form;

b. "Property damage" arising from any form of lead;

c. "Personal and advertising injury" arising from any form of lead;

d. Medical expenses arising from any form of lead;

e. Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

f. Any loss, cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

BP HG 10 09 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM**

**SECTION II – LIABILITY**

The following is added to Section **B. –Exclusions**

*This insurance does not apply to:*

(1) Any "bodily injury", "property damage" or "personal and advertising injury" arising out of or caused by or allegedly caused by, any exposure or threatened exposure to "asbestos", in any manner or form, or in combination with any other factors, substances or events.

(2) Any "bodily injury", "property damage" or "personal and advertising injury" arising out of or caused by the manufacturing, sale, storage, transportation, dispersal, release, leakage, removal, or disposal of any "asbestos" or any products containing "asbestos".

(3) Any testing, monitoring, investigating, treating, removal, clean up, control or destruction of "asbestos".

(4) Any other claim for damages, demands, costs, expenses or reimbursement of costs or expenses relating to or arising from "asbestos".

However, this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

For the purpose of this exclusion endorsement, "asbestos" means any type or form of asbestos, including but not limited to asbestos products or goods, asbestos fibers, asbestos materials, and any dusts, gases, by-products, vapors, or odors that are released or produced by asbestos or asbestos products, goods, fibers or material.

BUSINESSOWNERS
BP HG 58 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOBACCO HEALTH HAZARD EXCLUSION

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM**

Section II – Liability is amended as follows:

A. Paragraph B. Exclusions 1. Applicable To Business Liability Coverage is amended to add the following:

This insurance does not apply to any liability or damages, including expenses for investigation of defense, arising out of or allegedly arising out of:

1. "Health hazards" from the use of "tobacco products";

2. "Health hazards" caused by or contributed to by second-hand smoke from "tobacco products";

3. The furnishing of "tobacco products" to a person under the legal smoking age;

4. The manufacture, sale, handling, or distribution of "tobacco products";

5. Any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of "tobacco products"; or

6. Any act or failure to act in connection with "tobacco products", including without limitation

   a. the providing of or failure to provide warnings or instructions;

   b. the promotion of the use or consumption of "tobacco products";

   c. any warranties or representations made at any time with respect to the fitness, quality, durability or performance of "tobacco products".

B. For the purposes of this endorsement, Paragraph F. Liability And Medical Expenses Definition is amended to add the following:

1. "Health hazards" include, but are not limited to, the actual or alleged emergence, contraction, aggravation or exacerbation or fear of the emergence, contraction, aggravation or exacerbation of any form of cancer, cancerous or precancerous condition, arteriosclerosis, heart disease, emphysema, lung disease or any other injury, disease, malady or impairment of the health of the human body arising out of, in whole or in part, the:

   a. Ingestion, consumption, inhalation or use of; or

   b. Exposure to the ingestion, consumption, inhalation or use of;

   any "tobacco product".

2. "Tobacco product" includes, but is not limited to, tobacco (including raw and cured tobacco), cigars and cigar wrappers, pipes and pipe tobacco, cigarette filters, snuff, chewing tobacco, smokeless tobacco products, tobacco substitutes, cigarettes and cigarette paper, gaseous or solid residues or byproducts of tobacco use or consumption, smoke from any of the above, and any chemical, mineral, or other product sprayed on, applied to or found within or used in conjunction with, any of the above.

BUSINESSOWNERS
BP HG 63 05 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT GREEN ENVIRONMENTAL AND EFFICIENCY IMPROVEMENTS

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM**

Read the entire endorsement carefully to determine rights, duties and what is and is not covered.

**PROPERTY GENERAL CONDITIONS**

The following **Property General Conditions** are added.

I.  If Covered Property requires repair or replacement due to an "Equipment Breakdown", "we" will pay;

    **a.** The lesser of the reasonable and necessary additional cost incurred by the insured to repair or replace physically damaged Covered Property with equipment of like kind and quality which qualifies as "Green". Like kind and quality includes similar size and capacity.

    **b.** The additional reasonable and necessary fees incurred by the insured for an accredited professional certified by a "Green Authority" to participate in the repair or replacement of physically damaged Covered Property as "Green".

    **c.** The additional reasonable and necessary cost incurred by the insured for certification or recertification of the repaired or replaced Covered Property as "Green".

    **d.** The additional reasonable and necessary cost incurred by the insured for "Green" in the removal, disposal or recycling of damaged Covered Property.

    **e.** The business interruption (if covered within the Policy to which this **Equipment Breakdown Enhancement Endorsement – Green Environmental and Efficiency Improvements** is attached) loss during the additional time required for repair or replacement of Covered Property, consistent with "Green", in the coverages above.

"We" will not pay more than 125%, to a maximum limit of $100,000, of what the cost would have been to repair or replace with equipment of like kind and quality inclusive of fees, costs, and any business interruption loss incurred as stated above.

These **Property General Conditions** will be a part of, and not an addition to, the limit of liability per loss or any other sub-limits of liability of this Policy.

**EXCLUSIONS**

The following **Exclusions** are added;

I.  **The Equipment Breakdown Enhancement Endorsement - Green Environmental and Efficiency Improvements** does not cover any of the following:

    **a.** Covered Property does not include "stock", raw materials, finished goods, "production machinery", merchandise, electronic data processing equipment not used in the functional support of the real property, process water, molds and dies, property in the open, property of others for which the insured is legally liable, or personal property of others.

b.  Any loss adjusted on any valuation basis other than a repair or replacement basis as per the Valuation section of this policy.

c.  Any loss covered under any other section of this policy.

d.  Any cost incurred due to any law or ordinance with which the insured was legally obligated to comply prior to the time of the "Equipment Breakdown".

## DEFINITIONS

The following **Definitions** are added:

I.   "Green" means products, materials, methods and processes certified by a "Green Authority" that conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize environmental impact.

II.  "Green Authority" means an authority on "Green" buildings, products, materials, methods or processes certified and accepted by Leadership in Energy and Environmental Design (LEED®), "Green" Building Initiative Green Globes®, Energy Star Rating System or any other recognized "Green" rating system.

III. "Production machinery" means any machine which processes, forms, shapes, or transports raw materials, materials in process, waste materials or finished products.

All other terms and conditions of this policy remain unchanged.

BUSINESSOWNERS
BPHG64 0713

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# GREEN ENVIRONMENTAL AND EFFICIENCY IMPROVEMENTS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**Section I Property Coverage A.5. Additional Coverages** is amended to add the following.

**Green Covered Property**

"We" will pay the reasonable and necessary additional costs "you" incur to repair or replace physically damaged Covered Property at a described premises for "specified causes of loss" other than equipment breakdown.  "We" will pay:

    **a.** The lesser of the reasonable and necessary additional cost incurred by the Insured to repair or replace physically damaged Covered Property with Property of like kind and quality which qualifies as "Green". Like kind and quality includes similar size and capacity.

    **b.** The additional reasonable and necessary fees incurred by the Insured for an accredited professional certified by a "Green Authority" to participate in the repair or replacement of physically damaged  Covered Property as "Green".

    **c.** The additional reasonable and necessary cost incurred by the Insured for certification or recertification of the repaired or replaced Covered Property as "Green".

    **d.** The additional reasonable and necessary cost incurred by the Insured for "Green" in the removal, disposal or recycling of damaged Covered Property.

"We" will not pay more than 10% of the Building and/or Business Personal Property limit, to a maximum limit of $50,000, after the application of any deductible, of what the cost would have been to repair or replace with property of like kind and quality inclusive of fees, and costs incurred as stated above.  This limit will be a part of, and not an addition to, the limit of liability per loss or any other sub-limits of liability of this Policy.

**EXCLUSIONS**

The following **Exclusion** is added:

**1.** Green Covered Property does not include any of the following:

    **a.** "Stock", raw materials, finished goods, "production machinery", merchandise, "electronic data" processing equipment not used in the functional support of the real property, process water, molds and dies, property in the open, property of others for which the Insured is legally liable, or personal property of others.

    **b.** Any loss adjusted on any valuation basis other than a repair or replacement basis as per the Valuation section of this policy.

    **c.** Any loss covered under any other section of this policy.

    **d.** Any cost incurred due to any law or ordinance with which the Insured was legally obligated to comply prior to the time of the covered loss.

    **e.** Loss of or damage to "green roofing systems" unless the loss or damage is directly caused by a "specified cause of loss".

## DEFINITIONS

The following **Definitions** are added:

I.  "Green" means products, materials, methods and processes certified by a "Green Authority" that conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize environmental impact.

II.  "Green Authority" means an authority on "Green" buildings, products, materials, methods or processes certified and accepted by Leadership in Energy and Environmental Design (LEED®), "Green" Building Initiative Green Globes®, Energy Star Rating System or any other recognized "Green" rating system.

III.  "Production machinery" means any machine which processes, forms, shapes, or transports raw materials, materials in process, waste materials or finished products.

IV.  "Green Roofing Systems" means environmentally friendly roof coverings as defined by the LEED® Green Building Rating System™ of the U.S. Green Building Council.

All other terms and conditions of this policy remain unchanged.

BUSINESSOWNERS
BPHG79 0713

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO BY-PRODUCTS OF PRODUCTION OR PROCESSING OPERATIONS FOR RENTAL PROPERTIES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**Section I – Property is amended as follows:**

A. The terms of this endorsement apply to all rental unit(s) covered by this policy, and to the building(s) in which such unit(s) are located, including any contents of such unit(s) and building(s), all of which constitute the described premises for the purpose of this endorsement.

B. We will not pay for loss or damage to the described premises, caused by or resulting from smoke, vapor, gas or any substance released in the course of production operations or processing operations performed at any rental unit(s) covered by this policy. This exclusion applies regardless of whether such operations are:

  1. Legally permitted or prohibited;

  2. Permitted or prohibited under the terms of the lease; or

  3. Usual to the intended occupancy of the premises.

This exclusion does not apply to loss or damage by fire or explosion that results from the release of a by-product of the production or processing operation.

C. If the loss or damage described in Paragraph B. of this endorsement results in Business Income loss or Extra Expense, there is no coverage for such loss or expense under the Business Income or Extra Expense Additional Coverages.

D. The conduct of a tenant's production or processing operations will not be considered to be vandalism of the rental premises regardless of whether such operations are:

  1. Legally permitted or prohibited;

  2. Permitted or prohibited under the terms of the lease; or

  3. Usual to the intended occupancy of the premises.

   Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BUSINESSOWNERS
BP IN 01 07 13

# BUSINESSOWNERS COVERAGE FORM INDEX

This index is provided only as a convenience. It should not be assumed to provide a reference to every provision that can affect a question, claim or coverage. To determine the full scope of coverage and pertinent restrictions and exclusions, the policy (including endorsements) must be read in its entirety. The features may also be affected by related provisions not referenced at all in the index, or noted elsewhere in it. For instance, an **Exclusion** feature addresses a specific policy exclusion; but restrictions of coverage and exclusions also appear within the areas where coverage, covered causes of loss, etc., are described.

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Abandonment Property Loss Condition | 24 | Business Liability Coverage | 34-36 |
| Accounts Receivable Coverage Extension | 16 | Business Personal Property Coverage | 1-2 |
| Accounts Receivable Exclusion | 22 | Business Personal Property Limit – Seasonal Increase (Limit Of Insurance) | 23 |
| Acts Or Decisions Exclusion | 22 | Business Personal Property Temporarily In Portable Storage Units Coverage Extension | 17 |
| Additional Coverages | 3-14 | Cancellation Condition | 50 |
| Additional Exclusion – Loss Or Damage To Products Exclusion | 22 | Certain Computer-related Losses Exclusion | 19 |
| "Advertisement" Definition | 46 | Changes Condition | 51 |
| Aggregate Limits (Liability And Medical Expenses Limits Of Insurance) | 45 | Changes In Or Extremes Of Temperature Exclusion | 21 |
| Aircraft, Auto Or Watercraft Exclusion | 38-39 | Civil Authority Additional Coverage | 8-9 |
| Appraisal Property Loss Condition | 24 | Collapse Additional Coverage | 5-6 |
| "Auto" Definition | 46 | Collapse Exclusion | 21 |
| Bankruptcy General Condition | 45 | "Computer" Definition | 32 |
| "Bodily Injury" Definition | 46 | Concealment, Misrepresentation Or Fraud Condition | 51 |
| Building Coverage | 1 | Consequential Losses Exclusion | 20 |
| Building Limit – Automatic Increase (Limits Of Insurance) | 23 | Continuous Or Repeated Seepage Or Leakage Of Water Exclusion | 21-22 |
| Business Income Additional Coverage | 6-7 | Contractual Liability Exclusion | 38 |
| Business Income And Extra Expense Exclusions | 22 | Control Of Property General Condition | 28 |
| Business Income From Dependent Properties Additional Coverage | 10-11 | "Counterfeit Money" Definition | 32 |

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Coverage Extension – Supplementary Payments (Business Liability Coverage) | 35-36 | Employer's Liability Exclusion | 37 |
| Coverage Extensions – Section I – Property | 14-17 | Equipment Breakdown Protection Optional Coverage | 31-32 |
| "Coverage Territory" Definition | 46-47 | Errors Or Omissions Exclusion | 21 |
| Covered Causes Of Loss | 2 | Examination Of Your Books And Records Condition | 51 |
| Covered Property | 1-2 | Exclusions – Section I – Property | 17-22 |
| Damage To Impaired Property Or Property Not Physically Injured Exclusion | 40 | Exclusions – Section II – Liability | 36-44 |
| Damage To Property Exclusion | 40 | "Executive Officer" Definition | 47 |
| Damage To Your Product Exclusion | 40 | Expected Or Intended Injury Exclusion | 36 |
| Damage To Your Work Exclusion | 40 | Exposed Property Exclusion | 20 |
| Dampness Or Dryness Of Atmosphere Exclusion | 21 | Extended Business Income Coverage (Business Income Additional Coverage) | 7 |
| Debris Removal Additional Coverage | 3-4 | Extra Expense Additional Coverage | 7-8 |
| Deductibles | 23-24 | False Pretense Exclusion | 20 |
| Dishonesty Exclusion | 20 | Fire Department Service Charge Additional Coverage | 5 |
| Duties In The Event Of Loss Or Damage Property Loss Condition | 24 | Fire Extinguisher Systems Recharge Expense Additional Coverage | 11-12 |
| Duties In The Event Of Occurrence, Offense, Claim Or Suit General Condition | 46 | Forgery Or Alteration Additional Coverage | 9 |
| Earth Movement Exclusion | 17-18 | Frozen Plumbing Exclusion | 20 |
| Electrical Apparatus Exclusion | 19-20 | "Fungi" Definition | 32 |
| Electrical Disturbance Exclusion | 21 | "Fungi", Wet Rot Or Dry Rot Exclusion | 19 |
| Electronic Data Additional Coverage | 12 | Glass Expenses Additional Coverage | 11 |
| "Electronic Data" Definition | 32 | Governmental Action Exclusion | 18 |
| Electronic Data Exclusion | 41-42 | "Hostile Fire" Definition | 47 |
| "Employee" Definition | 47 | "Impaired Property" Definition | 47 |
| Employee Dishonesty Optional Coverage | 29-31 | Increased Cost Of Construction Additional Coverage | 9-10 |

© Insurance Services Office, Inc., 2012            BP IN 01 07 13

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Inspections And Surveys Condition | 51 | Medical Expenses Exclusions | 42-44 |
| Installation, Testing, Repair Exclusion | 21 | "Member" Definition | 32 |
| Insurance Under Two Or More Coverages Condition | 51 | Mobile Equipment Exclusion | 39 |
| "Insured Contract" Definition | 47 | "Mobile Equipment" Definition | 48 |
| Interruption Of Computer Operations Additional Coverage | 12-13 | Money And Securities Optional Coverage | 29 |
| "Leased Worker" Definition | 47 | "Money" Definition | 32 |
| Legal Action Against Us General Condition – Section II – Liability | 46 | Money Orders And "Counterfeit Money" Additional Coverage | 9 |
| Legal Action Against Us Property Loss Condition – Section I – Property | 24 | Mortgageholders Property General Condition | 28 |
| Liability And Medical Expenses Definitions | 46-50 | Neglect Exclusion | 21 |
| Liability And Medical Expenses General Conditions | 45-46 | Negligent Work Exclusion | 22 |
| Liability And Medical Expenses Limits Of Insurance | 45 | Nesting Or Infestation Exclusion | 21 |
| Liberalization Condition | 51 | Newly Acquired Or Constructed Property Coverage Extension | 14-15 |
| Limitations | 2-3 | No Benefit To Bailee Property General Condition | 28 |
| Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage | 13-14 | Nuclear Energy Liability Exclusion | 42-44 |
| Limits Of Insurance – Section I – Property | 23 | Nuclear Hazard Exclusion | 18 |
| Liquor Liability Exclusion | 36-37 | "Occurrence" Definition | 48 |
| "Loading Or Unloading" Definition | 48 | "Operations" Definition | 32 |
| Loss Payment Property Loss Condition | 24-27 | Optional Coverages | 28-32 |
| "Manager" Definition | 32 | Ordinance Or Law Exclusion | 17 |
| Marring Or Scratching Exclusion | 21 | Other Insurance Condition | 51 |
| Mechanical Breakdown Exclusion | 21 | Other Types Of Loss Exclusion | 21 |
| Medical Expenses Coverage | 36 | Outdoor Property Coverage Extension | 15 |

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Outdoor Signs Optional Coverage | 28-29 | Property Not Covered | 2 |
| "Period Of Restoration" Definition | 32 | Recall Of Products, Work Or Impaired Property Exclusion | 40 |
| "Personal And Advertising Injury" Definition | 48 | Recovered Property Loss Condition | 27 |
| Personal And Advertising Injury Exclusion | 40-41 | Resumption Of Operations Property Loss Condition | 27 |
| Personal Effects Coverage Extension | 15 | Rust Or Other Corrosion Exclusion | 21 |
| Personal Property Off-premises Coverage Extension | 15 | Section I – Property | 1-33 |
| Policy Period, Coverage Territory Property General Condition | 28 | Section II – Liability | 34-50 |
| Pollutant Clean-up And Removal Additional Coverage | 8 | Section III – Common Policy Conditions | 50-52 |
| "Pollutants" Definition – Section I – Property | 33 | "Securities" Definition | 33 |
| "Pollutants" Definition – Section II – Liability | 48 | Separation Of Insureds General Condition | 46 |
| Pollution Exclusion – Section I – Property | 21 | Settling, Cracking, Shrinking Or Expansion Exclusion | 21 |
| Pollution Exclusion – Section II – Liability | 37-38 | Smog Exclusion | 21 |
| Premium Audit Condition | 52 | Smoke, Vapor, Gas Exclusion | 20 |
| Premiums Condition | 51-52 | "Specified Causes Of Loss" Definition | 33 |
| Preservation Of Property Additional Coverage | 4-5 | Steam Apparatus Exclusion | 20 |
| "Products-completed Operations Hazard" Definition | 49 | "Stock" Definition | 33 |
| Professional Services Exclusion | 39-40 | "Suit" Definition | 49 |
| "Property Damage" Definition | 49 | "Temporary Worker" Definition | 49 |
| Property Definitions | 32-33 | Transfer Of Rights Of Recovery Against Others To Us Condition | 52 |
| Property General Conditions | 28 | Transfer Of Your Rights And Duties Under This Policy Condition | 52 |
| Property Loss Conditions | 24-28 | Utility Services Exclusion | 18 |

© Insurance Services Office, Inc., 2012

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Vacancy Property Loss Condition | 27 | Water Damage, Other Liquids, Powder Or Molten Material Damage Additional Coverage | 8 |
| Valuable Papers And Records Coverage Extension | 15-16 | Water Exclusion | 19 |
| "Valuable Papers And Records" Definition | 33 | Wear And Tear Exclusion | 21 |
| Violation Of Customer Protection Statutes Exclusion | 42 | Weather Conditions Exclusion | 22 |
| Virus Or Bacteria Exclusion | 19 | Who Is An Insured | 44-45 |
| "Volunteer Worker" Definition | 49 | Workers' Compensation And Similar Laws Exclusion | 37 |
| War And Military Action Exclusion | 18 | "Your Product" Definition | 49-50 |
| War Exclusion | 39 | "Your Work" Definition | 50 |

POLICY NUMBER:                                          **BUSINESSOWNERS**
                                                        **BP 04 46 07 13**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ORDINANCE OR LAW COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Premises Number | Building Number | Coverage 1 (Check if applies) | Coverage 2 Limit Of Insurance | Coverage 3 Limit Of Insurance | Coverages 2 And 3 Combined Limit Of Insurance* |
|---|---|---|---|---|---|
| | | ☐ | $ | $ | $ |
| | | ☐ | $ | $ | $ |
| | | ☐ | $ | $ | $ |
| **Business Income And Extra Expense Optional Coverage (Enter Yes or No):** | | | | | |
| **Number Of Hours' Waiting Period For Period Of Restoration Applicable To Business Income And Extra Expense Optional Coverage:** | | | | | |
| *Do not enter a Combined Limit of Insurance if individual Limits of Insurance are selected for Coverages 2 and 3, or if one of these Coverages is not applicable. | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

**Section I – Property** is amended as follows:

**A.** Each Coverage – Coverage **1**, Coverage **2** and Coverage **3** – is provided under this endorsement only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the building identified for the Coverage(s) in the Schedule.

**B. Application Of Coverage(s)**

The Coverage(s) provided by this endorsement applies only if both **B.1.** and **B.2.** are satisfied and are then subject to the qualifications set forth in **B.3.**

**1.** The ordinance or law:

**a.** Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

**b.** Is in force at the time of loss.

But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

**2.** The building sustains direct physical damage:

**a.** That is covered under this policy and as a result of such damage, you are required to comply with the ordinance or law; or

**b.** That is covered under this policy and direct physical damage that is not covered under this policy, and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

**c.** But if the damage is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

**3.** In the situation described in **B.2.b.** above, we will not pay the full amount of loss otherwise payable under the terms of Coverages **1, 2** and/or **3** of this endorsement. Instead, we will pay a proportion of such loss, meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

(Section **H.** of this endorsement provides an example of this procedure.)

However, if the covered direct physical damage alone would have resulted in a requirement to comply with the ordinance or law, then we will pay the full amount of loss otherwise payable under terms of Coverages **1, 2** and/or **3** of this endorsement.

**C.** We will not pay under Coverage **1, 2** or **3** of this endorsement for:

**1.** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

**2.** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

**D.** Coverage

**1. Coverage 1 – Coverage For Loss To The Undamaged Portion Of The Building**

With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **1** for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building. Coverage **1** is included within the Limit Of Insurance shown in the Declarations as applicable to the covered building. Coverage **1** does not increase the Limit of Insurance.

**2. Coverage 2 – Demolition Cost Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property.

Paragraph **E.5.d.** Loss Payment Property Loss Condition does not apply to Demolition Cost Coverage.

**3. Coverage 3 – Increased Cost Of Construction Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

**a.** Repair or reconstruct damaged portions of that building; and/or

**b.** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

However:

**a.** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**b.** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

Paragraph **E.5.d.** Loss Payment Property Loss Condition does not apply to the **Increased Cost Of Construction Coverage.**

© Insurance Services Office, Inc., 2012

BP 04 46 07 13

**E. Loss Payment**

1. All following loss payment Provisions E.2. through E.5. are subject to the apportionment procedure set forth in Section B.3. of this endorsement:

2. When there is a loss in value of an undamaged portion of a building to which Coverage 1 applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

   a. If the property is repaired or replaced on the same or another premises, we will not pay more than the lesser of:

      (1) The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

      (2) The Limit Of Insurance shown in the Declarations as applicable to the covered building.

   b. If the property is not repaired or replaced, we will not pay more than the lesser of:

      (1) The actual cash value of the building at the time of loss; or

      (2) The Limit Of Insurance shown in the Declarations as applicable to the covered building.

3. Unless Paragraph E.5. applies, loss payment under Coverage 2 – Demolition Cost Coverage will be determined as follows:

   We will not pay more than the lesser of the following:

   a. The amount you actually spend to demolish and clear the site of the described premises; or

   b. The applicable Limit Of Insurance shown for Coverage 2 in the Schedule above.

4. Unless Paragraph E.5. applies, loss payment under Coverage 3 – Increased Cost Of Construction Coverage will be determined as follows:

   a. We will not pay under Coverage 3:

      (1) Until the property is actually repaired or replaced, at the same or another premises; and

      (2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

   b. If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage 3 is the lesser of:

      (1) The increased cost of construction at the same premises; or

      (2) The applicable Limit Of Insurance shown for Coverage 3 in the Schedule above.

   c. If the ordinance or law requires relocation to another premises, the most we will pay under Coverage 3 is the lesser of:

      (1) The increased cost of construction at the new premises; or

      (2) The applicable Limit Of Insurance shown for Coverage 3 in the Schedule above.

5. If a Combined Limit Of Insurance is shown for Coverages 2 and 3 in the Schedule above, Paragraphs E.2. and E.3. of this endorsement do not apply with respect to the building property that is subject to the Combined Limit, and the following loss payment provisions apply instead:

   The most we will pay, for the total of all covered losses for Demolition Cost and Increased Cost Of Construction, is the Combined Limit Of Insurance shown for Coverages 2 and 3 in the Schedule above. Subject to this Combined Limit of Insurance, the following loss payment provisions apply:

   a. For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

   b. With respect to the Increased Cost Of Construction:

      (1) We will not pay for the increased cost of construction:

         (a) Until the property is actually repaired or replaced, at the same or another premises; and

         (b) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

 © Insurance Services Office, Inc., 2012

(2) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

(3) If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

F. The terms of this endorsement apply separately to each building to which this endorsement applies.

G. Under this endorsement, we will not pay for loss due to any ordinance or law that:

1. You were required to comply with before the loss, even if the building was undamaged; and

2. You failed to comply with.

H. Example of Proportionate Loss Payment for Ordinance or Law Coverage Losses (procedure as set forth in Section B.3. of this endorsement).

Assume:

- Wind is a Covered Cause of Loss. Flood is an excluded Cause of Loss;
- The building has a value of $200,000;
- Total direct physical damage to building: $100,000;
- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value;
- Portion of direct physical damage that is covered (caused by wind): $30,000;
- Portion of direct physical damage that is not covered (caused by flood): $70,000; and
- Loss under Ordinance or Law Coverage 3 of this endorsement: $60,000.

Step 1: Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 divided by $100,000 = .30

Step 2: Apply that proportion to the Ordinance or Law loss.

$60,000 x .30 = $18,000

In this example, the most we will pay under this endorsement for the Coverage 3 loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

NOTE: The same procedure applies to losses under Coverages 1 and 2 of this endorsement.

I. If shown as applicable in the Schedule of this endorsement, the following applies:

**Business Income And Extra Expense Optional Coverage**

1. If a Covered Cause of Loss occurs to property at the premises described in the Declarations, coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of suspension of your "operations" caused by or resulting from a requirement to comply with any ordinance or law that:

a. Regulates the construction or repair of any property;

b. Requires the tearing down of parts of any property not damaged by a Covered Cause of Loss; and

c. Is in force at the time of loss.

However, coverage is not extended under this endorsement to include loss caused by or resulting from the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

2. Paragraph **H.9. Period Of Restoration** Definition is replaced by the following:

9. "Period of restoration" means the period of time that:

a. Begins:

(1) 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises, unless a lesser number of hours is shown in the Schedule of this endorsement; or

(2) Immediately after the time of the direct physical loss or damage for Extra Expense Coverage caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the earlier of:

(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

 © Insurance Services Office, Inc., 2012

(2) The date when business is resumed at a new permanent location.

"Period of restoration" includes any increased period required to repair or reconstruct the property to comply with the minimum standards of any ordinance or law, in force at the time of loss, that regulates the construction or repair, or requires the tearing down of any property.

The expiration date of this policy will not cut short the "period of restoration".

POLICY NUMBER:

<div align="right">

**BUSINESSOWNERS**
**BP 14 17 01 10**
</div>

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Designated Location(s): |
| --- |
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II – Liability** is amended as follows:

A. For all sums which the insured becomes legally obligated to pay as damages for "bodily injury" or "property damage" caused by "occurrences" covered under Paragraph **A.1.** Business Liability, and for all medical expenses caused by accidents covered under Paragraph **A.2.** Medical Expenses, which can be attributed only to ongoing operations at a single designated "location" shown in the Schedule above:

1. A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the Other Than Products/Completed Operations Aggregate Limit shown in the Declarations.

2. The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Paragraph **A.1.** Business Liability, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Paragraph **A.2.** Medical Expenses, regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

3. Any payments made under Paragraph **A.1.** Business Liability for damages or under Paragraph **A.2.** Medical Expenses for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the Other Than Products/Completed Operations Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expenses continue to apply. However, instead of being subject to the Other Than Products/Completed Operations Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

<div align="center">

**BP 14 17 01 10**     © Insurance Services Office, Inc., 2009     **Page 1 of 2**     ☐
</div>

B. For all sums under Paragraph **A.1. Business Liability** which the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by "occurrences" and medical expenses caused by accidents under Paragraph **A.2. Medical Expenses**, which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

1. Any payments made under Paragraph **A.1. Business Liability** for damages or under Paragraph **A.2. Medical Expenses** for medical expenses shall reduce the amount available under the Other Than Products/Completed Operations Aggregate Limit or the Products/Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Location General Aggregate Limit.

C. When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products/Completed Operations Aggregate Limit, and not reduce the Other Than Products/Completed Operations Aggregate Limit nor the Designated Location General Aggregate Limit.

D. For the purposes of this endorsement, the **Liability And Medical Expenses Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

E. The provisions of Paragraph **D. Liability And Medical Expenses Limits Of Insurance**, not otherwise modified by this endorsement, shall continue to apply as stipulated.

© Insurance Services Office, Inc., 2009

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BUSINESSOWNERS IMPROVED VALUE ENDORSEMENT PLUS

This endorsement modifies insurance provided in the following:

BUSINESSOWNERS COVERAGE FORM
CONTRACTORS' INSTALLATION, TOOLS AND EQUIPMENT COVERAGE

## INDEX OF COVERAGES OF THIS FORM

| Coverage Description | Limit of Insurance |
|---|---|
| **On all policies:** | |
| - Debris Removal | $ 50,000 |
| - Water Back-Up And Sump Overflow | $ 20,000 |
| - Fire Protective Equipment recharged and clean up costs after discharge | Actual Loss Sustained |
| - Fire Department Service Charge | $ 5,000 |
| - Lock Replacement | $ 1,000 |
| - Outdoor Property ($1,000 any one tree, shrub or plant) | $ 5,000 |
| - Pollutant Clean-Up And Removal | $ 25,000 |
| - Employee Dishonesty | $ 25,000 |
| - Forgery Or Alteration | $ 25,000 |
| - Electronic Data | $ 50,000 |
| - Interruption of Computer Operations | $ 25,000 |
| - Credit Card Slips | $ 5,000 |
| - Claim Data Expense | $ 5,000 |
| - Business Income Changes - 24 Hour Time Period (Replacing 72 Hour Time Period) | |
| - Removal Of Insurance-To-Value Provision | |
| - Bail Bonds | $ 1,000 |
| - Limited Exception For A Short-Term Pollution Event | $ 25,000 |
| - Damage To Premises Rented To You | $ 200,000 |
| - "Bodily Injury" definition amended to include Mental Anguish | |
| **If a Limit of Insurance is shown in the Declarations for Building Coverage:** | |
| - Ordinance or Law Coverage: | |
|     Coverage A: Undamaged Portion of Building | $ 50,000 |
|     Coverage B: Demolition Cost | $ 50,000 |
|     Coverage C: Increased Cost of Construction | $ 50,000 |
| - Buildings at Newly Acquired or Constructed Property | $ 500,000 |
| **If a Limit of Insurance is shown in the Declarations for Business Personal Property:** | |
| - Personal Property of Others without regard to legal liability | $ 15,000 |
| - Personal Property at Newly Acquired or Constructed Property | $ 200,000 |
| - Personal Property off Premises (including $5,000 Salespersons Samples) | $ 15,000 |
| - Tenants Building Coverage (excluding glass) | $ 20,000 |
| - Personal Effects | $ 5,000 |
| - Brands and Labels | $ 25,000 |
| - Valuable Papers and Records | $ 50,000 |
| - Accounts Receivable | $ 50,000 |
| - Fine Arts | $ 25,000 |
| - Lease Gap for Office Equipment | $ 25,000 |
| - Spoilage Coverage | $ 10,000 |
| - Money & Securities | |
|     Inside the Premises | $ 10,000 |
|     Outside the Premises | $ 5,000 |
| **If the CONTRACTORS' INSTALLATION, TOOLS AND EQUIPMENT COVERAGE Form is a part of this policy:** | |
| - Contractors' Installation Coverage | $ 15,000 |
| - Contractors' Tools and Equipment ($3,000 max any one tool or piece of equipment) | $ 15,000 |

**PART ONE amends SECTION I – PROPERTY of the BUSINESSOWNERS COVERAGE FORM**

## PERSONAL PROPERTY OF OTHERS WITHOUT REGARD TO LEGAL LIABILITY

Covered Business Personal Property Section A.1.b. is amended to add:

At your option, we will provide an additional amount of insurance for Personal Property of Others in your care, custody or control without regard to the amount you are legally responsible to insure under a written contract.

The most we will pay for loss or damage under this provision is $15,000. The limit provided is in addition to any other limit provided in the policy for Personal Property of Others.

## TENANTS BUILDING COVERAGE

Covered Business Personal Property Section A.1.b. is amended to add:

Tenants Building Coverage for Building structures, including fixtures and permanently installed machinery or equipment (excluding glass), if you are a tenant and your lease requires it.

The most we will pay for loss or damage under this extension is $20,000.

## ORDINANCE OR LAW COVERAGE

1. The Ordinance or Law Exclusion (B.1.a.) of the Exclusions Section is modified by adding the following Extension to the Additional Coverage Section A.5.:

   (1) **Coverage A - COVERAGE FOR LOSS TO THE UNDAMAGED PORTION OF THE BUILDING**

   If a Covered Cause of Loss occurs to covered Building Property, we will pay for loss in value of the undamaged portion of the building as a consequence of a requirement to comply with any ordinance or law that:

   - Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

   - Regulates the construction or repair of the building or establishes zoning or land use requirements at the described premises; and

   - Is in force at the time of loss.

   (2) **Coverage B - DEMOLITION COST COVERAGE**

   If a Covered Cause of Loss occurs to covered Building Property, we will pay the cost to demolish and clear the site of undamaged parts of the property as a consequence of a requirement to comply with building, zoning or land use ordinance or law.

   (3) We will not pay under this endorsement for the costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

   (4) Limits of Insurance

   (a) The most we will pay for Coverage A - Coverage for Loss to the Undamaged Portion of the Building under this endorsement is $50,000 for each building described in the Declarations.

   (b) The most we will pay for Coverage B - Demolition Cost Coverage under this endorsement is $50,000 for each building described in the Declarations.

2. **Coverage C – INCREASED COST OF CONSTRUCTION**

   Section A.5.i. Additional Coverage, INCREASED COST OF CONSTRUCTION is modified concerning the limit we will pay under (6) as follows:

   The most we will pay under this Additional Coverage, for each described building insured, is $50,000. The amount payable under this Additional Coverage is additional insurance.

## DEBRIS REMOVAL

Additional Coverages Section A.5.a. Item (4) is amended to read as follows:

(4) We will pay up to an additional $50,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

   (a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

   (b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs (4)(a) and/or (4)(b) apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $50,000.

## FIRE DEPARTMENT SERVICE CHARGE

**Additional Coverages** Section **A.5.c.** is amended to read as follows:

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $5,000, for service at each premises described in the Declarations, in addition to the limit shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

## POLLUTANT CLEAN-UP AND REMOVAL

**Additional Coverages** Section **A.5.h.** the last paragraph is amended to read as follows:

The most we will pay for each location under this Additional Coverage is $25,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

## FORGERY OR ALTERATION

**Additional Coverages** Section **A.5.k.** Item (4) is amended to read as follows:

The most we will pay for any loss, including legal expenses, under this Additional Coverage is $25,000, in addition to the limit shown in the Declarations.

## ELECTRONIC DATA

**Additional Coverages** Section **A.5.p.** Item (3) is amended to read as follows:

The most we will pay under this Additional Coverage – Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $50,000 in addition to the limit shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

## INTERRUPTION OF COMPUTER OPERATIONS

**Additional Coverages** Section **A.5.q.** Item (3) is amended to read as follows:

The most we will pay under this Additional Coverage – Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $25,000 in addition to the limit shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

## BRANDS AND LABELS

**Additional Coverages** Section **A.5.** is amended to add the following:

If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may:

(1) Stamp the word salvage on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

(2) Remove the brands or labels, if doing so will not physically damage the merchandise. You must re-label the merchandise or its containers to comply with the law.

We will pay reasonable costs you incur to perform the activity described in Paragraph (1) or (2) above. The most we will pay for these costs under this additional coverage is $25,000, but the total we pay for these costs and the value of the damaged property will not exceed the applicable Limit of Insurance on such property.

## MONEY & SECURITIES

**Additional Coverages** Section **A.5.** is amended to add the following:

We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee (including a temporary or leased employee) having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

(1) Theft, meaning any act of stealing;

(2) Disappearance; or

(3) Destruction.

In addition to the Limitations and Exclusions applicable to Section I – Property, we will not pay for loss:

(1) Resulting from accounting or arithmetical errors or omissions;

(2) Due to the giving or surrendering of property in any exchange or purchase; or

(3) Of property contained in any "money" – operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

The most we will pay is $10,000 for loss while inside the Premises for "money" and "securities" while:

(1) In or on the described premises; or

(2) Within a bank or savings institution

and $5,000 for Outside the Premises for "money " and "securities" while anywhere else.

You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

All loss caused by one or more persons or involving a single act or series of related acts is considered one occurrence.

If a limit is shown in the Declarations for Inside the Premises or Outside the Premises for "money" and "securities", that limit is in addition to the limit provided by this additional coverage.

## NEWLY ACQUIRED OR CONSTRUCTED PROPERTY

Coverage Extensions Section A.6.a., Items (1) and (2) the last paragraph of each is amended to read as follows:

**(1) Buildings**

The most we will pay for loss or damage under this Extension is $500,000 at each building regardless of any other limit shown in the policy.

**(2) Business Personal Property**

The most we will pay for loss or damage under this Extension is $200,000 at each building regardless of any other limit shown in the policy.

## PERSONAL PROPERTY OFF PREMISES

Coverage Extensions Section A.6.b. is amended to read as follows:

You may extend the insurance provided by this policy, to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the custody of others or while in due course of transit or temporarily at a premises you do not own, lease, or operate without regard to your legal liability.

The most we will pay for loss or damage under this Extension is $15,000, in addition to any other limit shown in the policy but not more than $5,000 per employee for samples in the care, custody, or control of your salespersons, unless the property is in such

care, custody or control at a fair, trade show or exhibition.

## OUTDOOR PROPERTY

Coverage Extensions Section A.6.c. is amended to read as follows:

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs, trees, shrubs and plants (other than trees, shrubs or plants which are part of a vegetated roof), including debris removal expense. Loss or damage must be caused by or result from a Covered Cause of Loss.

The most we will pay for loss or damage under this Extension is $5,000 but not more than $1,000 for any one tree, shrub or plant.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

## PERSONAL EFFECTS

Coverage Extensions Section A.6.d. is amended to read as follows:

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees including temporary or leased employees. This extension does not apply to:

(1) Tools or equipment used in your business; or

(2) Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $5,000 at each described premises.

## VALUABLE PAPERS AND RECORDS

Coverage Extensions Section A.6.e. Item (3) is amended to read as follows:

The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $50,000, in addition to the Limit of Insurance for "valuable papers and records" shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $5,000.

## ACCOUNTS RECEIVABLE

Coverage Extensions Section A.6.f. Item (2) is amended to read as follows:

The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $50,000, in addition to the Limit of Insurance for accounts receivable shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

## WATER BACK-UP AND SUMP OVERFLOW

**Coverage Extensions** Section A.6. is amended to add the following:

A. You may extend this coverage to apply to direct physical loss or damage to Covered Property caused by or resulting from:

1. Water or waterborne material which backs up through or overflows or is otherwise discharged from a sewer or drain; or

2. Water or waterborne material which overflows or is otherwise discharged from a sump, sump pump or related equipment, even if the overflow or discharge results from mechanical breakdown of a sump pump or its related equipment.

   However, with respect to Paragraph A.2., we will not pay the cost of repairing or replacing a sump pump or its related equipment in the event of mechanical breakdown.

B. The coverage described in Paragraph A. of this endorsement does not apply to loss or damage resulting from:

1. An insured's failure to keep a sump pump or its related equipment in proper working condition;

2. An insured's failure to perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions; or

3. Sump pump failure which is caused by or results from failure of power, unless this policy is endorsed to cover power failure affecting the described premises.

C. For the purposes of this endorsement, the term drain includes a roof drain and related fixtures.

D. With respect to the coverage provided under the Water Back-Up And Sump Overflow section of this endorsement, the **Water Exclusion** in **Section I – Property** is replaced by the following:

1. Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

2. Mudslide or mudflow;

3. Water under the ground surface pressing on, or flowing or seeping through:

a. Foundations, walls, floors or paved surfaces;

b. Basements, whether paved or not; or

c. Doors, windows or other openings; or

4. Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1.** or **3.**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **1.** through **4.**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **1.** through **4.**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

E. We will pay no more than $20,000 for loss or damage occurring in a building at a premises described in the Declarations in addition to any other limit shown on the policy. A $500 deductible per claim will apply to this Extension.

## LOCK REPLACEMENT

**Coverage Extensions** Section A.6. is amended to add the following:

You may extend this coverage to apply to the cost to repair or replace the door locks or tumblers on your described premises due to theft of your door keys. The most we will pay under this Extension is $1,000 regardless of the number of described premises. A $50 deductible per claim will apply to this Extension.

## FIRE PROTECTIVE EQUIPMENT

**Coverage Extensions** Section A.6. is amended to add the following:

We will pay your costs to recharge or refill fire protective equipment and clean up and remove the fire extinguishing agent resulting from the discharge of a fire extinguishing agent from fire protective equipment. The discharge must:

(1) Be caused by a covered cause of loss;

(2) Result from the intended operation of the fire protective equipment to prevent or control a covered cause of loss;

(3) Be accidental; or

(4) Result from a malfunction of the fire protective equipment in proper operating condition or if caused by discharge at the time of servicing, refilling or testing of the fire protective equipment.

The most we will pay for loss or damage in any one occurrence is the actual loss sustained subject to a maximum of the limit of insurance for business personal property shown in the Declarations.

No deductible applies to this Extension.

## CREDIT CARD SLIPS

**Coverage Extensions** Section A.6. is amended to add the following:

You may extend the insurance provided by this coverage form to apply to amounts you are unable to collect due to loss of or damage to credit card slips while located at the described premises as a result of a covered cause of loss.

It is your responsibility to establish the amount of the loss under this extension. If it is not possible, the amount of the loss will be determined as follows:

(1) If you have been in business for more than 12 months at the location of the loss, one-thirtieth of the average monthly amount of credit card slips will be considered as average daily credit card slips for that location. The 12 months immediately preceding the discovery of the loss will be used to determine the average monthly amount.

(2) If you have been in business for less than 12 months at the location of the loss, the average daily credit card slips shall be one-thirtieth of the average monthly amount of credit card slips for the number of months you have been in business at that location.

(3) The average daily credit card slips will be multiplied by the number of days for which slips are lost to determine the amount of the loss, subject to the maximum limit indicated below.

The most we will pay as a result of loss or damage to credit card slips under this Extension is $5,000.

No deductible applies to this Extension.

## CLAIM DATA EXPENSE

**Coverage Extensions** Section A.6. is amended to add the following:

You may extend the insurance provided by this Coverage Form to apply to the expense you incur in preparing claim data when we require it. This includes the cost of taking inventories, making appraisals, and preparing other documentation to show the extent of loss.

The most we will pay for preparation of claim data under this Extension is $5,000. We will not pay for any expenses billed by and payable to insurance adjusters or attorneys or any costs as provided in the Loss Condition Appraisal.

## FINE ARTS

**Coverage Extensions** Section A.6. is amended to add the following:

You may extend the insurance that applies to your Business Personal Property to apply to "Fine Arts" that are your property or the property of others that are in your care, custody or control.

"Fine Arts" includes but is not limited to paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique silver, manuscripts, china, porcelains, rare glass, bric-a-brac and similar property of rarity, historical value or artistic merit.

The most we will pay for loss or damage under this Extension is $25,000 at each described premises. Our payment for loss of or damage to property of others will only be for the account of the owner of the property.

The value of fine arts will be the least of the following amounts:

(1) The actual cash value of that property at the time of loss;

(2) The cost of reasonably restoring that property to its condition immediately before loss; or

(3) The cost of replacing that property with substantially identical property.

In the event of loss, the value of property will be determined as of the time of loss.

The following are added to Paragraph **E. Property Loss Conditions** under **Section I – Property**:

(1) In case of loss to any part of a pair or set we will:

   a. Repair or replace any part to restore the pair or set to its value before the loss; or

   b. Pay the difference between the value of the pair or set before and after the loss.

(2) You must arrange for fine arts to be packed and unpacked by competent packers.

## LEASE GAP FOR OFFICE EQUIPMENT

**Coverage Extensions** Section A.6. is amended to add the following:

You may extend the insurance that applies to your Business Personal Property to apply to long-term leased office equipment if the Lessor is named as an Additional Insured – Lessor in this policy. In the event of a total loss covered by this policy we will pay the amount of your additional legal obligation to the lessor for any difference between the actual cash value of the office equipment at the time of loss and the "outstanding balance" of the lease.

"Outstanding balance" means the amount you owe on the lease at the time of loss less any amounts representing taxes, overdue payments, penalties, interest or charges resulting from overdue payments,

excess wear and tear charges, and lease termination fees.

The most we will pay for loss or damage under this Extension is $25,000.

## SPOILAGE COVERAGE

**Coverage Extensions** Section **A.6.** is amended to add the following:

You may extend the insurance that applies to your Business Personal Property to apply to food spoilage resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control. This does not apply to food spoilage resulting from mechanical breakdown or failure of your refrigeration equipment.

The most we will pay for loss or damage under this Extension is $10,000.

## LIMITS OF INSURANCE

Section **C. Limits Of Insurance** is amended to add the following:

Unless otherwise noted, the limits applicable to the BUSINESSOWNERS IMPROVED VALUE ENDORSEMENT PLUS are in addition to the Limits of Insurance shown in the Declarations.

## REMOVAL OF INSURANCE-TO-VALUE PROVISION

Section **E. Property Loss Conditions** Paragraph **5. Loss Payment** Item **d.** is amended as follows:

A. Paragraph **(1)(a)** is replaced by the following:

(1) At replacement cost without deduction for depreciation, subject to the following:

(a) We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

(i) The Limit of Insurance under Section I – Property that applies to the lost or damaged property;

(ii) The cost to replace, on the same premises, the lost or damaged property with other property:

i. Of comparable material and quality; and

ii. Used for the same purpose; or

(iii) The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

B. Paragraph **(1)(b)** does not apply.

## EMPLOYEE DISHONESTY

Section **G. Optional Coverages** Item **3.c.** is amended to read as follows:

The most we will pay for loss or damage in any one occurrence is $25,000. This amount is in addition to any Limit of Insurance for Employee Dishonesty, if any, shown in the Declarations.

## BUSINESS INCOME CHANGES – 24 HOUR TIME PERIOD

(1) The 72-hour time period in the definition of "period of restoration" is replaced by 24 hours. Therefore, the period of restoration for Business Income Coverage begins 24 hours after the time of direct physical loss or damage, subject to all other provisions of the definition of "period of restoration"; and

(2) The 72-hour time period in the Civil Authority Additional Coverage is replaced by 24 hours. Therefore, coverage under the Additional Coverage – Civil Authority begins 24 hours after the time of action of civil authority, subject to all other provisions of that Additional Coverage; and

(3) The 72-hour time period in the Business Income From Dependent Properties Additional Coverage is replaced by 24 hours. Therefore, coverage under the Additional Coverage – Business Income From Dependent Properties begins 24 hours after the time of direct physical loss or damage, subject to all other provisions of that Additional Coverage.

## PART TWO amends SECTION II – LIABILITY of the BUSINESSOWNERS COVERAGE FORM

### BAIL BONDS

Section **A.1.f Coverage Extension – Supplementary Payments** Item **(1) (b)** is amended to read as follows:

Up to $1,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

## LIMITED EXCEPTION FOR A SHORT-TERM POLLUTION EVENT

Exclusion B.1.f. Pollution Items (1)(a) and (1)(d) are amended to include:

(iv) "Bodily injury" or "property damage" arising out of a "short-term pollution event" provided you notify us of the "short-term pollution event" as soon as practicable, but no more than fourteen (14) days after its ending.  However, failure to give notice within the time prescribed shall not invalidate any claim made by the insured or by any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.

The most we will pay is $25,000 for the sum of all such "bodily injury" or "property damage" arising out of a "short-term pollution event" occurring during each separate 12 month period of this policy.

Section F. Liability And Medical Expenses Definitions is amended to add the following:

"Short-term pollution event" means a discharge, dispersal, release or escape of "pollutants" which:

a. Begins during the policy period;

b. Begins at an identified time and place;

c. Ends, in its entirety, at an identified time within forty-eight (48) hours of the beginning of the discharge, dispersal, release or escape of the "pollutants";

d. Is not a repeat or resumption of a previous discharge, dispersal, release or escape of the same pollutant from essentially the same source within twelve (12) months of a previous discharge, dispersal, release or escape;

e. Does not originate from an "underground storage tank"; and

f. Is not heat, smoke or fumes from a "hostile fire".

To be a "short-term pollution event", the discharge, dispersal, release or escape of "pollutants" need not be continuous. However, if the discharge, dispersal, release or escape is not continuous, then all discharges, dispersals, releases or escapes of the same "pollutants" from essentially the same source, considered together, must satisfy Provisions a. through f. of this definition to be considered a "short-term pollution event".

"Underground storage tank" means any storage tank, including any attached pumps, valves or piping, buried below the surface of the ground or water, or which, at any time, had been buried under the surface of the ground or water and then subsequently exposed by any means. For the purposes of this definition, buried means that at least 10% of it is below the surface of the ground or water.

## DAMAGE TO PREMISES RENTED TO YOU

Item D. 3. Damage To Premises Rented To You Limit is amended to read as follows:

The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner, is $200,000. This is in addition to any other Damage To Premises Rented To You limit shown in the policy.

## BODILY INJURY REDEFINED

Section F. Liability And Medical Expenses Definitions Item 3. is amended to read as follows:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

**PART THREE of this endorsement applies only if the CONTRACTORS' INSTALLATION, TOOLS AND EQUIPMENT COVERAGE Form is part of this policy.**

## CONTRACTORS' INSTALLATION COVERAGE

The CONTRACTORS' INSTALLATION, TOOLS AND EQUIPMENT COVERAGE Form is amended as follows:

In addition to the Limits of Insurance shown in the Schedule for Coverage 1 - Contractors' Installation Coverage, the following is added:

The most we will pay for loss or damage to Covered Property under this Coverage is $15,000 for

(1) Property At Covered Job Sites;

(2) Property In Transit; or

(3) Property At A "Temporary Storage Location".

This is the most regardless of:

(1) The number of job sites you do not own, lease or operate; or

(2) The number of "temporary storage locations".

## CONTRACTORS' TOOLS AND EQUIPMENT

In addition to the Limits of Insurance shown in the Schedule for Coverage 2 - Contractors' Tools and Equipment Coverage, the following is added:

The most we will pay for loss or damage under this Coverage is $15,000, subject to a maximum of $3,000 for any one tool or piece of equipment unless a lower blanket per item sub-limit is shown on the Declarations for The Contractors' Installation, Tools And Equipment Coverage Form.

# EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT

This endorsement changes coverage provided by the Businessowners Coverage Form BP0003.  Read the entire endorsement carefully to determine rights, duties and what is and is not covered.

This endorsement provides coverage for the perils of mechanical, electrical and steam boiler explosion for "Equipment Breakdown" as defined.

## SECTION I – PROPERTY

### A. Coverage

The following Limitations are deleted:

#### 4. Limitations

a. We will not pay for loss of or damage to:

(1) Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

(2) Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

The following limit under **5. Additional Coverages, h.** has been changed to:

#### 5. Additional Coverages

h. Pollutant Clean-up and Removal

We will pay for the pollutant clean up and removal for loss resulting from an "Equipment Breakdown." The most we will pay for the pollutant clean up and removal is $250,000 unless a higher limit is provided by an endorsement to the property form for which this endorsement is attached.  In that case, whichever limit is greater will apply.

The following Coverage Extensions are added:

#### 6. Coverage Extensions

**Expediting Expense**

We will pay for the expediting expense loss resulting from an "Equipment Breakdown" with respect to your damaged Covered Property. We will pay the reasonable extra cost to:

(1) Make temporary repairs;

(2) Expedite permanent repairs; and

(3) Expedite permanent replacement.

Reasonable extra cost shall mean the extra cost of temporary repair and of expediting the repair of such damaged equipment of the insured, including overtime and the extra cost of express or other rapid means of transportation.  This payment may be adjusted for salvage expenses or recoveries.

**Refrigerant Contamination**

We will pay the loss from contamination by refrigerant used in refrigerating, cooling or humidity control equipment at the described premises as a result of "Equipment Breakdown."

The most we will pay for loss or damage under this coverage is $250,000 unless a higher limit is provided by an endorsement to the property form for which this endorsement is attached. In that case, whichever limit is greater will apply. This payment may be adjusted for salvage expenses and recoveries.

**Spoilage Coverage**

We will pay for loss of perishable goods due to spoilage resulting from lack of power, light, heat, steam or refrigeration caused by "Equipment Breakdown" to types of property covered by this policy, that are:

(1) located on or within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater,

(2) owned or used by you, the building owner at your described premises, or owned by a public utility; and

(3) used to supply telephone, electricity, air conditioning, heating, gas, water or steam to your described premises.

However, we will not pay for any loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss:

Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water, water damage, earth movement and flood.

The most we will pay for loss or damage under this coverage is $250,000 unless a higher limit is provided by an endorsement to the property form for which this endorsement is attached. In that case, whichever limit is greater will apply.

**CFC Refrigerants**

We will pay for the additional cost to repair or replace Covered Property because of the use or presence of a refrigerant containing CFC (chlorofluorocarbon) substances caused by an "Equipment Breakdown".

Additional costs mean those in excess of what would have been required to repair or replace covered property had no CFC refrigerant been involved. We also pay for additional loss as described under the Spoilage Coverages provided by this endorsement, caused by the presence of a refrigerant containing CFC substances.

We pay no more than the following:

(1) The cost to repair the damaged property and replace any lost CFC refrigerant;

(2) The cost to repair the damaged property, retrofit the system to accept a non-CFC refrigerant, and charge the system with a non-CFC refrigerant; or

(3) The cost to replace the system with one using a non-CFC refrigerant.

**Utility Interruption**

We will pay for loss of business income and extra expense from a total or partial interruption of business to run your business during the interruption resulting from an "Equipment Breakdown" to power or other utility service supplied to the described premises as follows:

(1) located on or within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater,

(2) owned by the building owner at your described premises, or owned by a public utility; and

(3) used to supply telephone, electricity, air conditioning, heating, gas, water or steam to your described premises.

But if failure of power or other utility service results in an "Equipment breakdown" to covered property, we will pay for the loss or damage caused by the "Equipment Breakdown."

However, we will not pay for any loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss:

Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water, water damage, earth movement and flood.

The most we will pay for loss or damage under this coverage is $25,000 unless a higher limit is provided by an endorsement to the property form for which this endorsement is attached. In that case, whichever limit is greater will apply.

**Computer Equipment**

We will pay for loss or damage to your Computers caused by an "Equipment Breakdown".

**Valuable Papers and Records**

We will pay for your reasonable and necessary cost to research, replace and restore lost information on electronic media and records as a result of an "Equipment Breakdown".

This will be part of and not an addition to the limits provided by the Valuable Papers and Records coverage under the property form to which this endorsement is attached.

**B. Exclusions**

The following Exclusions are deleted:

**2. a. Electrical Apparatus**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

(1) Electrical or electronic wire, device, appliance, system or network; or
(2) Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

(1) Electrical current, including arcing;
(2) Electrical charge produced or conducted by a magnetic or electromagnetic field;
(3) Pulse of electromagnetic energy; or
(4) Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by fire. We will pay for loss or damage to "computer(s)" due to artificially generated electrical, magnetic or electromagnetic energy if such loss or damage is caused by or results from:

(1) An occurrence that took place within 100 feet of the described premises; or
(2) Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

**2. d. Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**2. i. Other Types of Loss**

    (6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. This exclusion does not apply with respect to the breakdown of "computer(s)";

## F.  Property General Conditions

*The following Property General Conditions are added:*

### 5.  Suspension

Whenever "Equipment Breakdown" property is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss to that "Equipment Breakdown" property for the perils covered by this endorsement.  Coverage can be suspended and possibly reinstated by delivering or mailing a written notice of suspension / coverage reinstatement to:

(a) Your last known address; or
(b) The address where the property is located; or
(c) As otherwise required by applicable law concerning notification of suspension.

If we suspend your insurance, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

### 6.  Inspections and Surveys

    **a.**  We have the right to:

        (1) Make inspections and surveys at any time;
        (2) Give you reports on the conditions we find: and
        (3) Recommend changes.

    **b.**  We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.  We do not warrant that conditions:

        (1) Are safe or healthful; or
        (2) Comply with laws, regulations, codes or standards.

    **c.**  Paragraphs **a.** and **b.** *of this condition apply not only to us, but also to any rating,* advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

    **d.**  Paragraph **b.** of this condition does not apply to any inspections, surveys, reports, or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

### 7.  Environmental, Safety and Efficiency Improvements

If Covered Property requires repair or replacement due to an "Equipment Breakdown", we will pay your additional cost to replace with equipment that is better for the environment, safer, or more efficient than the equipment being replaced.

However, we will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality. This Condition does not apply to any property to which Actual Cash Value applies.

## G.  Optional Coverages

*The following Optional Coverages are changed:*

### 1.  Outdoor Signs

The following exclusion is removed.

    **c.** (5) Mechanical Breakdown

The provisions of this endorsement supercede the following optional coverage:

**4. Equipment Breakdown Protection Coverage**

H. Property Definitions

"Equipment Breakdown" as used herein means physical loss or damage, both originating within:

1. Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

    a. Waste disposal piping;
    b. Any piping forming part of a fire protective system;
    c. Furnaces; and
    d. Any water piping other than

        (1) Boiler feed water piping between the feed pump and the boiler;
        (2) Boiler condensate return piping; or
        (3) Water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes;

2. All mechanical, electrical, electronic or fiber optic equipment; and caused by, resulting from or consisting of:

    a. Mechanical breakdown; or
    b. Electrical or electronic breakdown; or
    c. Rupture, bursting, bulging, implosion, or steam explosion.

"Equipment Breakdown" does not mean:

Physical loss or damage caused by or resulting from any of the following. However, if loss or damage not otherwise excluded results, then we will pay for such resulting damage:

1. Wear and tear;

2. Rust or other corrosion, decay, deterioration, hidden or latent defect, mold or any other quality in property that causes it to damage or destroy itself;

3. Smog;

4. Settling, cracking, shrinking or expansion;

5. Nesting or infestation, or discharge or release of waste products or secretions, by birds, rodents or other animals;

6. Any accident, loss, damage, cost, claim, or expense, whether preventative, remedial, or otherwise, directly or indirectly arising out of or relating to the recognition, interpretation, calculation, comparison, differentiation, sequencing, or processing of data by any computer system including any hardware, programs or software.

7. The following causes of loss to personal property:

    a. dampness or dryness of atmosphere;
    b. marring or scratching.

8. Loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss:

    Fire, lightning, combustion explosion, windstorm, hail, weight of snow, ice or sleet, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water, water damage, earth movement or flood.



**BE Structural, PC**
500 N. Front Street, Wormleysburg, Pa. 17043
V: 717-737-1559, F: 717-737-1320
www.bestructural.com
info@bestructural.com

Primavera Properties
601 Poplar St. # E-20,
Sharon Hill, PA 19079

May 10th, 2016

Phone: 484-494-2682,  Email: isaac@primaveracommunities.com

Services for Property at: 1139 Mulberry St. Harrisburg, PA 17104

Present at Site Visit and Title:
 Blair C. Kitlinski, P.E, F. T. Kitlinski & Associates, INC.
 Hector Quintana, Supervisor of the McFarland apartment building
 Bruce Ensor, PE, SE, MLSE, BE Structural PC
 Nitin Bajracharya, EIT, BE Structural PC
 Brian Enterline, Fire Chief City of Harrisburg PA
 Arden Emerick, Assistant Codes of Administrator, City of Harrisburg PA

As requested, on 05/06/2016, BE Structural, PC [BEPC] performed a visual evaluation of the above referenced property.

The purpose of the site visit to the referenced property above was to perform a general structural assessment and evaluation of the subject property adjacent to the collapsed retaining wall that connects between the Mulberry St. Bridge and the McFarland apartment building.

We made visual observations of the above referenced property. Our observations were limited to the review of the as-built conditions of the existing structure and only what was readily available without demolition of finish materials or areas that were inaccessible.

For the purpose of this report, the front of the building faces Mulberry St., the left, right and rear are from the viewer's perspective standing on Mulberry St. looking at the front elevation. To facilitate an understanding of the problem and the location, we have attached photographs taken during our site visit. We may refer to some of these photographs in our report, however all photographs are being provided as a record of the conditions observed at the time of our visit. Two cameras were used during the site visit and referenced throughout the report by the notation "A" denoting camera A or "B" denoting camera B. Photographs are referenced throughout the report by the notation [Image XXA or Image XXB].



PLAINTIFF'S EXHIBIT
C
ALL-STATE LEGAL®



**BE Structural, PC**
500 N. Front Street, Wormleysburg, Pa. 17043
V: 717-737-1559 F: 717-737-1320
www.bestructural.com
info@bestructural.com

## Background

The referenced apartment is named as McFarland Apartments. The apartment consists of two building blocks connected by a structure consisting of stairs. There are a total of 59 apartments. Smaller of the two building block consists of 8 apartments on the right and 51 apartment building on the left when view standing from the Mulberry St.

The 8 apartment building block was vacated after the collapse of the retaining wall. The apartment was bought by the current owner 4 year ago.

The collapsed retaining wall connects the 8 apartment building and Mulberry St. Bridge. The space above the retaining wall serves as a parking space. The total width of the parking pavement remaining after the collapse is measured to be 48' from the parking lot curb to the edge of the remaining pavement.

## Findings [F] and Recommendations (R)

F1] We began our assessment by walking around the building from outside. We observed that the 8 apartment building was connected with the collapsed retaining wall through a slab of concrete as shown in Image 21(B) where the park bench sits on it. Slab of the concrete structure was damaged during the collapse of the retaining wall. Also, the damaged walls of the concrete of the slab when viewed from the Mulberry St. was observed to have cold joints due to the difference in placement of concrete batches. [Image 21B, Image 28B to Image 30B]

R1] The poured in concrete wall which attaches to the slab as referred in Image 21(B) is damaged and shall be supported temporarily or removed so that if the slab collapses it does not impart force onto the remaining wall of the building.

F2] When google map street views and 3D views from June 2011 was observed, a walking platform which extended beyond the retaining wall can be seen as shown in Image 3A. The walking platform was observed to have cracks in the walking slab and vegetation growing indicating maintenance issues. We were told that this walking platform was torn down previously before the retaining wall collapse. The exact date when the walking platform was torn down is unknown. We believe that this might have affected the structural dynamics of the retaining wall and potentially could be part of the reason of the collapse. [Image 1A to 3A Google Earth 2011]

F3] We observed cars being parked in the remaining intact portion of the parking lot of the collapsed retaining wall. [Image 15A, Image 16A]

R3] The parked cars shall be safely removed without imparting addition force to the failing retaining wall to prevent any property loss. It may be best to remove them toward the opposite side of the courtyard away from the failed retaining wall.



**BE Structural, PC**
500 N. Front Street, Wormleysburg, Pa. 17043
V: 717-737-1559, F: 717-737-1320
www.bestructural.com
info@bestructural.com

F4] The visible reinforcement in the collapsed retaining wall was observed to be less than expected based on the thickness of the wall. [Image 22B to Image 25B, Image 27B]

R4] The new retaining wall shall be provided with adequate reinforcements.

F5] To prevent water saturation on the remaining material and further collapse it is recommended that the remaining hill side in the area of the retaining wall failure be covered with a geo-fabric. Penn DOT left geo-fabric on site during the site visit but was not authorized to install this on the subject property. [Image 1B to Image 7B]

F6] The courtyard area adjacent to the connecting structure and in-between the two apartment buildings were found to have maintenance issues and observed with corroded girders and steel roof beams and leaking gutters and disconnected down spouts. The water being deposited into the courtyard through rain fall and as a result of gutters and downspouts being disconnected and not functional is causing water to flow behind the basement walls of the 8 unit apartment building and is causing staining and deterioration of the concrete walls and slab as the water seeks a lower elevation. [Image 51A, Image 34B to Image 36B, Image 114B]

R6] The corroded steel beams and girder shall be assessed for its serviceability and maintained with rust prohibiting paint or replaced as needed to keep this area safe and well maintained. The down spouts gutters shall be cleaned for any debris and maintained.

F7] Water was found to be leaking from the courtyard area to the basement of the 8 apartment building and to the adjacent structure that attaches to the foundation wall of the 8 apartment building. [Image 113B, Image 115B, Image 89B, Image 150B to Image 151B]

R7] The water shall be prevented into the basement and foundation by proper maintenance of the courtyard area and channeling water away from the building structure in the courtyard area.

F8] Stair step cracks were observed in the wall that is attached with the stair in the basement below the first floor garage. The width of the cracks were observed to be as wide as 1". [Image 43B, Image 44B, Image 104B to Image 109B]

R9] The stair step cracks indicate horizontal movement and differential vertical settlement of the structure. The cracks shall be routed and caulked at the least and additional repair may be warranted as a result of further investigation and analysis of the existing conditions.

F9] Towards the front of the basement, the Concrete encasement in the Steel beams were found to be rotted and falling off exposing the Structural steel beam to elements. Similar condition was found in the slab where due to falling concrete steel bars were found to be exposed. [Image 45 to Image 46B, Image 53B, Image 23A]



**BE Structural, PC**
500 N. Front Street, Wormleysburg, Pa. 17043
V: 717-737-1559 F: 717-737-1320
www.bestructural.com
info@bestructural.com

R9] The exposed steel shall be inspected for corrosion and section loss and potentially reinforced and encased in concrete. Water or moisture infiltration causing the concrete to rot shall be prevented.

F10] The Steel beams in the rear of the basement, were found to be corroded from the water infiltration which appears to be sitting on a masonry pier. It could be sitting on the steel column but it was not visually seen. The left basement wall was found to have water infiltration believed to be from the courtyard area above and is allowing water to flow into the basement which relieves the water pressure in the walls but is causing staining and deterioration of the concrete walls. [Image 89B to Image 96B]

R10] See R7.

F11] The wood framed stair case landing leading to the sub-basement from basement was found to be unsafe and not connected properly to the supporting brick masonry walls. [Image 17A to Image 20A]

R11] The landing shall be reinforced or removed and replaced as needed to allow safe access to the sub-basement.

F12] Cracks in the masonry pilaster were observed. The pilaster was located near the stair that leads to the sub-basement from the basement floor. [Image 18A, Image 19A]

R12] Pilaster walls shall be repointed and repaired.

F13] In the front right corner, Stair steps cracks were observed in the sub-basement wall. The largest crack was measured to be as wide as 1.5". [Image 6A to Image 13A, Image 80B to Image 85B]

R13] This portion of the wall shall be repaired and sections may need removed and rebuilt. Proper shoring shall be provided during the process. Additional effort would be required to recommend the most economical and structurally acceptable repair solution.

F14] Bed rock was found in the uphill side of the basement and some of the foundation walls were observed to have been built around the bed rock. [Image 57B]

F15] Sediment on the floor indicates water infiltration in the sub-basement. Water could enter the sub-basement from the broken windows during rain and/or through the leaking water from courtyard area and/or the water pipes in the sub-basement. The fire sprinkler in the building is drained periodically onto the floor of the sub-basement and may be contributing to the subsidence and compaction of the soils below the slab. [Image 73B, Image 74B]



**BE Structural, PC**
500 N. Front Street, Wormleysburg, Pa. 17043
V: 717-737-1559, F: 717-737-1320
www.bestructural.com
info@bestructural.com

R15] See R7. The broken windows shall be sealed to prevent water inside the sub-basement and the water pipes in the sub-basement be checked for leakage. The water from the fire sprinkler system shall be drained to a plumbing drain and not left to flow freely onto the floor and further undermine the concrete slab on grade which was observed to have voids below it.

F16] Cracking in the sub-basement slab and hole in the slab was observed towards the rear of the sub-basement. The overall slab was found to be uneven and settled mostly towards the rear right of the sub-basement. The soils beneath the slab might have settled and/ or washed away due to water infiltration causing the slab to settle and crack. The thickness of slab was found to be thin than expected and unreinforced with no attachment with the foundation walls providing no diaphragm restraint. [Image 67B, Image 69B, Image 86B]

R16] The slab in the sub-basement shall be replaced with reinforced concrete slab 6" thick for diaphragm restraint. This reinforcement would act to restrain the top of the foundation wall so that continued serviceability can be maintained. There was some horizontal separation observed between the wall and the slab, however it is believed they were not mechanically connected and were placed separately at the time of construction.

F17] As discussed in F7, the right wall that attaches to or part of the foundation wall of the 8 apartment building was found to have water infiltration. The water is thought to be due to the seepage of water from the courtyard area. We were unable to establish the extent of damage to these walls as no clear access were available to this structure. [Image 148B to 151B]

R17] See R7.

F18] The second and third floor of the 8 building apartments were vacated after the collapse of the retaining wall. We observed some apartments for damage due to the collapse. No damage due to the collapse were observed however, in Apartment 223, one of the room was observed to have water accumulation in the ceiling and signs of water stains in and around the vent. [Image 129B to 131B]

F19] Image 143B and Image 144B show the remaining structure at the connection of the walkway to the collapsed retaining wall.

R19] This work will eventually need to be removed and shall be temporarily shored to protect the apartment building from potential damage from additional failures related to the loss of the retaining wall and movement of the soils that are currently restrained by the walls at the front side of the sub-basement that looked to be a former stairwell.



**BE Structural, PC**
500 N. Front Street, Wormleysburg, Pa. 17043
V: 717-737-1559 F: 717-737-1320
www.bestructural.com
info@bestructural.com

F20] 145B is the rock formation of the hillside adjacent to Howard Tire which is along Cameron Street on the right side of the McFarland Apartments. This rock formation is indicative of the geology that potentially supports the McFarland Apartments.

F21] 146B to 155B are taken of the building that is to the right side of the Apartments on the downhill side. The interior of the building was not accessible and the wall in images 148B to 155B looks to be intact, the far end of the building is where the car sits that slide down from the parking lot above and collapsed the roof.

R21] This structure and the structure of the McFarland Apartment building are thought to be integral in their construction and it shall not be demolished until a final determination of the McFarland superstructure is completed and their interdependencies determined.

F22] The exterior 4" brick wall may be resting on top of the structure adjacent to the foundation wall of the 8 apartment building. [Image 158B to 161B]

R22] see R21

**Conclusions:**

Based on the information obtained from the owner and our visual observation of the existing structure from the outside and inside of the building, we find that the 8 unit apartment building to be safe for accommodation if shoring is installed per our recommendations and foundation wall repair is initiated.

The building was observed to have some deficiencies which have existed prior to the retaining wall collapse. The walls in the lowest accessible level, referred to as the sub-basement, and also the floor above, referred to as the basement, were observed to have stair step cracks in the brick masonry walls of the right front corner closest to where the retaining wall connected to the building. This cracking indicates differential settlement of the brick structure at some time in the past.

Water is a contributing factor in foundation and retaining wall failures. Water is often responsible for structural deficiency and weakening of foundation supports. The unknown variables such as future weather conditions (heavy rains), flooding and further collapse could make this structure un-safe if the recommended precautions are not adhered to.



**BE Structural, PC**
500 N. Front Street, Wormleysburg, Pa. 17043
V: 717-737-1559, F: 717-737-1320
www.bestructural.com
info@bestructural.com

BEPC cannot predict future weather events that have the capacity to further affect the structure. BEPC recommends that a geotechnical engineer be consulted relative to the stability of the onsite soils as well as remediation methods relative to slope stability.

BEPC can provide additional engineering and design support for a new retaining wall in conjunction with a Geotechnical Engineer and provide solutions to remediation and repair of the superstructure of the McFarland Apartment Building.

BEPC is not an Environmental Specialist and the life and safety issues that arise from secondary effects of water such as mold, fouling or other organic growth as a result of water infiltration need to be addressed by relevant expertise.

We consider the superstructure of the building to be safe for occupancy. The building shall be monitored for further movement or cracks especially if construction work is to take place.

A detailed precondition survey is recommended prior to additional construction or repairs contemplated.

Please let us know if we can be of further service to you.

BE Structural, P.C.

Bruce Carroll Ensor

1139 Mulberry St Harrisburg PA 17104
05/09/2016

# PHOTOGRAPHS
# CAMERA A

**BE Structural PC**
500 North Front Street ● Wormleysburg, PA 17043 ● 717-737-1559 ● info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 1:



Image 2:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 3:



Image 4:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 5:



image 6:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 7:



Image 8:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 9:



Image 10:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 11:



Image 12:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 13:



Image 14:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 15:



Image 16:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 17:



Image 18:



1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 19:



Image 20:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 21:



Image 22:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 23:



Image 24:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 25:



Image 26:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 27:



Image 28:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 29:



Image 30:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 31:



Image 32:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 33:



Image 34:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 35:



Image 36:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 37:



Image 38:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 39:



Image 40:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 41:



Image 42:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 43:



Image 44:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 45:



Image 46:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 47:



Image 48:

BE Structural PC
500 North Front Street  •  Wormleysburg, PA 17043  •  717-737-1559  •  info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 49:



Image 50:

BE Structural PC
500 North Front Street • Wormleysburg, PA 17043 • 717-737-1559 • info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 51:



Image 52:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 53:



Image 54:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 55:



Image 56:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 57:



Image 58:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 59:



Image 60:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 61:



Image 62:

1139 Mulberry St Harrisburg PA 17104
05/09/2016



Image 63:

BE Structural PC
500 North Front Street • Wormleysburg, PA 17043 • 717-737-1559 • info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016

# PHOTOGRAPHS
## CAMERA B

**BE Structural PC**
500 North Front Street ● Wormleysburg, PA 17043 ● 717-737-1559 ● info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 1:



Image 2:

BE Structural PC
500 North Front Street  •  Wormleysburg, PA 17043  •  717-737-1559  •  info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 3:



Image 4:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 5:



Image 6:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 7:



Image 8:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 9:



Image 10:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 11:



Image 12:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 13:



Image 14:

BE Structural PC
500 North Front Street ● Wormleysburg, PA 17043 ● 717-737-1559 ● info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 15:



Image 16:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 17:



Image 18:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 19:



Image 20:

BE Structural PC
500 North Front Street  •  Wormleysburg, PA 17043  •  717-737-1559  •  info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 21:



Image 22:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 23:



Image 24:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 25:



Image 26:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 27:



Image 28:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 29:



Image 30:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 31:



Image 32:

BE Structural PC
500 North Front Street • Wormleysburg, PA 17043 • 717-737-1559 • info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 33:



Image 34:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 35:



Image 36:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 37:



Image 38:

BE Structural PC
500 North Front Street ● Wormleysburg, PA 17043 ● 717-737-1559 ● info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 39:



Image 40:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 41:



Image 42:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 43:



Image 44:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 45:



Image 46:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 47:



Image 48:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 49:



Image 50:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 51:



Image 52:

BE Structural PC
500 North Front Street • Wormleysburg, PA 17043 • 717-737-1559 • info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 53:



Image 54:

BE Structural PC
500 North Front Street • Wormleysburg, PA 17043 • 717-737-1559 • info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 55:



Image 56:

BE Structural PC
500 North Front Street • Wormleysburg, PA 17043 • 717-737-1559 • info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 57:



Image 58:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 59:



Image 60:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 61:



Image 62:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 63:



Image 64:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



image 65:



Image 66:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 67:



Image 68:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 69:



Image 70:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 71:



Image 72:

BE Structural PC
500 North Front Street  •  Wormleysburg, PA 17043  •  717-737-1559  •  info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 73:



Image 74:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 75:



Image 76:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 77:



Image 78:

BE Structural PC
500 North Front Street  •  Wormleysburg, PA 17043  •  717-737-1559  •  info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 79:



Image 80:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 81:



Image 82:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 83:



Image 84:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 85:



Image 86:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 87:



Image 88:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 89:



Image 90:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 91:



Image 92:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 93:



Image 94:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 95:



Image 96:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 97:



Image 98:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 99:



Image 100:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 101:



Image 102:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 103:



Image 104:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 105:



Image 106:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 107:



Image 108:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 109:



Image 110:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 111:



Image 112:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 113:



Image 114:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 115:



Image 116:

BE Structural PC
500 North Front Street  •  Wormleysburg, PA 17043  •  717-737-1559  •  info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 117:



Image 118:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 119:



Image 120:

BE Structural PC
500 North Front Street • Wormleysburg, PA 17043 • 717-737-1559 • info@bestructural.com



1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 121:



Image 122:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 123:



Image 124:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 125:



Image 126:

BE Structural PC
500 North Front Street • Wormleysburg, PA 17043 • 717-737-1559 • info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 127:



Image 128:

BE Structural PC
500 North Front Street • Wormleysburg, PA 17043 • 717-737-1559 • info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 129:



Image 130:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 131:



Image 132:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 133:



Image 134:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 135:



Image 136:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 137:



Image 138:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 139:



Image 140:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 141:



Image 142:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 143:



Image 144:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 145:



Image 146:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 147:



Image 148:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 149:



Image 150:



Image 151:



Image 152:







Image 153:



Image 154:

BE Structural PC
500 North Front Street • Wormleysburg, PA 17043 • 717-737-1559 • info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 155:



Image 156:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 157:



Image 158:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 159:



Image 160:

BE Structural PC
500 North Front Street • Wormleysburg, PA 17043 • 717-737-1559 • info@bestructural.com

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 161:



Image 162:

1139 Mulberry St Harrisburg PA 17104
05/06/2016



Image 163:

THOMAS, THOMAS & HAFER LLP
Attorneys At Law

Street Address:
305 North Front Street, Harrisburg, PA 17101
Mailing Address:
P.O. Box 999, Harrisburg, PA 17108
Phone: 717.237.7100 Fax: 717.237.7105

*Peter J. Speaker*
*(717) 255-7644*
*pspeaker@tthlaw.com*

January 18, 2018

By FedEx, Fax (732-363-6441) &
Email (isaac@primaveracommunities.com &
jacob@primaveracommunities.com)

Jacob Friedman
Isaac Dohany
Spring Village Apartments, LLC
212 Second Street, Suite 305
Lakewood, NJ  08701

          Re:    Howard and Monique Henry, etc. v. McFarland, LP, et al.
                 No. 2017 CV 1940 CV, Court of Common Pleas of Dauphin County, PA
                 Date of Loss:  5/5/16

Dear Mr. Friedman and Mr. Dohany:

       As you know, I represent Firstline National Insurance Company.

       This will supplement my prior communications with Charles Bixenspanner, John Chrzanowski and you, including but not limited to my letter of April 5, 2017, regarding the Civil Action filed in the Court of Common Pleas of Dauphin County at No. 2017 CV 1940CV.

       It has come to our attention that Spring Village Apartments, LLC, and both of you have been named as Defendants or Additional Defendants in that action. It is our understanding that you are the authorized representatives of Spring Village Apartments, LLC. Although, to the best of my knowledge, there has been no request by Spring Village Apartments, LLC, as such, or by you, for liability coverage, Firstline is authorizing Andrew Benedict, Esquire, pursuant to Firstline Policy Number 8159577, to undertake the defense of Spring Village Apartments, LLC, and you.

       Furthermore, to the extent that Firstline reserved its rights to deny or limit liability coverage for McFarland, LP, and Primavera Properties based on the fact that they are not "Named Insureds" in the policy, that specific reservation is hereby withdrawn, solely for purposes of the liability coverage for the civil action at No. 2017 CV 1940CV. In addition, each of you will be treated as Named Insureds for purposes of liability coverage. In short, McFarland, LP, Primavera Properties, Spring Village Apartments, LLC, Jacob Friedman and Isaac Dohany all will be treated as Named Insureds for purposes of liability coverage, and will

www.tthlaw.com

PENNSYLVANIA        MARYLAND        NEW JERSEY        WASHINGTON, DC



PLAINTIFF'S
EXHIBIT

D

**THOMAS, THOMAS & HAFER** LLP
Page 2

be provided with liability coverage, for the Civil Action filed in the Court of Common Pleas of Dauphin County at No. 2017 CV 1940CV, subject to the following limitations and exclusions.

As I indicated in my letter of April 5, 2017, the Policy limit potentially applicable to the civil action is $1,000,000. Therefore, you should be sure to put all excess and umbrella insurers on notice.

The Policy also provides, with respect to coverage for liability claims, in part as follows:

BUSINESSOWNERS
BP 00 03 07 13

### BUSINESSOWNERS COVERAGE FORM

\* \* \* \* \*

Throughout this Coverage Form, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

In Section II – Liability, the word "insured" means any person or organization qualifying as such under Paragraph C. Who Is An Insured.

\* \* \* \* \*

### SECTION II – LIABILITY

**A. Coverages**

    **1. Business Liability**

        **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" . . . to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

            **(1)** The amount we will pay for damages is limited as described in Paragraph D. Liability And Medical Expenses Limits Of Insurance in Section II – Liability; and

**THOMAS, THOMAS & HAFER** LLP
Page 3

    (2)    Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph f. Coverage Extension – Supplementary Payments.

\* \* \* \* \*

**f.**    **Coverage Extension – Supplementary Payments**

    (1)    We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

\* \* \* \* \*

    (e)    All court costs taxed against the insured in the "suit." However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

    (f)    Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    (g)    All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in the court the part of the judgment that is within our Limit of Insurance.

\* \* \* \* \*

**B.**    **Exclusions**

**1.**    **Applicable To Business Liability Coverage**

This insurance does not apply to:

    (a)    **Expected Or Intended Injury**

**THOMAS, THOMAS & HAFER** LLP
Page 4

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

\* \* \* \* \*

k.   **Damage To Property**

"Property damage" to:

(1)   Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2)   Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3)   Property loaned to you;

(4)   Personal property in the care, custody or control of the insured;

(5)   That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6)   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \* \* \*

D.   **Liability And Medical Expenses Limits Of Insurance**

1.   The Limits of Insurance of Section II – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a.   Insureds;

**THOMAS, THOMAS & HAFER** LLP
Page 5

    **b.**    Claims made or "suits" brought; or

    **c.**    Persons or organizations making claims or bringing "suits".

**2.**    The most we will pay for the sum of all damages because of all:

    **a.**    "Bodily Injury", "property damage" and medical expenses arising out of any one "occurrence" . . . .

\* \* \* \* \*

Is the Liability and Medical Expenses limit shown in the Declarations.

\* \* \* \* \*

**E.**    **Liability And Medical Expenses General Conditions**

\* \* \* \* \*

**2.**    **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

\* \* \* \* \*

    **c.**    You and any other involved insured must:

        **(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)**    Authorize us to obtain records and other information;

        **(3)**    Cooperate with us in the investigation or settlement of the claim or defense against the "suit" . . . .

\* \* \* \* \*

**F.**    **Liability And Medical Expenses Definitions**

\* \* \* \* \*

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \* \* \*

**17.**    "Property damage" means:

**THOMAS, THOMAS & HAFER** LLP
Page 6

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * * * *

22.    "Your work":

    a.    Means:

        (1)    Work or operations performed by you or on your behalf; and

        (2)    Materials, parts or equipment furnished in connection with such work or operations.

    b.    Includes:

        (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        (2)    The providing of or failure to provide warnings or instructions.

* * * * *

**SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II – LIABILITY)**

* * * * *

C.    **Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

1.    This policy;

2.    The Covered Property;

## THOMAS, THOMAS & HAFER LLP

Page 7

  3.   Your interest in the Covered Property; or

  4.   A claim under this policy.

<p style="text-align:center">* * * * *</p>

**F.   Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

<p style="text-align:center">* * * * *</p>

**H.   Other Insurance**

<p style="text-align:center">* * * * *</p>

  2.   Business Liability Coverage is excess over:

     a.   Any other insurance that insures for direct physical loss or damage; or

     b.   Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured.

<p style="text-align:center">* * * * *</p>

  3.   When this insurance is excess, we will have no duty to defend any claim or "suit" that any other insurer has a duty to defend . . . .

The form quoted above may be modified by other forms, which will be the subject of further consideration and discussion if appropriate.

In regard to Section II – Liability Coverages, of course there is no coverage for damage to property that is owned, rented or occupied by an insured, as indicated above.

There is no coverage for damages in excess of the single occurrence limit of $1,000,000. Also, there is no coverage at all for liability for damages that do not qualify as property damage. Firstline reserves the right to deny or limit coverage to the extent that there is liability for trespass, injunctive relief, punitive or exemplary damages, loss of business goodwill, incidental and consequential losses and anything else that does not qualify under the Policy definition of property damage. Furthermore, coverage is excluded for property damage expected or intended from the standpoint of the insured.

**THOMAS, THOMAS & HAFER** LLP
Page 8

The Policy is void in any case of fraud as it relates to the Policy at any time. It is also void if any insured, at any time, intentionally conceals or misrepresents a material fact concerning: the Policy; the covered property; interest in the covered property; or a claim under the Policy.

The provisions relating to other insurance may come into play. Please provide me with copies of all insurances, bonds, policies, forms, certificates, documents and records that concern or relate to any and all other insurance or coverage that may apply in any way to McFarland, LP, Primavera Properties, Spring Village Apartments, LLC, Jacob Friedman and/or Isaac Dohany the premises in question, and/or any person or entity involved in any way with the property, premises or occurrence. Please include all acknowledgements, denials, and/or reservations of rights, with respect to all insurance and bonds, as well as all memoranda, emails, correspondence and other communications. Please put all insurers and sureties on notice of the suit immediately.

Firstline is agreeing to provide this liability coverage in connection with the above-referenced civil action without waiving its rights to otherwise deny or limit coverage in other matters and claims, related or not. Specifically, nothing in this or any other communication by or on behalf of Firstline should be taken as a waiver of any of its rights under the policy and applicable law with respect to other coverages under the policy.

Please contact me if you have any questions or comments.

Very truly yours,

THOMAS, THOMAS & HAFER, LLP

Peter J. Speaker

Cc: Andrew R. Benedict

| | | | |
|---|---|---|---|
| **Instrument #:** | 200941152 | **Book:** | |
| **Recorded Date:** | DEC 9, 2009 | **Page:** | |
| | 02:13:11 PM | **Total Pages:** | 4 |
| **Instrument Type:** | SATISFACTION PIECE | **Parcel Numbers:** | 40090533008C |
| **County:** | CUMBERLAND | | |
| **Municipality:** | SOUTH MIDDLETON TOWNSHIP | | |
| **Recording Status:** | VERIFIED | | |
| **Notes:** | | | |

**MORTGAGOR**
PENNDEL LAND CO

**MORTGAGEE**
OTTO,RALPH ESTATE

| | | | |
|---|---|---|---|
| **Instrument #:** | 200835024 | **Book:** | |
| **Recorded Date:** | OCT 27, 2008 | **Page:** | |
| | 09:22:09 AM | **Total Pages:** | 6 |
| **Instrument Type:** | RELEASE OF MORTGAGE | **Parcel Numbers:** | 40090533136 |
| **County:** | CUMBERLAND | | |
| **Municipality:** | SOUTH MIDDLETON TOWNSHIP | | |
| **Recording Status:** | VERIFIED | | |
| **Notes:** | LOT 2 PL #200813739 | | |

**MORTGAGOR**                                              **MORTGAGEE**

JEWELS REALESTATE LTD PARTNERSHIP OF PA   OTTO,RALPH EXOR



**THOMAS, THOMAS & HAFER** LLP
*Attorneys At Law*

Street Address:
305 North Front Street, Harrisburg, PA 17101
Mailing Address:
P.O. Box 999, Harrisburg, PA 17108
Phone: 717.237.7100 Fax 717.237.7105

Peter J. Speaker
(717) 255-7644
pspeaker@tthlaw.com

January 24, 2017

By FedEx,
Fax (732-363-6441) &
Email (isaac@primaveracommunities.com &
jacob@primaveracommunities.com)

Jacob Friedman & Isaac Dohany
Spring Village Apartments, LLC
212 Second Street, Suite 305
Lakewood, NJ 18701

> Re:  1139 Mulberry St. (Premises 17, Building 1)
> Firstline Policy No. 8159577
> Date of Loss:  5/5/16

Dear Gentlemen:

As you know, we represent Firstline National Insurance Company in regard to claims arising from the incident that occurred at or near the above location on or about May 5, 2016.

We understand that one or both of you have been designated as the representative(s) for Spring Village Apartments, LLC, and/or "The McFarland LP," and that those entities are making a claim for damage to the land and parking lot at the above premises. Unfortunately, it appears that there is no coverage under the Firstline Policy for such claim.

"SPRING VILLAGE APARTMENTS, LLC," is the Named Insured shown in the Declarations in Firstline's Policy No. 8159577 (the "Policy"), which was in effect on the date of the loss. Spring Village Apartments, LLC, is identified as a "Limited Liability Company" in the Declarations. There are no other named insureds. 1139 MULBERRY ST., HARRISBURG, PA 17104 is identified as "PREMISES 17, BUILDING 1."



PLAINTIFF'S
EXHIBIT
E

www.tthlaw.com

PENNSYLVANIA            MARYLAND            NEW JERSEY

**THOMAS, THOMAS & HAFER** LLP
Page 2

The Policy provides in part as follows:

## BUSINESSOWNERS COVERAGE FORM

\* \* \* \*

Throughout this Coverage Form, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

\* \* \* \* \*

### SECTION I – PROPERTY

A.   **Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1.   **Covered Property**

Covered Property includes Buildings as described under Paragraph a. below, . . .

\* \* \* \* \*

a.   Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

\* \* \* \* \*

(2)   Fixtures, including outdoor fixtures;

\* \* \* \* \*

2.   **Property Not Covered**

Covered Property does not include:

a.   Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

\* \* \* \* \*

**THOMAS, THOMAS & HAFER** LLP
Page 3

    **d.**    Land (including land on which the property is located), . . .

                   \*   \*   \*   \*   \*

    **e.**    Outdoor fences, . . .

                   \*   \*   \*   \*   \*

**3.**    **Covered Causes of Loss**

Direct physical loss unless the loss is excluded or limited under Section I – Property.

                   \*   \*   \*   \*   \*

**5.**    **Additional Coverages**

**a.**    **Debris Removal**

    **(1)**    Subject to Paragraphs (2), (3) and (4), we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

    **(2)**    Debris Removal does not apply to costs to:

        **(a)**    Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

        **(b)**    Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

        **(c)**    Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

        **(d)**    Remove property of others of a type that would not be Covered Property under this policy;

**THOMAS, THOMAS & HAFER** LLP
Page 4

    (e)    Remove deposits of mud or earth from the grounds of the described premises;

             \*   \*   \*   \*   \*

d.    **Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in Paragraphs d.(1) through d.(7).

(1)    For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

(2)    We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

    (a)    Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

             \*   \*   \*   \*   \*

    (c)    Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

    (d)    Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

        (i)    A cause of loss listed in Paragraph (2)(a) or (2)(b);

        (ii)    One or more of the "specified causes of loss";

        (iii)    Breakage of building glass;

**THOMAS, THOMAS & HAFER** LLP
Page 5

    (iv) Weight of people or personal property; or

    (v) Weight of rain that collects on a roof.

 (3) This Additional Coverage – Collapse does not apply to:

   (a) A building or any part of a building that is in danger of falling down or caving in;

   (b) A part of a building that is standing, even if it has separated from another part of the building; or

   (c) A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

 (4) With respect to the following property:

    * * * * *

   (g) Retaining walls; and

   (h) Walks, roadways and other paved surfaces;

  If an abrupt collapse is caused by a cause of loss listed in Paragraphs (2)(a) through (2)(d), we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

 (5) If personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

   (a) The collapse of personal property was caused by a cause of loss listed in Paragraphs (2)(a) through (2)(d) of this Additional Coverage;

**THOMAS, THOMAS & HAFER** LLP
Page 6

    **(b)**    The personal property which collapses is inside a building; and

    **(c)**    The property which collapses is not of a kind listed in Paragraph **(4)**, regardless of whether that kind of property is considered to be personal property or real property.

**(8)**    The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**.

* * * * *

**B.**    **Exclusions**

**1.**    We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributed concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

    **a. Ordinance or Law**

    **(1)**    The enforcement of or compliance with any ordinance or law:

    **(a)**    Regulating the construction, use or repair of any property; or

    **(b)**    Requiring the tearing down of any property, including the cost of removing its debris.

    **(2)**    This exclusion, Ordinance Or Law, applies whether the loss results from:

    **(a)**    An ordinance or law that is enforced even if the property has not been damaged; or

    (b)    The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

**THOMAS, THOMAS & HAFER** LLP

b.   **Earth Movement**

    (1)   Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such an event;

    (2)   Landslide, including any earth sinking, rising or shifting related to such event;

    \* \* \* \* \*

    (4)   Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

    \* \* \* \* \*

This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused.

c.   **Governmental Action**

Seizure or destruction of property by order of governmental authority.

    \* \* \* \* \*

g.   **Water**

    (1)   Flood, surface water, waves . . . whether or not driven by wind (including storm surge);

    (2)   Mudslide or mudflow;

    \* \* \* \* \*

    (4)   Water under the ground surface pressing on, or flowing or seeping through:

        (a)   Foundations, walls, floors or paved surfaces;

**THOMAS, THOMAS & HAFER** LLP
Page 8

      **(b)**    Basements, whether paved or not; or

      **(c)**    Doors, windows or other openings; or

**(5)**    Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

    This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. . . .

         *   *   *   *   *

**2.**    We will not pay for loss or damage caused by or resulting from any of the following:

         *   *   *   *   *

**b.**    **Consequential Losses**

    Delay, loss of use or loss of market.

         *   *   *   *   *

**i.**    **Collapse**

**(1)**    Collapse, including any of the following conditions of property or any part of the property:

    **(a)**    An abrupt falling down or caving in;

    **(b)**    Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

    **(c)**    Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition related to Paragraph **i.(1)(a)** or **i.(1)(b)**.

         *   *   *   *   *

**(2)**    This exclusion **i.** does not apply:

**THOMAS, THOMAS & HAFER** LLP
Page 9

    (a)    To the extent that coverage is provided under the Additional Coverage – Collapse; or

    (b)    To collapse caused by one or more of the following:

        (i)    The "specified causes of loss";

        (ii)    Breakage of building glass;

        (iii)    Weight of rain that collects on a roof; or

        (iv)    Weight of people or personal property.

        \*   \*   \*   \*   \*

**k.**    **Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**l.**    **Other Types of Loss**

    (1)    Wear and tear;

    (2)    Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

        \*   \*   \*   \*   \*

    (4)    Settling, cracking, shrinking or expansion;

        \*   \*   \*   \*

**p.**    **Continuous Or Repeated Seepage Or Leakage Of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**3.**    We will not pay for loss or damage caused by or resulting from any of the following Paragraphs a. through c. But if an excluded cause of loss that is listed in Paragraphs a. through c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**THOMAS, THOMAS & HAFER** LLP
Page 10

    a.    **Weather Conditions**

        Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **B.1.** above to produce the loss or damage.

    b.    **Acts or Decisions**

        Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

    c.    **Negligent Work**

        Faulty, inadequate or defective:

        (1)    Planning, zoning, development, surveying, siting;

        (2)    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        (3)    Materials used in repair, construction, renovation or remodeling; or

        (4)    Maintenance;

        Of part or all of any property on or off the described premises.

            * * * * *

**E.**    **Property Loss Conditions**

            * * * * *

    **3.**    **Duties In The Event Of Loss Or Damage**

        a.    You must see that the following are done in the event of loss or damage to Covered Property:

            * * * * *

        (4)    Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the

**THOMAS, THOMAS & HAFER** LLP
Page 11

claim. This will not increase the Limits of Insurance of Section I – Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. . . .

\* \* \* \* \*

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

\* \* \* \* \*

(8) Cooperate with us in the investigation or settlement of the claim.

\* \* \* \* \*

b. We may examine any insured under oath . . . about any matter relating to this insurance or the claim, including an insured's books and records. . . .

c. We will not pay you more than your financial interest in the Covered Property.

\* \* \* \* \*

H. **Property Definitions**

\* \* \* \* \*

12. "Specified causes of loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. . . .

\* \* \* \* \*

## THOMAS, THOMAS & HAFER LLP
Page 12

Firstline reserves all its rights under the law and pursuant to all the provisions, terms and conditions of the Policy, without limitation, including but not limited to, the foregoing provisions and the following.

As you know, this loss occurred on or about May 5, 2016, when there was a massive landslide at the premises, involving the movement of large amounts of land, earth and pavement from the area of the parking lot downhill and westward onto adjacent and nearby properties, also involving the failure of a wall (the "bridge wall") that had been located on or near the border of the properties. It is our understanding that you deny ownership of the bridge wall itself.

Aside from the fact that "The McFarland LP" is not an insured, there are several reasons why the claim is not covered.

Land is not covered property. Coverage for loss caused directly or indirectly by earth movement, including but not limited to landslide and earth shifting, is excluded, regardless of other causes, and regardless of whether it is caused by an act of nature or otherwise.

Furthermore, there has been no claim of damage to or collapse of a building in connection with the loss. There is no coverage for a building that is not actually, abruptly collapsed. There is no coverage for collapse of retaining walls, roadways and other paved surfaces, except perhaps in circumstances where it is caused by certain listed causes of loss and only if it is as a direct result of the abrupt collapse of a building, which has not occurred. There is no coverage for removal of debris resulting from an excluded or non-covered loss. Furthermore, in any event, there is no coverage for debris removal expenses that were not reported in writing to Firstline within 180 days of the direct physical loss or damage.

Land, outdoor fences and automobiles are specifically not covered.

It appears that there may have been multiple factors contributing to the loss. We understand that the bridge wall was constructed many years ago by the government in connection with the construction of the Mulberry Street Bridge. At some point, the area on your side of the wall was filled in with massive amounts of earth and material, and eventually paved over, without proper design and construction, including suitable fill, compaction, drainage, retention, shoring and support features. There was a failure to maintain and repair the area, including the land, surface, parking lot, and the bridge wall itself, further increasing water infiltration and weakening support. Settling, shifting, subsurface water, hydrostatic pressure, freezing, thawing, expansion, contraction, deficient design, combined with lack of maintenance, further weakened or burdened support. The activities of PennDot in adding more water and disturbing the land and bridge wall may have contributed. The volume of rain preceding the loss may have contributed.

In addition to the above, a number of exclusions are applicable, including those for faulty, inadequate or defective design, repair, construction, specification, workmanship, renovation, grading, compaction, materials and maintenance with respect to the parking lot, ground, retention thereof, and the bridge wall, as well as exclusions for water, hydrostatic

**THOMAS, THOMAS & HAFER** LLP
Page 13

pressure, earth movement, settling and deterioration. In addition, coverage is excluded specifically for any loss caused in any part by water under the ground surface pressing on, or flowing or seeping through walls, foundations, or paved surfaces. Coverage also is excluded for damage caused by mudslide or mud flow, neglect, wear and tear, weather conditions, and failure to act. Coverage is excluded specifically for earth movement, landslide, earth sinking, rising or shifting, including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Such soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface. Also, there are exclusions for loss caused by or resulting from settling, cracking, shrinking, expansion and weather conditions.

In addition, there is an exclusion for acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

Also, you have not complied with your duties to cooperate with us in our investigation, including appearance for examination under oath. We have given you ample opportunity to appear and to provide pertinent information and materials. The failure to cooperate may have impeded completion of a thorough investigation, but we do not believe we can reasonably be expected to wait longer. Therefore, we are proceeding on the assumption that you have no further information to offer that would alter our position on this claim. You have represented that you have produced all requested materials within your possession or control. Of course, if that is not accurate, then that would violate duties under the policy as well. In any event, such material breaches constitute additional bases for denial.

If you believe that there is any relevant information that we have not considered, then please let me know so that we can do so.

Firstline reserves its rights to enforce all provisions, terms and conditions of the Policy and under the law, whether quoted or discussed here or not.

Nothing in this or any other communication with or conduct by any representative of Firstline National Insurance Company or anyone else should be construed as a waiver of any of Firstline's rights under the law or any of the Policy provisions, terms and conditions, which are reserved.

Very truly yours,

THOMAS, THOMAS & HAFER, LLP

Peter J. Speaker

Tony Canuso Jr.

| | |
|---|---|
| From: | Jerry Throne |
| Sent: | Tuesday, February 10, 2015 3:52 PM |
| To: | 'Leach, Benjamin'; Deiter, Michael |
| Cc: | Rautzahn, Jeremy L; Tony Canuso Jr.; Nick Foerst; Jones, Joshua P; Mertz, Heidi A |
| Subject: | Mulberry St. Bridge - Revised Negotiated Price Cost Justification - Removal of Concrete Overhang |
| Attachments: | CS-4347CJ Concrete Overhang Demo 2.10.15.pdf |

Ben:

Attached for your review is our revised Negotiated Price Cost Justification as requested for Removal of the Concrete Overhang located on the south side of the East Abutment, adjacent to the Howard Tire property.

The price includes protecting the existing adjacent Howard Tire building roof with 1" thick foam backer sheets and ¾" plywood, installing and removing scaffolding on the roof and in the space between the building and the Mulberry St. Bridge and includes installing a grillage beam under the legs of the scaffolding on the roof to distribute the load to the Howard Tire Co. concrete roof structure.

The price is based upon the scaffolding being installed and removed by Safway Services, LLC in accordance with their Quotation #2628 dated 7/16/14 (copy attached) and Safeway being accepted by the Department as a Service By Others (SBO).

The price includes PE sealed scaffolding drawings, PE sealed demolition plan and PE certification that the installation was installed in accordance with the approved plans.

The price is based upon all work being completed within a 1 month rental period.

The removal of the concrete overhang includes saw cutting the slab and top portion of the concrete brackets, a maximum depth of 8", adjacent to an existing longitudinal crack, and removing all concrete and railing from that point outward. Prior to beginning any removal work, a scaffold will be erected at the south end of the overhang to allow temporary stabilization of an existing crack in the end of the wall to be performed, by installing six (6) steel plates and anchor rods with epoxy adhesive (see attached.) **No engineering will be performed on the temporary stabilization.** Removal of concrete which fell onto the roof of the Howard Tire building from the overhang, is included; the removal of no other debris on the roof is included.

Please review and advise if this price is acceptable or if there are any questions that you may have regarding this proposal.

Very truly yours,

Jerry Throne
Chief Estimator



Neshaminy Constructors, Inc.
Direct Dial 267 988-2438
Fax 215 322-0603
Cell 215 962-4770

1



PLAINTIFF'S EXHIBIT
F
ALL STATE LEGAL

Email jerry.throne@nci3.com

**From:** Leach, Benjamin [mailto:BLeach@trcsolutions.com]
**Sent:** Tuesday, January 27, 2015 6:27 AM
**To:** Jerry Throne; Deiter, Michael
**Cc:** Rautzahn, Jeremy L; Tony Canuso Jr.; Nick Foerst; Jones, Joshua P; Mertz, Heidi A
**Subject:** Re: Mulberry St. Bridge - Negotiated Price Cost Justification - Removal of Concrete Overhang

Jerry,

Yes that is correct

Ben

**From:** Jerry Throne <Jerry.Throne@nci3.com>
**Sent:** Monday, January 26, 2015 5:46 PM
**To:** Leach, Benjamin; Deiter, Michael
**Cc:** Rautzahn, Jeremy L; Tony Canuso Jr.; Nick Foerst; Jones, Joshua P; Mertz, Heidi A
**Subject:** RE: Mulberry St. Bridge - Negotiated Price Cost Justification - Removal of Concrete Overhang

Ben:

I'd just like to confirm what it is that you'd like me to add to the scope of work which I previously submitted.

- Stamped and sealed falsework plans?
- Stamped and sealed detailed demolition procedure?
- Falsework certification by a PE?

Thx,

Jerry Throne
Chief Estimator



# NESHAMINY
## CONSTRUCTORS, INC.

Neshaminy Constructors, Inc.
Direct Dial 267 988-2438
Fax 215 322-0603
Cell 215 962-4770
Email jerry.throne@nci3.com

**From:** Leach, Benjamin [mailto:BLeach@trcsolutions.com]
**Sent:** Friday, January 23, 2015 7:15 AM
**To:** Jerry Throne; Deiter, Michael
**Cc:** Rautzahn, Jeremy L; Tony Canuso Jr.; Nick Foerst; Jones, Joshua P; Mertz, Heidi A
**Subject:** Re: Mulberry St. Bridge - Negotiated Price Cost Justification - Removal of Concrete Overhang

Jerry,

2

NCI 000949

Please provide the department your detailed procedure which should include all calculations and signed off by a PE.

Thank you
Ben

**From:** Jerry Throne <Jerry.Throne@nci3.com>
**Sent:** Friday, July 25, 2014 11:21 AM
**To:** Leach, Benjamin; mdelter@pa.gov
**Cc:** Rautzahn, Jeremy L (jrautzahn@pa.gov); Tony Canuso Jr.; Nick Foerst
**Subject:** Mulberry St. Bridge - Negotiated Price Cost Justification - Removal of Concrete Overhang

Mike/Ben:

Attached is our Negotiated Price Cost Justification as requested for Removal of the Concrete Overhang located on the south side of the East Abutment, adjacent to the Howard Tire property.

The price includes protecting the existing adjacent Howard Tire building roof with 1" thick foam backer sheets and ¾" plywood, installing and removing scaffolding on the roof and in the space between the building and the Mulberry St. Bridge and includes installing a grillage beam under the legs of the scaffolding on the roof to distribute the load to the Howard Tire Co. concrete roof structure.

The price is based upon the scaffolding being installed and removed by Safway Services, LLC in accordance with their Quotation #2628 dated 7/16/14 (copy attached) and Safway being accepted by the Department as a Service By Others (SBO).

The price does not include PE seal or PE certification, which if required, will be additional.

The price is based upon all work being completed within a 1 month rental period.

The removal of the concrete overhang includes saw cutting the slab and top portion of the concrete brackets, a maximum depth of 8", adjacent to an existing longitudinal crack, and removing all concrete and railing from that point outward. Prior to beginning any removal work, a scaffold will be erected at the south end of the overhang to allow temporary stabilization of an existing crack in the end of the wall to be performed, by installing six (6) steel plates and anchor rods with epoxy adhesive (see attached.) No engineering has been performed on the temporary stabilization. Removal of concrete which fell onto the roof of the Howard Tire building from the overhang, is included; the removal of no other debris on the roof is included.

Please review and advise if this price is acceptable or if there are any questions that you may have regarding this proposal.

Very truly yours,

Jerry Throne
Chief Estimator



**NESHAMINY CONSTRUCTORS, INC.**
Neshaminy Constructors, Inc.
Direct Dial 267 988-2438
Fax 215 322-0603
Cell 215 962-4770

3

NCI 000950

Email jerry.throne@nci3.com

NCI 000951



2017 MAY -2  AM 10: 52

DAUPHIN COUNTY
PENNA

# IN THE COURT OF COMMON PLEAS OF
## DAUPHIN COUNTY, PENNSYLVANIA

Howard and Monique Henry
335 Hemlock Lane
Etters, Pennsylvania 17319

and

Howard Tire & Auto, Inc.
205 South Cameron Street
Harrisburg, Pennsylvania

Plaintiffs,

v.

McFarland, LP
1139 Mulberry Street
Harrisburg, Pennsylvania

and

Primavera Properties
601 Poplar Street
Unit E-20
Sharon Hill, Pennsylvania  19079

and

Neshaminy Constructors, Inc.
1839 Bustleton Pike
Feasterville, Pennsylvania

and

: JANUARY TERM,
: NO. 2017 CV 1940 CV



PLAINTIFF'S
EXHIBIT

G

ALL-STATE LEGAL®

TRC Companies
650 Suffolk Street
Lowell, Massachusetts 01854

                Defendants. :



## N O T I C E

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within Twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

DAUPHIN COUNTY LAWYER REFERRAL SERVICE
213 North Front Street
Harrisburg, PA 17101
(717) 232-7536

## NOTICE
### CONCERNING MEDIATION OF ACTIONS PENDING BEFORE THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY

The Judges of the Court of Common Pleas of Dauphin County believe that mediation of lawsuits is a very important component of dispute resolution. Virtually all lawsuits can benefit in some manner from mediation.

The Court has adopted Dauphin County Local Rule 1001 to encourage the use of mediation. This early alert enables litigants to determine the best time during the life of their lawsuit for a mediation session. The intent of this early alert is to help the parties act upon the requirement to consider good faith mediation at the optimal time.

The Dauphin County Bar Association provides mediation services and can be reached at 717-232-7536. Free mediation sessions for pro bono cases referred by MidPenn Legal Services are available through the DCBA.

## AVISO

USTED HA SIDO DEMANDADO/A EN CORTE. Si usted desea defenderse de las demandas que se presentan más adelante en las siguientes páginas, debe tomar acción dentro de los próximos veinte (20) días después de la notificación de esta Demanda y Aviso radicando personal mente o por medio de un abogado una
comparecencia escrita y radicando en la Corte por escrito sus defensas de, y objecciones a, las demandas presentadas aquí en contra suya. Se le advierte de que si usted falla de tomar acción como se de scribe anteriormente, el caso puede proceder sin usted y un falio por cualquier suma de dinero reclamada en la demanda o cualquier otra reclamación o remedio solicitado por el demandante puede ser dictado en contra suya por la Corte sin más aviso adicional. Usted puede perder dinero o propiedad u otros derechos importantes para usted.

USTED DEBE LLEVAR ESTE DO CUMENTO A SU ABOGADO INMEDIATAMENTE.
SI USTED NO TIENE UN ABOGADO, LLAME
O VAYA A LA SIGUIENTE OFICINA. ESTA OFICINA PUEDE PROVEERLE
INFORMACION A CERCA DE COMO CONSEGUIR UN ABOGADO.
SI USTED NO PUEDE PAGAR POR LOS SERVICIOS DE UN ABOGADO, ES
POSIBLE QUE ESTA OFICINA LE PUEDA PROVEER INFORMACION SOBRE
AGENCIAS QUE OFREZCAN SERVICIOS LEGALES SIN CARGO O BAJO COSTO A
PERSONAS QUE CUALIFICAN.

DAUPHIN COUNTY LAWYER
REFERRAL SERVICE
213 North Front Street
Harrisburg, PA 17101
(717) 232-7536

## AVISO
## REFERENCES A LA MEDIACIÓN DE LAS ACCIONES PENDIENTES ANTES LA CORTE DE SOPLICAS COMUNES DEL CONDADO DE DAUPHIN

Los jueces de la corte de súplicas comunes del condado de Dauphin creen que la mediación de pleitos es un componente muy importante de la resolución del conflicto. Virtualmente todos los pleitos pueden beneficiar de cierta manera de la mediación.

La code ha adoptado la regla local de condado de Dauphin 1001 para animar el use de la mediación. Esta alarma temprana permite a litigantes determiner la mejor época

durante la vida de su pleito para una sesión de la mediación. El intento de esta alarma temprana es actuar sobre la mediación de la buena fe en el tiempo óptimo.

La asociación de la barra del condado de Dauphin proporciona servicios de la mediación y se puede alcanzar en 717-232-7536. La session libre de la mediación para los favorables casos del bono se refinio por MidPenn que los servicios juridicos están disponibles con el DCBA.

**WHITE AND WILLIAMS LLP**
BY:   Christopher Konzelmann
Identification No(s). 58927
1650 Market Street | One Liberty Place, Suite 1800 |
Philadelphia, PA 19103-7395
215.864.6334
konzelmannc@whiteandwilliams.com
Counsel for Plaintiffs

**Mark G. Wendaur IV, Esq.**
Attorney - Wendaur Law, LLC
Identification No(s).  320739
112 Market St., 6th Floor
Harrisburg, PA 17101
Office: 717.461.3349
Cell: 412.316.6144
mwendaur@wendaur.com
Counsel for Plaintiffs

| | |
|---|---|
| Howard and Monique Henry<br>335 Hemlock Lane<br>Etters, Pennsylvania 17319 | DAUPHIN COUNTY<br>COURT OF COMMON PLEAS |
| and | JANUARY TERM,<br>NO. 2017 CV 1940 CV |
| Howard Tire & Auto, Inc.<br>205 South Cameron Street<br>Harrisburg, Pennsylvania<br><div align=right>Plaintiffs,</div> | |
| v. | |
| McFarland, LP<br>601 Poplar Street<br>Apartment  E-20<br>Sharon Hill, Pennsylvania 19079 | |
| and | |
| Primavera Properties<br>601 Poplar Street<br>Apartment E-20<br>Sharon Hill, Pennsylvania  19079 | |
| and | |

18881310v.1

Neshaminy Constructors, Inc.
1839 Bustleton Pike
Feasterville, Pennsylvania

and

TRC Companies, Inc.
650 Suffolk Street
Lowell, Massachusetts 01854

                       Defendants.

        2017 MAY -2   AM 10: 53

## FIRST AMENDED COMPLAINT WITH JURY DEMAND

Plaintiffs, by way of complaint against the defendants, aver as follow:

### PARTIES

1.  Howard and Monique Henry are adult individuals who at all relevant times resided at 335 Hemlock Lane, Etters, Pennsylvania.

2.  Plaintiff Howard Tire & Auto, Inc. is a Pennsylvania corporation that at all relevant times owned and operated an automobile repair business at 205 and 235 South Cameron Street, Harrisburg, Pennsylvania.

3.  Defendant McFarland LP [McFarland] transacts business in the Commonwealth of Pennsylvania and at all relevant times maintained offices at 601 Poplar Street, Apartment E-20 Sharon Hill, Pennsylvania.  McFarland owns the property at 1139 Mulberry Street, Harrisburg, Pennsylvania.  The property includes a parking lot, fill material under the parking lot, and a 40 foot 107 year old retaining wall that supported the parking lot and fill material [the "Retaining Wall"].

4.  Defendant Primavera Properties LLC [Primavera] transacts business in the Commonwealth of Pennsylvania and at all relevant times maintained offices 601 Poplar Street, Apartment E-20, Sharon Hill, Pennsylvania.

-2-

18881310v.1

5. Defendant Neshaminy Constructors, Inc. [Neshaminy] transacts business in the Commonwealth of Pennsylvania and at all relevant times maintained offices at 1839 Bustleton Pike, Feasterville, Pennsylvania.

6. Defendant TRC Companies, Inc. [TRC] transacts business in the Commonwealth of Pennsylvania and at all relevant times maintained offices at 650 Suffolk Street, Lowell, Massachusetts.

## FACTS

7. The McFarland Press Building is located at 1139 Mulberry Street, Harrisburg, Pennsylvania.

8. The Mulberry Street Bridge is adjacent to the McFarland Press Building. South Cameron Street runs under the bridge.

9. The McFarland Press Building was converted into 59 apartments, in two separate buildings, in or around 1998. Building 1 consisted of 51 apartments. Building 2, adjacent to 201 and 203 South Cameron Street, consisted of 8 apartments.

-3-



**Site Overview**

10. The apartment conversion work included backfilling the space behind the Retaining Wall to construct a parking lot.

11. The Retaining Wall was not designed to withstand the lateral load of the fill matter, asphalt, and cars that would be parked on the asphalt.

12. There was a walkway above the Retaining Wall.



**Google Maps Image (September 2009)**

13. Howard and Monique Henry purchased 201 and 203 South Cameron Street along with 205 and 235 South Cameron Street in or around 2008.

14. Howard and Monique Henry utilized the building at 201 and 203 South Cameron Street as a warehouse.  Howard Tire and Auto, Inc. utilized 205 and 235 South Cameron Street for an automobile repair facility.

15. The Retaining Wall under the parking lot was deteriorated, cracked, and structurally unsound in June 2011.



**Google Maps Image (June 2011)**

-5-

16. Defendant McFarland purchased the McFarland Press complex in May 2012. The purchase included the parking lot and the deteriorated, cracked, and structurally unsound Retaining Wall.

17. The Pennsylvania Department of Transportation awarded a contract to defendant Neshaminy to rehabilitate the Mulberry Street Bridge in or around January 2014. Phase 1 included replacement of the bridge deck and the removal and replacement of the sidewalk, parapet, drainage system, and deck joints. Phase 2 included repairs to the underside of the bridge.

18. PennDOT hired defendant TRC to act as construction manager and construction inspector for the rehabilitation project. TRC had wide ranging project responsibilities:

TRC has been responsible for a variety of construction management services that have included such preconstruction tasks as reviews of special provisions and plans, field views to validate proper item #s and specials, and attendance at design meetings. TRC staff also created a construction schedule which replaced the designer's construction schedule. During construction, such CM responsibilities were expanded to include, among other duties: Administration of the construction contract; Coordination with affected agencies and groups; Scheduling and hosting bi-weekly progress meetings, and other specialty meetings as needed; Evaluating and monitoring the project schedule; Reviewing, tracking and monitoring all RFIs, inquiries, and contractor plans; Evaluating, defining, and negotiating extra and changes to contract work; and implementation of a project documentation control system.

**Project Information From TRC Website**

19. TRC assigned several people to the project:

Once construction commenced in the spring of 2014, TRC assigned a full-time construction inspection staff consisting of an Inspection Manager, two Construction Inspectors and a Trainee to provide inspection of the following work:

**Project Information From TRC Website**

20. The bridge rehabilitation project began in the Spring of 2014.

21. During the project, a section of the walkway above the Retaining Wall fell on the building adjacent to the Henry warehouse.

18881310v.1



**Partial Collapse Debris**

22. The failure of a section of the walkway above the Retaining Wall put all defendants on further notice that the Retaining Wall was deteriorated, cracked, and structurally unsound.

23. McFarland LP representative Jacob Friedman granted PennDOT access to the Retaining Wall to effectuate repairs. Neshaminy installed scaffolding and performed work on the Retaining Wall in October 2015.

18881310v.1



**Scaffolding Under Retaining Wall Walkway**

24. The Neshaminy scaffolding was in close proximity to large cracks in the Retaining Wall.



**Wall Cracks With Attempted Stabilization**

25. Neshaminy and TRC had actual notice that there were large cracks in the retaining wall.

-8-

26. Neshaminy and TRC knew or should have known that the large cracks in the Retaining Wall created an imminent catastrophic collapse hazard.

27. PennDOT authorized Neshaminy to perform work on the Retaining Wall which included attempts to stabilize some or all of the cracks through the installation of metal plates.



**Wall Cracks With Attempted Stabilization**

-9-



**Wall Cracks With Attempted Stabilization**

The metal plates were woefully inadequate to stabilize the wall and protect it from collapse.

28.  Neshaminy removed a portion of the walkway above the Retaining Wall during the course of the bridge rehabilitation project using jackhammers and other construction equipment that caused excessive vibration.

29. Neshaminy's use of jackhammers and other construction equipment during the walkway removal process caused vibration which further weakened the already deteriorated, cracked, and structurally unsound Retaining Wall.

30. The Retaining Wall catastrophically failed on May 5, 2016.

31. The Retaining Wall, the fill material behind the retaining wall, the parking lot asphalt, and a car parked on the asphalt fell on the Henry warehouse and caused significant

-10-

damage to the building.  The collapse also significantly impacted the operation of Howard Tire & Auto, Inc.

32. Public officials evacuated the eight unit McFarland apartment building following the Retaining Wall collapse fearing a second collapse.

33. Primavera Properties for itself, and on behalf of McFarland, retained Engineer Bruce Carroll Ensor from BE Structural, PC to inspect the McFarland eight unit apartment building.

34. Engineer Ensor prepared a May 10, 2016 report noting significant concerns with the apartment building and recommending immediate remedial measures.  A true and correct copy of the report is attached as Exhibit A.  Neither Primavera nor McFarland authorized the work.

35. The McFarland eight unit apartment building, and the collapsed Retaining Wall, posed a significant life and property safety risk to the Henry buildings.

36. Neshaminy, or its insurer, retained Engineer James McLoughlin from Building Enclosure Science to inspect the properties.  McLoughlin went to the site on May 27, 2016 and sent a June 3, 2016 letter to Harrisburg Assistant Codes Administrator Arden Emerick advising of significant safety concerns with the McFarland eight unit apartment building, the collapsed Retaining Wall, and the Henry buildings. A true and correct copy of the report is attached as Exhibit B.

37. Significant rain impacted Harrisburg on the days leading up to June 25, 2016. The rain caused further instability in the McFarland eight unit apartment building and the collapsed Retaining Wall.  The enhanced instability created an even greater life and property safety risk to the Henry buildings.

-11-

38. On or about June 25, 2016, a second collapse event occurred, causing further damage to the Henry building.

39. Harrisburg condemned the McFarland eight unit apartment building along with the Henry building on or about June 25, 2016.

40. Howard Henry hired Engineer Robert R. Desmarais, Jr. to inspect his property. Desmarais prepared an October 5, 2016 report expressing significant safety concerns with the McFarland eight unit apartment building and the Henry buildings below. Desmarais recommended that the plaintiffs discontinue use of their buildings until appropriate remedial action was taken. A true and correct copy of the report is attached as Exhibit C.

41. The Henrys were forced to vacate their buildings as a result of the defendants' actions and/or inactions. Howard Tire & Auto, Inc. was forced to cease operations resulting in significant financial losses.

42. The defendants' actions and/or inactions caused or will cause in the future the plaintiffs to suffer the following non-exclusive categories of losses: (a) building repair costs; (b) building diminution in value; (c) business personal property repair costs; (d) business personal property diminution in value; (e) lost rental income; (f) lost business revenue; (g) loss of business good will, and (h) other incidental and consequential losses.

## COUNT ONE – PLAINTIFF v. MCFARLAND LP
### NEGLIGENCE

43. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if set forth at length.

44. McFarland owned The Retaining Wall, the parking lot, and the ground beneath the parking lot from the time it purchased the site until the time of the collapses that impacted the Henry properties.

-12-

18881310v.1

45. McFarland owned the eight unit apartment building adjacent to the Henry properties.

46. McFarland owed a duty to the plaintiffs to maintain the Retaining Wall, the parking lot, the ground beneath the parking lot, and the eight unit apartment building adjacent to the Henry properties in a safe condition.

47. McFarland breached its duty to the plaintiffs in one or more of the following ways:

a.   failing to take fair and reasonable steps to ensure that its property, including the Retaining Wall and parking lot, were structurally sound at the time of purchase;

b.   failing to take fair and reasonable steps to ensure that its property, including the Retaining Wall and parking lot, were structurally sound following the purchase.

c.   failing to proactively and periodically inspect its property, including the Retaining Wall and parking lot, for dangerous conditions;

d.   failing to properly maintain its property, including the Retaining Wall and parking lot;

e.   failing to repair the Retaining Wall which showed obvious signs of deterioration and cracking well before the collapse;

f.   failing to take fair and reasonable steps to ensure that the Retaining Wall was not compromised by others;

g.   failing to properly train its employees and property managers;

h.   failing to take steps after the May 5, 2016 collapse to prevent further damage to the Henry buildings;

i.   failing to act on the recommendations of Engineer Bruce Carroll Ensor following the May 5,

-13-

> 2016 collapse which would have prevented the additional damage caused by the June 25, 2016 collapse;
>
> j. failing to advise its employees and property manager of the need to periodically inspect the Retaining Wall for dangerous conditions;
>
> k. failing to authorize its employees and property manager to periodically have the Retaining Wall inspected by outside vendors;
>
> l. failing to advise public officials of the unsafe condition of the Retaining Wall before the collapse; and
>
> m. failing to adopt, enact, employ, and enforce proper and adequate safety programs, precautions, procedures, measures, and plans with respect to the Retaining Wall.

48. McFarland's breach of duty was a direct and proximate cause of the Retaining Wall collapse and the resulting damage to the plaintiffs.

WHEREFORE, plaintiffs request that the court enter judgment against the defendants for damages in an amount that exceeds the jurisdictional amount requiring arbitration referral by local rule together with delay damages, and costs.

## COUNT TWO – PLAINTIFF v. PRIMAVERA PROPERTIES
## NEGLIGENCE

49. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if set forth at length.

50. Primavera managed the McFarland property including the eight unit apartment building, parking lot, and Retaining Wall.

51. Primavera owed a duty to the plaintiffs to exercise due and reasonable care while managing the property.

-14-

52. Primavera breached the duty owed to the plaintiffs in one or more of the following ways:

a.   failing to periodically inspect the property, including the Retaining Wall and parking lot, for dangerous conditions;

b.   failing to take fair and reasonable steps to ensure that the property it was hired to manage was safe and structurally sound;

c.   failing to properly maintain the property, including the Retaining Wall and parking lot;

d.   failing to ensure that the Retaining Wall, which showed obvious signs of deterioration and cracking, was repaired well before the collapse;

e.   failing to take fair and reasonable steps to ensure that the Retaining Wall was not compromised by others;

f.   failing to properly train its employees;

g.   failing to take steps after the May 5, 2016 collapse to prevent further damage to the Henry buildings;

h.   failing to act on the recommendations of Engineer Bruce Carroll Ensor following the May 5, 2016 collapse which would have prevented the additional damage caused by the June 25, 2016 collapse;

i.   failing to advise its employees of the need to periodically inspect the Retaining Wall and parking lot for dangerous conditions;

j.   failing to authorize its employees to periodically have the Retaining Wall and parking lot inspected by outside vendors;

l.   failing to advise public officials of the unsafe condition of the Retaining Wall and parking lot; and

m.   failing to adopt, enact, employ, and enforce proper and adequate safety programs, precautions,

-15-

procedures, measures, and plans with respect to the Retaining Wall.

53. Primavera's breach of duty was a direct and proximate cause of the Retaining Wall collapse and the resulting damages to the plaintiffs.

WHEREFORE, plaintiffs request that the court enter judgment against the defendants for damages in an amount that exceeds the jurisdictional amount requiring arbitration referral by local rule together with delay damages, and costs.

## COUNT THREE – PLAINTIFFS v. NESHAMINY CONSTRUCTORS, INC. NEGLIGENCE

54. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if set forth at length.

55. PennDOT hired Neshaminy to rehabilitate the Mulberry Street Bridge.

56. Neshaminy performed work on the Retaining Wall in addition to the Mulberry Street Bridge.

57. Neshaminy owed a duty to plaintiffs to exercise due and reasonable care during the course of its work.

58. Neshaminy breached the duty owed to the plaintiffs in one or more of the following ways:

        a.     failing to perform its work in a safe manner;

        b.     failing to adequately inspect the areas surrounding the bridge, such as the Retaining Wall, for hazardous conditions before starting the project to ensure that the work would not adversely impact the Henry buildings;

        c.     failing to adequately plan, plot, perform, and supervise its work;

        d.     failing to properly train its employees;

-16-

e.  failing to properly train and instruct the employees of its subcontractors;

f.  failing to hire competent employees, inspectors, and subcontractors;

g.  failing to adopt, enact, employee, and enforce proper and adequate safety programs, cautions, procedures, measures, and plans to protect the safety and property of others, including the Henrys;

h.  failing to perform or furnish its construction services in conformity with the standard of care in the construction industry at the time the services were supplied and furnished;

i.  performing and furnishing construction services in a wholly inadequate and negligent manner;

j.  failing to realize and appreciate that the company and its subcontractors were working in close proximity to a deteriorated and structurally unsound retaining wall that would be adversely impacted by the construction activities;

k.  failing to protect the Retaining Wall from further damage during the construction project;

l.  using jackhammers and/or other construction equipment on the walkway which caused vibration and further weakened the Retaining Wall;

m.  improperly repairing the Retaining Wall and the area surrounding the wall; and

n.  failing to understand, appreciate, and act upon the fact that the Retaining Wall was deteriorated, cracked, and structurally unsound.

59. Neshaminy's breach of duty was a direct and proximate cause of the Retaining Wall collapse and the resulting damage to the plaintiffs.

-17-

18881310v.1

WHEREFORE, plaintiffs request that the court enter judgment against the defendants for damages in an amount that exceeds the jurisdictional amount requiring arbitration referral by local rule together with delay damages, and costs.

## COUNT FOUR – PLAINTIFFS v. TRC COMPANIES
### NEGLIGENCE

60. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if set forth at length.

61. PennDot hired TRC to, among other things, act as construction manager and construction inspector for the bridge rehabilitation project.

62. TRC owed a duty to plaintiffs to exercise due and reasonable care during the course of its undertaking.

63. TRC breached its duty in one or more of the following ways:

     a.    failing to perform its undertaking in a safe manner;

     b.    failing to adequately inspect the areas surrounding the bridge, such as the Retaining Wall, for hazardous conditions before the project started to ensure that the work would not adversely impact the Henry buildings;

     c.    failing to adequately plan, plot, and supervise the work;

     d.    failing to properly train its employees;

     e.    failing to hire competent employees and inspectors;

     f.    failing to adopt, enact, employ, and enforce proper and adequate safety programs, cautions, procedures, measures, and plans to protect the safety and property of others, including the Henrys;

     g.    failing to perform or furnish its services in conformity with the standard of care in the

-18-

industry at the time the services were supplied and furnished;

h.    performing and furnishing its services in a wholly inadequate and negligent manner;

i.    failing to realize and appreciate that the contractors were working in close proximity to a deteriorated and structurally unsound Retaining Wall that would be adversely impacted by the construction activities;

j.    failing to ensure the wall was protected from further damage during the construction project;

k.    allowing the use of jackhammers and other construction equipment on the Retaining Wall which caused vibration and further weakened the structure;

l.    failing to understand, appreciate, and act upon the fact that the Retaining Wall was deteriorated, cracked, and structurally unsound; and

m.    failing to report the dangerous condition of the retaining wall to others, including the appropriate Harrisburg officials.

64. TRC's breach of duty was a direct and proximate cause of the retaining wall collapse and resulting damages to the plaintiffs.

WHEREFORE, plaintiffs request that the court enter judgment against the defendants for damages in an amount that exceeds the jurisdictional amount requiring arbitration referral by local rule together with delay damages, and costs.

## COUNT FIVE – PLAINTIFFS v. McFARLAND LP
## TRESPASS

65. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if set forth at length.

-19-

18881310v.1

66. McFarland has failed and refused to take any steps to remove the debris they allowed to enter Plaintiffs' property.

67. McFarland has failed and refused to take any steps to prevent storm water runoff from flowing down the debris and entering Plaintiffs' property.

68. McFarland's inaction deprives Plaintiffs of the use of their property.

69. McFarland's inaction caused Plaintiffs to suffer a diminution in value of their property.

70. Plaintiffs are entitled to consequential damages as a result of this inaction.

WHEREFORE, plaintiffs request that the court enter judgment against the defendants for damages in an amount that exceeds the jurisdictional amount requiring arbitration referral by local rule together with delay damages, and costs.

## COUNT SIX – PLAINTIFFS v. McFARLAND LP
## INJUNCTIVE RELIEF

71. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if set forth at length.

72. McFarland has failed and refused to take any steps to remove the debris on Plaintiffs' property.

73. McFarland has failed and refused to take any steps to prevent storm water runoff from entering Plaintiffs' property.

74. McFarland has failed and refused to take any steps to secure and stabilize the Retaining Wall and other portions of their property that threaten Plaintiffs' property.

75. Plaintiffs continue to suffer immediate and irreparable harm from the lost use of their business facility in the following ways:

      a.     Loss of customers (both present and future);

-20-

18881310v.1

b.    Aging inventory that cannot be returned or sold;

c.    Loss of good will;

d.    Continuing property damage from water entering
      the property; and

e.    Continuing property damage from vandals and other
      unauthorized third parties entering the premises.

76. Plaintiffs seek equitable relief to enjoin McFarland and direct them to begin cleanup of the debris.

77. Plaintiffs have no adequate remedy at law to restrain McFarland from further interfering with the use and quiet enjoyment of Plaintiffs' property.

78. An injunction will properly restore the *status quo* as it existed before McFarland allowed the debris to enter and trespass onto Plaintiffs' property.

79. The issuance of an injunction will pose no harm to McFarland because this action must be taken to restore McFarland's own property.

80. The issuance of an injunction is for the benefit of the public's health, safety, or welfare.

WHEREFORE, Plaintiffs request that the court enter judgment directing McFarland to: (a) To begin cleanup of the debris currently on Plaintiffs' property; (b) take action to secure the collapse site and prevent third parties from entering; and (c) Take action to prevent storm water runoff from entering Plaintiffs' property and causing more damage.

## JURY TRIAL DEMAND

Plaintiffs respectfully request a jury for all issues presented in this matter.

-21-

18881310v.1

WHITE AND WILLIAMS LLP

BY: _____

Christopher Konzelmann, Esquire
Attorney for Plaintiff


Wendaur Law, LLC

BY: _____

Mark G. Wendaur IV, Esquire
Attorney for Plaintiff


Dated: April 25, 2017

18881310v.1

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Amended Complaint was served by first class United States mail, postage prepaid, upon the following counsel of record for McFarland, LP, Inc., this 1st day of May, 2017.

Andrew R. Benedict, Esq.
Weber Gallagher
2000 Market Street, Suite 1300
Philadelphia, PA 19103

Mark G. Wendaur IV

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Amended Complaint was served by first class United States mail, postage prepaid, upon the following counsel of record for TRC Companies, Inc., this 1ˢᵗ day of May, 2017.

William E. Schaefer, Esq.
Hendrzak & Lloyd
3701 Corporate Parkway, Suite 100
Center Valley, PA 18034

Mark G. Wendaur IV

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Amended Complaint was served by first class United States mail, postage prepaid, upon the following counsel of record for Neshaminy Constructors, Inc., this 1st day of May, 2017.

Andrew J. Connolly, Esq.
Matthew D. Johnson, Esq.
Post & Schell, P.C.
Four Penn Center, 13th Floor
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103-2808

Mark G. Wendaur IV

# EXHIBIT A

15706158v.1



**BE Structural, PC**
500 N. Front Street, Wormleysburg, Pa. 17043
V: 717-737-1559, F: 717-737-1320
www.bestructural.com
info@bestructural.com

Primavera Properties
601 Poplar St. # E-20,
Sharon Hill, PA 19079

May 10th, 2016

Phone: 484-494-2682,   Email: isaac@primaveracommunities.com

**Services for Property at: 1139 Mulberry St. Harrisburg, PA 17104**

Present at Site Visit and Title:
Blair C. Kitlinski, P.E, F. T. Kitlinski & Associates, INC.
Hector Quintana, Supervisor of the McFarland apartment building
Bruce Ensor, PE, SE, MLSE, BE Structural PC
Nitin Bajracharya, EIT, BE Structural PC
Brian Enterline, Fire Chief City of Harrisburg PA
Arden Emerick, Assistant Codes of Administrator, City of Harrisburg PA

As requested, on 05/06/2016, BE Structural, PC [BEPC] performed a visual evaluation of the above referenced property.

The purpose of the site visit to the referenced property above was to perform a general structural assessment and evaluation of the subject property adjacent to the collapsed retaining wall that connects between the Mulberry St. Bridge and the McFarland apartment building.

We made visual observations of the above referenced property. Our observations were limited to the review of the as-built conditions of the existing structure and only what was readily available without demolition of finish materials or areas that were inaccessible.

For the purpose of this report, the front of the building faces Mulberry St., the left, right and rear are from the viewer's perspective standing on Mulberry St. looking at the front elevation. To facilitate an understanding of the problem and the location, we have attached photographs taken during our site visit. We may refer to some of these photographs in our report, however all photographs are being provided as a record of the conditions observed at the time of our visit. Two cameras were used during the site visit and referenced throughout the report by the notation "A" denoting camera A or "B" denoting camera B. Photographs are referenced throughout the report by the notation [Image XXA or Image XXB].



**BE Structural, PC**
500 N. Front Street, Wormleysburg, Pa. 17043
V: 717-737-1559 F: 717-737-1320
www.bestructural.com
info@bestructural.com

### Background

The referenced apartment is named as McFarland Apartments. The apartment consists of two building blocks connected by a structure consisting of stairs. There are a total of 59 apartments. *Smaller of the two building block consists of 8 apartments on the right and 51 apartment building on the left when view standing from the Mulberry St.*

The 8 apartment building block was vacated after the collapse of the retaining wall. *The apartment was bought by the current owner 4 year ago.*

The collapsed retaining wall connects the 8 apartment building and Mulberry St. Bridge. The space above the retaining wall serves as a parking space. *The total width of the parking pavement remaining after the collapse is measured to be 48' from the parking lot curb to the edge of the remaining pavement.*

### Findings [F] and Recommendations (R)

F1] We began our assessment by walking around the building from outside. We observed that the 8 apartment building was connected with the collapsed retaining wall through a slab of concrete as shown in Image 21(B) where the park bench sits on it. Slab of the concrete structure was damaged during the collapse of the retaining wall. Also, the damaged walls of the concrete of the slab when viewed from the Mulberry St. was observed to have cold joints due to the difference in placement of concrete batches. [Image 21B, Image 28B to Image 30B]

R1] The poured in concrete wall which attaches to the slab as referred in Image 21(B) is damaged and shall be supported temporarily or removed so that if the slab collapses it does not impart force onto the remaining wall of the building.

F2] When google map street views and 3D views from June 2011 was observed, a walking platform which extended beyond the retaining wall can be seen as shown in Image 3A. The walking platform was observed to have cracks in the walking slab and vegetation growing indicating maintenance issues. We were told that this walking platform was torn down previously before the retaining wall collapse. The exact date when the walking platform was torn down is unknown. We believe that this might have affected the structural dynamics of the retaining wall and potentially could be part of the reason of the collapse. [Image 1A to 3A Google Earth 2011]

F3] We observed cars being parked in the remaining intact portion of the parking lot of the collapsed retaining wall. [Image 15A, Image 16A]

R3] The parked cars shall be safely removed without imparting addition force to the failing retaining wall to prevent any property loss. It may be best to remove them toward the opposite side of the courtyard away from the failed retaining wall.



**BE Structural, PC**
500 N. Front Street, Wormleysburg, Pa. 17043
V: 717-737-1559, F: 717-737-1320
www.bestructural.com
info@bestructural.com

F4] The visible reinforcement in the collapsed retaining wall was observed to be less than expected based on the thickness of the wall. [Image 22B to Image 25B, Image 27B]

R4] The new retaining wall shall be provided with adequate reinforcements.

F5] To prevent water saturation on the remaining material and further collapse it is recommended that the remaining hill side in the area of the retaining wall failure be covered with a geo-fabric. Penn DOT left geo-fabric on site during the site visit but was not authorized to install this on the subject property. [Image 1B to Image 7B]

F6] The courtyard area adjacent to the connecting structure and in-between the two apartment buildings were found to have maintenance issues and observed with corroded girders and steel roof beams and leaking gutters and disconnected down spouts. The water being deposited into the courtyard through rain fall and as a result of gutters and downspouts being disconnected and not functional is causing water to flow behind the basement walls of the 8 unit apartment building and is causing staining and deterioration of the concrete walls and slab as the water seeks a lower elevation. [Image 51A, Image 34B to Image 36B, Image 114B]

R6] The corroded steel beams and girder shall be assessed for its serviceability and maintained with rust prohibiting paint or replaced as needed to keep this area safe and well maintained. The down spouts gutters shall be cleaned for any debris and maintained.

F7] Water was found to be leaking from the courtyard area to the basement of the 8 apartment building and to the adjacent structure that attaches to the foundation wall of the 8 apartment building. [Image 113B, Image 115B, Image 89B, Image 150B to Image 151B]

R7] The water shall be prevented into the basement and foundation by proper maintenance of the courtyard area and channeling water away from the building structure in the courtyard area.

F8] Stair step cracks were observed in the wall that is attached with the stair in the basement below the first floor garage. The width of the cracks were observed to be as wide as 1". [Image 43B, Image 44B, Image 104B to Image 109B]

R9] The stair step cracks indicate horizontal movement and differential vertical settlement of the structure. The cracks shall be routed and caulked at the least and additional repair may be warranted as a result of further investigation and analysis of the existing conditions.

F9] Towards the front of the basement, the Concrete encasement in the Steel beams were found to be rotted and falling off exposing the Structural steel beam to elements. Similar condition was found in the slab where due to falling concrete steel bars were found to be exposed. [Image 45 to Image 46B, Image 53B, Image 23A]

Page 3 | 7



**BE Structural, PC**
500 N. Front Street, Wormleysburg, Pa. 17043
V: 717-737-1559 F: 717-737-1320
www.bestructural.com
info@bestructural.com

R9] The exposed steel shall be inspected for corrosion and section loss and potentially reinforced and encased in concrete. Water or moisture infiltration causing the concrete to rot shall be prevented.

F10] The Steel beams in the rear of the basement, were found to be corroded from the water infiltration which appears to be sitting on a masonry pier. It could be sitting on the steel column but it was not visually seen. The left basement wall was found to have water infiltration believed to be from the courtyard area above and is allowing water to flow into the basement which relieves the water pressure in the walls but is causing staining and deterioration of the concrete walls. [Image 89B to Image 96B]

R10] See R7.

F11] The wood framed stair case landing leading to the sub-basement from basement was found to be unsafe and not connected properly to the supporting brick masonry walls. [Image 17A to Image 20A]

R11] The landing shall be reinforced or removed and replaced as needed to allow safe access to the sub-basement.

F12] Cracks in the masonry pilaster were observed. The pilaster was located near the stair that leads to the sub-basement from the basement floor. [Image 18A, Image 19A]

R12] Pilaster walls shall be repointed and repaired.

F13] In the front right corner, Stair steps cracks were observed in the sub-basement wall. The largest crack was measured to be as wide as 1.5". [Image 6A to Image 13A, Image 80B to Image 85B]

R13] This portion of the wall shall be repaired and sections may need removed and rebuilt. Proper shoring shall be provided during the process. Additional effort would be required to recommend the most economical and structurally acceptable repair solution.

F14] Bed rock was found in the uphill side of the basement and some of the foundation walls were observed to have been built around the bed rock. [Image 57B]

F15] Sediment on the floor indicates water infiltration in the sub-basement. Water could enter the sub-basement from the broken windows during rain and/or through the leaking water from courtyard area and/or the water pipes in the sub-basement. The fire sprinkler in the building is drained periodically onto the floor of the sub-basement and may be contributing to the subsidence and compaction of the soils below the slab. [Image 73B, Image 74B]



**BE Structural, PC**
500 N. Front Street, Wormleysburg, Pa. 17043
V: 717-737-1559, F: 717-737-1320
www.bestructural.com
info@bestructural.com

R15] See R7. The broken windows shall be sealed to prevent water inside the sub-basement and the water pipes in the sub-basement be checked for leakage. The water from the fire sprinkler system shall be drained to a plumbing drain and not left to flow freely onto the floor and further undermine the concrete slab on grade which was observed to have voids below it.

F16] Cracking in the sub-basement slab and hole in the slab was observed towards the rear of the sub-basement. The overall slab was found to be uneven and settled mostly towards the rear right of the sub-basement. The soils beneath the slab might have settled and/ or washed away due to water infiltration causing the slab to settle and crack. The thickness of slab was found to be thin than expected and *unreinforced with no attachment with the foundation walls providing no diaphragm restraint.* [Image 67B, Image 69B, Image 86B]

R16] The slab in the sub-basement shall be replaced with reinforced concrete slab 6" thick for diaphragm restraint. This reinforcement would act to restrain the top of the foundation wall so that continued serviceability can be maintained. There was some horizontal separation observed between the wall and the slab, however it is believed they were not mechanically connected and were placed separately at the time of construction.

F17] As discussed in F7, the right wall that attaches to or part of the foundation wall of the 8 apartment building was found to have water infiltration. The water is thought to be due to the seepage of water from the courtyard area. We were unable to establish the extent of damage to *these walls as no clear access were available to this structure.* [Image 148B to 151B]

R17] See R7.

F18] The second and third floor of the 8 building apartments were vacated after the collapse of the retaining wall. We observed some apartments for damage due to the collapse. No damage due to the collapse were observed however, *in Apartment 223, one of the room was observed to have* water accumulation in the ceiling and signs of water stains in and around the vent. [Image 129B to 131B]

F19] Image 143B and Image 144B show the remaining structure at the connection of the walkway to the collapsed retaining wall.

R19] This work will eventually need to be removed and shall be temporarily shored to protect the apartment building from potential damage from additional failures related to the loss of the retaining wall and movement of the soils that are currently restrained by the walls at the front side of the sub-basement that looked to be a former stairwell.



**BE Structural, PC**
500 N. Front Street, Wormleysburg, Pa. 17043
V: 717-737-1559 F: 717-737-1320
www.bestructural.com
info@bestructural.com

F20] 145B is the rock formation of the hillside adjacent to Howard Tire which is along Cameron Street on the right side of the McFarland Apartments. This rock formation is indicative of the geology that potentially supports the McFarland Apartments.

F21] 146B to 155B are taken of the building that is to the right side of the Apartments on the downhill side. The interior of the building was not accessible and the wall in images 148B to 155B looks to be intact, the far end of the building is where the car sits that slide down from the parking lot above and collapsed the roof.

R21] This structure and the structure of the McFarland Apartment building are thought to be integral in their construction and it shall not be demolished until a final determination of the McFarland superstructure is completed and their interdependencies determined.

F22] The exterior 4" brick wall may be resting on top of the structure adjacent to the foundation wall of the 8 apartment building. [Image 158B to 161B]

R22] see R21

### Conclusions:

Based on the information obtained from the owner and our visual observation of the existing structure from the outside and inside of the building, we find that the 8 unit apartment building to be safe for accommodation if shoring is installed per our recommendations and foundation wall repair is initiated.

The building was observed to have some deficiencies which have existed prior to the retaining wall collapse. The walls in the lowest accessible level, referred to as the sub-basement, and also the floor above, referred to as the basement, were observed to have stair step cracks in the brick masonry walls of the right front corner closest to where the retaining wall connected to the building. This cracking indicates differential settlement of the brick structure at some time in the past.

Water is a contributing factor in foundation and retaining wall failures. Water is often responsible for structural deficiency and weakening of foundation supports. The unknown variables such as future weather conditions (heavy rains), flooding and further collapse could make this structure un-safe if the recommended precautions are not adhered to.



**BE Structural, PC**
500 N. Front Street, Wormleysburg, Pa. 17043
V: 717-737-1559, F: 717-737-1320
www.bestructural.com
info@bestructural.com

BEPC cannot predict future weather events that have the capacity to further affect the structure. BEPC recommends that a geotechnical engineer be consulted relative to the stability of the onsite soils as well as remediation methods relative to slope stability.

BEPC can provide additional engineering and design support for a new retaining wall in conjunction with a Geotechnical Engineer and provide solutions to remediation and repair of the superstructure of the McFarland Apartment Building.

BEPC is not an Environmental Specialist and the life and safety issues that arise from secondary effects of water such as mold, fouling or other organic growth as a result of water infiltration need to be addressed by relevant expertise.

We consider the superstructure of the building to be safe for occupancy. The building shall be monitored for further movement or cracks especially if construction work is to take place.

A detailed precondition survey is recommended prior to additional construction or repairs contemplated.

Please let us know if we can be of further service to you.

BE Structural, P.C.

Bruce Carroll Ensor

# EXHIBIT B

15706162v.1

 **Building Enclosure Science**

June 3, 2016

Mr. Arden Emerick MCP
Assistant Codes Administrator
Department of Public Safety
City of Harrisburg
The Rev. Martin L. King Jr. City Government Ctr.
10 North Second Street – Suite 205
Harrisburg, PA 17101
aemerick@cityofhbg.com

RE:   **Post Inspection Visual Structural deficiencies at Wall Collapse Adjacent to the Mulberry Street Bridge in Harrisburg, PA**

Dear Mr. Emerick:

On May 27, 2016 I (Mr. James McLoughlin, P.E.) met you at the reported wall collapse adjacent to the Mulberry Street Bridge in Harrisburg PA. During the meeting, I was accompanied by an attorney, Mr. Andrew Connolly from Post & Schell. Per my observations of the area of collapse, Mr. Connolly contacted you on my behalf to meet me on site to discuss my observations. Neither I nor Mr. Connolly represent any of the property owners in the area.

During the inspection I informed you of my opinion of the potentially dangerous situation at the area of collapse. I observed the following:

- The collapsed portion of the wall and other debris (including a car) was observed to be resting on the portion of the building adjacent to the former location of the wall. Per my understanding, no shoring has been installed at any portions of the building and no attempt to secure the area of failed or failing roof structure has been made. Observation of the building complexes indicates that many of the buildings share masonry party walls with the roof structure pocketing on both sides. It is unclear what the design capacity of the roof is, however if a further collapse occurs at the areas where debris is still sitting on the roofing it has potential to collapse other portions of roofing and party walls.

- The collapse of the wall has left an exposed soil slope in the area where the wall previously existed. No attempt to stabilize the slope had been made at the time of this inspection. The area has been fenced, however the exposed slope has potential to continue to fail and deposit additional debris on the roofs of the adjacent buildings. The remaining pavement at the top of the slope is cracked and could potentially collapse onto the buildings below if the slope continues to slide as it is exposed to the elements.

P.O. Box 40891 · Providence, RI 02904 USA · 954 288 8640 · info@BuildingES.com

- The existing 4 story brick building to the south of the collapse was observed from the bridge and to the south of the buildings to have visible cracks in the brick façade. It is unclear if the building façade has been inspected by an engineer to assess the current condition.

Based on the observed conditions I informed you that there was the potential for the buildings at the base of the wall (with debris still on the roof) to have further collapse of the roof structure and party walls. The slope has potential to further collapse spilling more debris on the roofing and based on the condition of the brick façade there is potential for failure of the façade of the brick masonry building.

Based on the conditions observed, I felt it was my professional duty to inform you of the condition. Per our conversation you offered the following opinions:

- You indicated the owner of the buildings at the base of the wall had an engineer or contractor inspect the building, but no written report was issued and no shoring of the building was performed. You also indicated you informed the owner of the tire shop to "stay out of the collapsed area"

- You indicated the owner of the brick buildings to the south of the wall had engaged Mr. Bruce Ensor of BE Structural to inspect the building and did not inform you of any specific concerns. No written report was issued and no shoring of the building was performed. You indicated that you had entered the building and saw "no visible sign of movement". You did not indicate which areas of the building were inspected or at what frequency the building was noted to have no visible movement. The collapse has been more than 20 days at the time of this inspection and it was unclear if follow up inspections have been performed.

- You indicated that you had no specific concerns with the exposed slope.

A call was also placed to the fire department, but we did not meet with any other officials after meeting with you.

I feel the observed conditions present a potentially dangerous condition for the buildings below the collapse and the inhabitants of the 4-story brick building.

It is my professional opinion that the areas of collapse and adjacent areas be shorn, the debris should be removed from roof area, and the slope stabilization should be performed. The 4-story brick building façade should be assessed by a qualified engineer and continuous monitoring should be installed to determine if movement is occurring.

Following your review of this report, please contact me with any questions, comments and/or directives you may have. Thank you.

Sincerely.
Building Enclosure Science, LLC.



James McLoughlin, PE
Senior Structural Engineer / Project Manager
Pennsylvania Professional Engineer #PE078936

Attachment A: Location Map and Photograph

# EXHIBIT C

15706166v.1

**rrd**

Robert R. Desmarais Jr., PE
313 W Liberty St. Ste 101, Lancaster, PA 17603
Ph: 717.617.2725   Email: bob@rrdpe.com

October 5, 2016

Mr. Howard Henry
Howard Tire and Auto
205 South Cameron Street
Harrisburg, PA  17104

Subject:   Structural Stability
Project No:  03080

Mr. Henry

Thank you for engaging me to provide structural engineering consulting.  You are seeking advice regarding the structural repair recommendations outlined in your insurance carrier's report.  I've visited your property on September 27, 2016.

A retaining wall failure east of your building has resulted in damage and loss of use to a portion of your property.  The events and findings have been provided to me in three reports listed at the end of this letter.  The purpose of my review of these reports is not to determine, confirm, or posit the causes of the retaining wall failure.

I have reviewed the reports to assess the feasibility of the repair recommendations made in your insurance carrier's report.  The recommended action is to repair and/or replace portions of the common structural retaining/bearing wall that forms the east line of your building and the west line of the adjacent Hoa Le building.  I find the recommendation to be reasonable and will present my opinion on the feasibility in a subsequent letter.

I need to bring to your attention the findings of the report prepared by Mr. Bruce Ensor, PE of BE Structural, PC. This report was prepared for Primavera Properties, owner or agent of the McFarland Building.  The McFarland Building is west of your and the Hoa Le building.  Mr. Ensor noted some structural conditions of the McFarland Building.  He also noted an apparent structural connection between the Hoa Le building and the McFarland Building.  I did not observe the conditions within the McFarland Building that are cited in Mr. Ensor's report.  I did observe the conditions of the Hoa Le building and the apparent structural connection between the McFarland Building and the Hoa Le building.

I have contacted Mr. Ensor to discuss my observations and to clarify his recommendations for structural repairs of the McFarland Building.  I concur with Mr. Ensor's concerns regarding the stability of the McFarland building west facade, and the possible foundation support deterioration due to water infiltration from the Primavera Properties buildings and the exposed grades at the collapsed retaining wall.  I inquired of Mr. Ensor if he was aware if Primavera Properties has taken action on any of his structural repair recommendations.  He stated he was not aware that any of his recommendations have been addressed.

Mr. Howard Henry

Project No. 03080
Page 2 of 2

I have considered my discussion with Mr. Ensor, my observations made at the time of my site visit, and the structural connection of the Hoa Le building with both the McFarland Building and your building.

I am concerned that the potential for failure of the McFarland Building facade is an imminent danger to the Hoa Le building and your building unless immediate action is taken to address the water infiltration, and the structural concerns and recommended repairs cited in Mr. Ensor's report. I am concerned that there is potential loss of life from the potential for failure of the McFarland Building facade.

I am recommending you discontinue the occupancy of your building until the conditions noted by Mr. Ensor and myself are addressed in a suitable manner.

Sincerely,

Robert R. Desmarais Jr., PE

Reference Documents:
Electronic copy of report prepared by BE Structural, PC dated May 10, 2016 on behalf of Primavera Properties
    **"Final Structural Letter 1139 Mulberry St Harrisburg PA 17104 bce.pdf"**
    **"Photo Report 1139 Mulberry St Harrisburg PA 17104 Camera A.pdf"**
    **"Photo Report 1139 Mulberry St Harrisburg PA 17104 Camera B.pdf"**
Hard copy of report prepared by Kenneth B. Robinson, PE of Kenneth B Robinson & Associates dated July 1, 2016 on behalf of Mr. Howard Henry
    **"Re:16055 – Howard Tire & Auto Roof Damage Evaluation"**
Hard copy of report prepared by David R. Daniels, PE of Paul Zamrowski Associates, Inc. dated June 26, 2016 on behalf of Erie Insurance
    **"Engineering Report/Howard Henry/Landslide/Date of Loss: June 26, 2016"**

cc:  Mr. Mark G. Wendaur IV, Wendaur Law, LLC (via email)
     Mr. Bruce Ensor, PE, BE Structural, PC (via email)
     City of Harrisburg Codes Bureau (via post)

This review has been performed applying a reasonable standard of care typical for structural engineers practicing in this field in this jurisdiction.

## VERIFICATION

I. Monique Henry, verify that the information set forth in the complaint is true and accurate to the best of my knowledge, information, and belief formed after reasonable inquiry. The language in the complaint is that of counsel. These statements are made subject to penalties of Pa.C.S. §4904 relating to unsworn falsification to authorities.

Monique Henry

18524106v.1

## VERIFICATION

I, Howard Henry verify that the information set forth in the complaint is true and accurate to the best of my knowledge, information, and belief formed after reasonable inquiry. The language in the complaint is that of counsel. These statements are made subject to penalties of Pa.C.S. §4904 relating to unsworn falsification to authorities.

Howard Henry

{8524105v.1}

**T&H THOMAS, THOMAS & HAFER** LLP
— Attorneys At Law —

Street Address:
305 North Front Street, Harrisburg, PA 17101
Mailing Address:
P.O. Box 999, Harrisburg, PA 17108
Phone: 717.237.7100 Fax: 717.237.7105

PLAINTIFF'S
EXHIBIT

H

*Peter J. Speaker*
*(717) 255-7644*
*pspeaker@tthlaw.com*

January 18, 2018

By FedEx, Fax (732-363-6441) &
Email (isaac@primaveracommunities.com &
jacob@primaveracommunities.com)

Jacob Friedman
Isaac Dohany
Spring Village Apartments, LLC
212 Second Street, Suite 305
Lakewood, NJ  08701

> Re:   Howard and Monique Henry, etc. v. McFarland, LP, et al.
>        No. 2017 CV 1940 CV, Court of Common Pleas of Dauphin County, PA
>        Date of Loss:  5/5/16

Dear Mr. Friedman and Mr. Dohany:

As you know, I represent Firstline National Insurance Company.

This will supplement my prior communications with Charles Bixenspanner, John Chrzanowski and you, including but not limited to my letter of April 5, 2017, regarding the Civil Action filed in the Court of Common Pleas of Dauphin County at No. 2017 CV 1940CV.

It has come to our attention that Spring Village Apartments, LLC, and both of you have been named as Defendants or Additional Defendants in that action. It is our understanding that you are the authorized representatives of Spring Village Apartments, LLC. Although, to the best of my knowledge, there has been no request by Spring Village Apartments, LLC, as such, or by you, for liability coverage, Firstline is authorizing Andrew Benedict, Esquire, pursuant to Firstline Policy Number 8159577, to undertake the defense of Spring Village Apartments, LLC, and you.

Furthermore, to the extent that Firstline reserved its rights to deny or limit liability coverage for McFarland, LP, and Primavera Properties based on the fact that they are not "Named Insureds" in the policy, that specific reservation is hereby withdrawn, solely for purposes of the liability coverage for the civil action at No. 2017 CV 1940CV. In addition, each of you will be treated as Named Insureds for purposes of liability coverage. In short, McFarland, LP, Primavera Properties, Spring Village Apartments, LLC, Jacob Friedman and Isaac Dohany all will be treated as Named Insureds for purposes of liability coverage, and will

**THOMAS, THOMAS & HAFER** LLP
Page 2

be provided with liability coverage, for the Civil Action filed in the Court of Common Pleas of Dauphin County at No. 2017 CV 1940CV, subject to the following limitations and exclusions.

As I indicated in my letter of April 5, 2017, the Policy limit potentially applicable to the civil action is $1,000,000. Therefore, you should be sure to put all excess and umbrella insurers on notice.

The Policy also provides, with respect to coverage for liability claims,  in part as follows:

**BUSINESSOWNERS**
**BP 00 03 07 13**

**BUSINESSOWNERS COVERAGE FORM**

*   *   *   *

Throughout this Coverage Form, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

In Section II – Liability, the word "insured" means any person or organization qualifying as such under Paragraph C. Who Is An Insured.

*   *   *   *   *

**SECTION II – LIABILITY**

**A.    Coverages**

   **1.    Business Liability**

      a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" . . . to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

         (1)    The amount we will pay for damages is limited as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section II – Liability; and

(2)   Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f. Coverage Extension – Supplementary Payments.**

\* \* \* \* \*

f.   **Coverage Extension – Supplementary Payments**

(1)   We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

\* \* \* \* \*

(e)   All court costs taxed against the insured in the "suit." However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

(f)   Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

(g)   All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in the court the part of the judgment that is within our Limit of Insurance.

\* \* \* \* \*

B.   **Exclusions**

1.   **Applicable To Business Liability Coverage**

This insurance does not apply to:

(a)   **Expected Or Intended Injury**

**THOMAS, THOMAS & HAFER** LLP

Page 4

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

\* \* \* \* \*

**k.    Damage To Property**

"Property damage" to:

**(1)**    Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)**    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)**    Property loaned to you;

**(4)**    Personal property in the care, custody or control of the insured;

**(5)**    That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \* \* \*

**D.    Liability And Medical Expenses Limits Of Insurance**

**1.**    The Limits of Insurance of Section II – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.**    Insureds;

    **b.**    Claims made or "suits" brought; or

    **c.**    Persons or organizations making claims or bringing "suits".

**2.**    The most we will pay for the sum of all damages because of all:

    **a.**    "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence" . . . .

\*   \*   \*   \*   \*

Is the Liability and Medical Expenses limit shown in the Declarations.

\*   \*   \*   \*   \*

**E.**    **Liability And Medical Expenses General Conditions**

\*   \*   \*   \*   \*

**2.**    **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

\*   \*   \*   \*   \*

    **c.**    You and any other involved insured must:

    **(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)**    Authorize us to obtain records and other information;

    **(3)**    Cooperate with us in the investigation or settlement of the claim or defense against the "suit" . . . .

\*   \*   \*   \*   \*

**F.**    **Liability And Medical Expenses Definitions**

\*   \*   \*   \*   \*

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*   \*   \*   \*   \*

**17.**    "Property damage" means:

**THOMAS, THOMAS & HAFER** LLP

Page 6

a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \* \* \*

22.   "Your work":

a.   Means:

(1)   Work or operations performed by you or on your behalf; and

(2)   Materials, parts or equipment furnished in connection with such work or operations.

b.   Includes:

(1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2)   The providing of or failure to provide warnings or instructions.

\* \* \* \* \*

**SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II – LIABILITY)**

\* \* \* \* \*

**C.   Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

1.   This policy;

2.   The Covered Property;

3.    Your interest in the Covered Property; or

4.    A claim under this policy.

\*   \*   \*   \*   \*

F.    **Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

\*   \*   \*   \*   \*

H.    **Other Insurance**

\*   \*   \*   \*   \*

2.    Business Liability Coverage is excess over: .

    a.    Any other insurance that insures for direct physical loss or damage; or

    b.    Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured.

\*   \*   \*   \*   \*

3.    When this insurance is excess, we will have no duty to defend any claim or "suit" that any other insurer has a duty to defend . . . .

The form quoted above may be modified by other forms, which will be the subject of further consideration and discussion if appropriate.

In regard to Section II – Liability Coverages, of course there is no coverage for damage to property that is owned, rented or occupied by an insured, as indicated above.

There is no coverage for damages in excess of the single occurrence limit of $1,000,000. Also, there is no coverage at all for liability for damages that do not qualify as property damage. Firstline reserves the right to deny or limit coverage to the extent that there is liability for trespass, injunctive relief, punitive or exemplary damages, loss of business goodwill, incidental and consequential losses and anything else that does not qualify under the Policy definition of property damage. Furthermore, coverage is excluded for property damage expected or intended from the standpoint of the insured.

**THOMAS, THOMAS & HAFER** LLP

Page 8

The Policy is void in any case of fraud as it relates to the Policy at any time. It is also void if any insured, at any time, intentionally conceals or misrepresents a material fact concerning: the Policy; the covered property; interest in the covered property; or a claim under the Policy.

The provisions relating to other insurance may come into play. Please provide me with copies of all insurances, bonds, policies, forms, certificates, documents and records that concern or relate to any and all other insurance or coverage that may apply in any way to McFarland, LP, Primavera Properties, Spring Village Apartments, LLC, Jacob Friedman and/or Isaac Dohany the premises in question, and/or any person or entity involved in any way with the property, premises or occurrence. Please include all acknowledgements, denials, and/or reservations of rights, with respect to all insurance and bonds, as well as all memoranda, emails, correspondence and other communications. Please put all insurers and sureties on notice of the suit immediately.

Firstline is agreeing to provide this liability coverage in connection with the above-referenced civil action without waiving its rights to otherwise deny or limit coverage in other matters and claims, related or not. Specifically, nothing in this or any other communication by or on behalf of Firstline should be taken as a waiver of any of its rights under the policy and applicable law with respect to other coverages under the policy.

Please contact me if you have any questions or comments.

Very truly yours,

THOMAS, THOMAS & HAFER, LLP

Peter J. Speaker

Cc: Andrew R. Benedict